IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID ESLAVA; ROBERT KAISER; ) <br> JON HARTMAN; JOHN SUTTON; ) <br> THOMAS FAISON; MARIA SHARKEY;) <br> JENNIFER CLOUSE; WILLIE WATTS;) <br> MELISSA RINGLER; and STACY ) <br> LOFTON, individually, and on behalf ) <br> of all others similarly situated, ) <br>                              ) <br>                              ) <br>        Plaintiffs, ) <br>                              ) <br> vs. ) <br>                              ) <br> GULF TELEPHONE COMPANY, INC.; ) <br> GULF COAST SERVICES, INC.; ) <br> GULF TELEPHONE COMPANY ) <br> ADMINISTRATIVE COMMITTEE; ) <br> GULF TELEPHONE COMPANY ) <br> ESOP PLAN ADMINISTRATOR; ) <br> GULF TELEPHONE COMPANY ESOP ) <br> TRUSTEES; ESCROW COMMITTEE; ) <br> MARJORIE SNOOK; DALE YOUNCE; ) <br> ROBERT YOUNCE; WOODWARD ) <br> SETZER; HAROLD KILLIAN; ) <br> ROBERT MACKEY, JR.; ANN BYRD; ) <br> ESTHER WILLIAMS; WILLARD ) <br> MITCHEM; PAUL CHENEY; ) <br> ROXANNE HENDERSON; CYNTHIA ) <br> GATES; SANDRA BIXLER; JO GOULD) <br> SMITH; NORTH STAR TRUST ) <br> COMPANY; JOHN HOMMEL; ) <br> MADISON RIVER TELEPHONE ) <br> COMPANY, LLC; DONALD ) <br> ROBERTON; KENNETH AMBURN; ) <br> STEPHEN VANDERWOUDE; PAUL ) <br> SUNU; RANDY WOOD; MATT ) | Civil Action No. 04-297 |

**SPRINGER; MILLRY MANAGEMENT** )
**CORPORATION; PAUL BROWN;** )
**SNOOK TESTAMENTARY TRUST;** )
**AMERICAN APPRAISAL** )
**ASSOCIATES, INC.; ARTHUR** )
**ANDERSON & CO.; JOSEPH** )
**DECOSIMO AND COMPANY; and** )
**GULF MERGER CORPORATION,** )
                                                      )
_____ **Defendants.** _____ )

## FIRST AMENDED CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT
## INCOME SECURITY ACT

Plaintiffs David Eslava, Robert Kaiser, Jon Hartman, John Sutton, Thomas Faison, Maria

Sharkey, Jennifer Clouse, Willie Watts, Melissa Ringler, and Stacy Lofton, individually, and on

behalf of all others similarly situated, amend their original complaint as follows. Plaintiffs adopt

and incorporate the exhibits attached to the original complaint as if attached hereto.

## I. INTRODUCTION

1.      This class action arises under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001, *et seq.*, and is brought on behalf of all persons who were participants

in or had a right to receive benefits from the Gulf Telephone Company Employee Stock Ownership

Plan (the "ESOP" or the "Plan") at any time during the period from September 29, 1999 to the

present. Plaintiff class members are or were participants in the ESOP within the meaning of ERISA

§ 3(7), 29 U.S.C. § 1002(7), or beneficiaries within the meaning of ERISA § 3(8), 29 U.S.C. §

1002(8).

2.      Plaintiffs allege that Defendants, who are fiduciaries of the ESOP, parties in interest

2

as to the ESOP, and/or knowing participants in ERISA breaches, have caused and/or knowingly participated in ERISA breaches including, but not limited to, the sale of ESOP stock for less than fair market value in connection with a merger transaction, the improper diversion and use of Plan assets prior and subsequent to the merger transaction, and the improper operation of the ESOP prior and subsequent to the merger transaction. Plaintiffs also allege that the Plan Administrator of the ESOP has violated ERISA by failing to comply with at least five different written requests on behalf of David Eslava for information required to be furnished pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), including, *inter alia*, copies of any appraisals and fairness opinions obtained by the ESOP in connection with the merger transaction.

3. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and/or ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), this action seeks a preliminary injunction, the establishment of a constructive trust, other appropriate equitable relief, and the restoration of any losses or profits resulting from breaches of the Defendant fiduciaries. In addition, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), this action seeks a preliminary injunction, the establishment of a constructive trust, and other appropriate equitable relief to redress ERISA violations resulting from the conduct of Defendant parties in interest and/or knowing participants in ERISA breaches. Pursuant to ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), and ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), this action seeks the award of civil penalties of $110 per day, beginning on August 9, 2003, from the ESOP Plan Administrator for failure to comply with the written requests for information on behalf of Plaintiff David Eslava.

## II. JURISDICTION & VENUE

4. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

3

1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

5.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was and is administered in this District, some or all of the ERISA breaches for which relief is sought occurred in this District, and/or some or all Defendants reside or maintain a place of business in this District.

## III. THE PLAN

6.     The Gulf Telephone Company Employee Stock Ownership Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3). A true and correct copy of the known ESOP agreement (the "Plan Document") is attached hereto as Exhibit "A," made a part hereof, and incorporated by reference.

7.     The Plan is an employee stock ownership plan within the meaning of ERISA 407(d)(6), 29 U.S.C. § 1107(d)(6), in that it is "an individual account plan ... which is designed to invest primarily in qualifying employer securities." Pursuant to ERISA § 403(a), 29 U.S.C. § 1103(a), the Plan provides for the creation of a trust under which assets of the plan are held (the "ESOP Trust").

8.     Under the provisions of the Plan Document, the class members had vested or beneficial interests in certain shares of stock of Gulf Coast Services, Inc. ("Gulf Coast"). Gulf Coast is the holding company for Gulf Telephone Company ("GulfTel"), a provider of local telephone service in Baldwin County, Alabama, Gulf Long Distance, Inc. ("Gulf Long Distance"), a provider of long distance telephone service in Baldwin County, Alabama, and certain related entities, including a 50% interest in DigiPH Holding Company, Inc. ("DiGiPH"), the holding company of a local provider of cellular telephone service.

4

9. Pursuant to Section 2.01 of the Plan Document, the employees of Gulf Coast, GulfTel, and Gulf Long Distance who had attained 19 years of age and had completed one year of service were all eligible to participate in the ESOP.

10. GulfTel, now controlled by Madison River, has sought to terminate the ESOP since December 31, 1999. However, GulfTel has been unable to do so because, upon information and belief, the Internal Revenue Service ("IRS") has not issue a determination letter indicating that the Plan is qualified under the Internal Revenue Code of 1986, as amended ("the Code").

## IV. PARTIES

### A. Plaintiffs

11. Plaintiffs David Eslava, Robert Kaiser, Jon Hartman, John Sutton, Thomas Faison, Maria Sharkey, Jennifer Clouse, Willie Watts, Melissa Ringler, and Stacy Lofton are residents of Alabama and former GulfTel employees who were participants in the ESOP as of September 29, 1999.

### B. Defendants

12. Defendant Gulf Telephone Company, an Alabama corporation with its principal place of business in Foley, Alabama, acting by and through its Board of Directors, is the Plan Sponsor of the ESOP within the meaning of ERISA § 3(15)(B), 29 U.S.C. § 1002(15)(B), and has the power to appoint and remove ESOP Trustees and ESOP Administrative Committee Members. GulfTel may also have acted as the Plan Administrator of the ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), prior and/or subsequent to September 29, 1999. GulfTel is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14). Collectively, GulfTel and all

5

of the members of its Board of Directors and the Board of Directors of Gulf Coast (which upon information and belief, are identical to the members of the GulfTel Board) prior to September 29, 1999 are referred to as the "GulfTel Defendants."

13.     Defendant Gulf Coast Services, Inc., the holding company for GulfTel and Gulf Long Distance before and after being acquired by Madison River Telephone Company ("Madison River") on September 29, 1999, is an Alabama corporation with its principal place of business in Foley, Alabama. The owners of Gulf Coast are common to the owners of GulfTel. Upon information and belief, before September 29, 1999, the Board of Directors of Gulf Coast was identical to the Board of Directors of GulfTel. Upon information and belief, subsequent to September 29, 1999, the new Board of Directors of Gulf Coast is identical to the new Board of Directors of GulfTel. Gulf Coast, acting by and through its Board of Directors, was and is a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

14.     Defendant Gulf Telephone Company ESOP Administrative Committee (the "Administrative Committee"), *inter alia*, has primary responsibility with respect to limitations on contributions, has significant responsibility with respect to maintaining ESOP tax qualification, and has responsibility to inform participants of tender offers. The Administrative Committee is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14). Collectively, the Administrative Committee and its individual members during the relevant time period are referred to as the "ESOP Administrative Committee Defendants."

15.     Defendant Gulf Telephone Company ESOP Plan Administrator (the "Plan

6

Administrator"), *inter alia*, has full responsibility for compliance with reporting and disclosure rules under ERISA. The Administrator is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

16.     Defendants Gulf Telephone Company ESOP Trustees (the "ESOP Trustees"), *inter alia*, had responsibility for ESOP investments and valuation of ESOP assets until March of 2000. The Trustees of the ESOP are fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and parties in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14). Collectively, Robert Mackey, Jr., Ann Byrd, and Esther Williams are referred to as the "ESOP Trustee Defendants."

17.     Defendant Escrow Committee exercises authority or control respecting the management and disposition of $25 million in proceeds from the sale of Gulf Coast to Madison River that were diverted to an escrow fund (the "Escrow Fund") on or about September 28, 1999. The Escrow Committee was established pursuant to an escrow agreement entered into on September 28, 1999 (the "Escrow Agreement"). According to the Escrow Agreement, the Escrow Committee consists of three individual members: i) a representative of Madison River; ii) a representative of "GCSI Stockholders;"[1] and iii) a qualified person with prior judicial or other relevant experience. An amendment to the Escrow Agreement was entered into on May 31, 2000 ("Amendment to Escrow Agreement"). A true and correct copy of the Amendment to Escrow Agreement which includes the original Escrow Agreement as an exhibit is attached hereto as Exhibit "B," made a part hereof, and incorporated by reference. Collectively, the Escrow Committee and all of the parties

---

[1] The Escrow Agreement defines "GCSI Stockholders" as "the owners of all of the issued and outstanding capital stock" of Gulf Coast as of September 28, 1999.

7

named herein as Defendants, both individuals and entities, who entered into the Escrow Agreement[2]
and Amendment to Escrow Agreement[3] are referred to as the "Escrow Committee Defendants."
Because some portion or all of the $25 million in proceeds constitute Plan assets under ERISA, the
Escrow Committee Defendants are fiduciaries of the Plan within the meaning of ERISA § 3(21)(A),
29 U.S.C. § 1002(21)(A), and parties in interest to the Plan within the meaning of ERISA § 3(14), 29
U.S.C. § 1002(14).

18.     Defendant Marjorie Snook is a resident of Baldwin County, Alabama, and was
President, CEO, a member of the Board of Directors of GulfTel, and the largest beneficial individual
shareholder of Gulf Coast stock prior to September 29, 1999. On or about September 28, 1999,
Snook became a representative of the GCSI Stockholders with respect to the Escrow Fund. As such,
she was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. §
1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. §
1002(14).

19.     Defendant Dale Younce is a resident of Baldwin County, Alabama, and was a Vice
President and General Manager, and a member of the Board of Directors of GulfTel prior to
September 29, 1999. On or about September 28, 1999, Younce became a representative of the GCSI
Stockholders with respect to the Escrow Fund. In addition, on or about January of 2003, Younce

---

[2] The Escrow Agreement was executed by the following persons: i) Stephen Vanderwoude as Chairman and CEO on behalf of Madison River and Gulf Merger Corp; ii) Marjorie Snook as President and CEO on behalf of Gulf Coast; iii) Regions Bank as Escrow Agent and "Paying Agent;" iv) Marjorie Snook, Dennis Kaiser, Robert Younce, Dale Younce. Robert Mackey, Jr., Willard Mitchem, Esther Williams, Woodward Setzer, Harold Killian, and Anu Byrd on behalf of GCSI Stockholders; v) Robert Mackey, Jr., Esther Williams, and Ann Byrd on behalf of the ESOP; and vi) Marjorie Snook and Lyman Holland, Jr. as Co-Trustees of Snook Irrevocable Trust 1, Snook Irrevocable Trust 2, and the Snook Testamentary Trust.

[3] The Amendment to Escrow Agreement was executed by the following persons: i) Stephen Vanderwoude as Chairman and CEO on behalf of Madison River and Vice Chairman on behalf of Gulf Coast; ii) the same individuals who executed original Escrow Agreement on behalf of GCSI Stockholders; iii) John Hommel of North Star ESOP & Fiduciary Services, LLC as Trustee on behalf of the ESOP (North Star had replaced Robert Mackey, Jr., Esther Williams, and Ann Byrd); iv) Robert Doyle on behalf of Regions Bank as both Co-Trustee of the Snook Testamentary Trust, and Escrow Agent; and v) Marjorie Snook as the other Co-Trustee of the Snook Testamentary Trust.

8

became a member of the Escrow Committee. As such, he was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

20. Defendant Robert Younce is a resident of Baldwin County, Alabama, and was First Vice President and a member of the Board of Directors of GulfTel prior to September 29, 1999. On or about September 28, 1999, Younce became a representative of the GCSI Stockholders with respect to the Escrow Fund. As such, he was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

21. Defendant Woodward Setzer is a resident of Baldwin County, Alabama, and was Vice President – Marketing and a member of the Board of Directors of GulfTel prior to September 29, 1999. On or about September 28, 1999, Setzer became a representative of the GCSI Stockholders with respect to the Escrow Fund. As such, he was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

22. Defendant Harold Killian is a resident of Baldwin County, Alabama, and was a Vice President and a member of the Board of Directors of GulfTel prior to September 29, 1999. On or about September 28, 1999, Killian became a representative of the GCSI Stockholders with respect to the Escrow Fund. As such, he was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

23. Defendant Robert Mackey, Jr. is a resident of Baldwin County, Alabama, and was the

9

Vice President – Finance and a member of the Board of Directors of GulfTel prior to September 29, 1999. Mackey was also a Trustee of the ESOP until on or about February of 2000. On or about September 28, 1999, Mackey became a representative of the GCSI Stockholders with respect to the Escrow Fund. As such, he was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

24.    Defendant Ann Byrd is a resident of Baldwin County, Alabama, and was Vice President, Secretary, and a member of the Board of Directors of GulfTel prior to September 29, 1999. Byrd was also a Trustee of the ESOP until on or about February of 2000. On or about September 28, 1999, Byrd became a representative of the GCSI Stockholders with respect to the Escrow Fund. As such, she was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C, § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

25.    Defendant Esther Williams is a resident of Baldwin County, Alabama, and Vice President – Purchasing Warehouse and a member of the Board of Directors of GulfTel prior to September 29, 1999. Williams was also a Trustee of the ESOP until on or about February of 2000. On or about September 28, 1999, Williams became a representative of the GCSI Stockholders with respect to the Escrow Fund. As such, she was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

26.    Defendant Willard Mitchem is a resident of Baldwin County, Alabama, and was Vice President – Network Superintendent and a member of the Board of Directors of GulfTel prior to

10

September 29, 1999. On or about September 28, 1999, Mitchem became a representative of the GCSI Stockholders with respect to the Escrow Fund. As such, he was and is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

27.     Defendant Paul Cheney is a resident of Baldwin County, Alabama, and upon information and belief, from September 28, 1999 until on or about January 2003, Cheney was a member of the Escrow Committee. As such, he was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

28.     Defendant Roxanne Henderson is a resident of Baldwin County, Alabama, and was a member of the Administrative Committee. As such, she was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

29.     Defendant Cynthia Gates is a resident of Baldwin County, Alabama, and was a member of the Administrative Committee. As such, she was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

30.     Defendant Sandra Bixler is a resident of Baldwin County, Alabama, and upon information and belief, is the Plan Administrator or acted on behalf of GulfTel as Plan Administrator prior to September 29, 1999. As such, she was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

11

31. Defendant Jo Gould Smith is a resident of Baldwin County, Alabama, and upon information and belief, is the Plan Administrator or acted on behalf of GulfTel as Plan Administrator subsequent to September 28, 1999. As such, she is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

32. Defendant North Star Trust Company ("North Star") was appointed as Trustee of the ESOP effective March of 2000. Upon information and belief, North Star operates as both North Star and North Star ESOP and Fiduciary Services, LLC. As the Trustee of the ESOP, North Star is a representative of the ESOP with respect to the Escrow Fund and performs the duties of the ESOP Trustees described above. As such, it is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

33. Defendant John Hommel is the Senior Vice President of North Star. Hommel is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), in that he exercises discretionary authority or control respecting management of the Plan or authority or control respecting Plan assets, and ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(A)(iii), in that he exercises discretionary authority or discretionary responsibility in the administration of the Plan. Hommel is also a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14). Collectively, North Star, North Star ESOP and Fiduciary Services, LLC, and John Hommel are referred to as the "North Star Defendants."

34. Defendant Madison River Telephone Company, LLC ("Madison River") is a Delaware limited liability company, and is the 18th largest telephone company in the United States

12

according to the United States Telephone Association. Madison River is owned, in part, by Madison Dearborn Partners, Goldman Sachs & Co., and Providence Equity Partners with affiliates operating in North Carolina, Illinois, Alabama, and Georgia. Madison River, acting by and through its Board of Directors, became a fiduciary of the Plan within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), on or about September 28, 1999, in that it exercised authority or control respecting management or disposition of Plan assets by establishing or assisting in the establishment of the Escrow Fund. Madison River is presently a fiduciary of the Plan within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C § 1002(21)(A)(i), in that it continues to exercise authority or control respecting management or disposition of Plan assets, including the Plan assets held in the Escrow Fund. Madison River acquired all of the common stock of Gulf Coast on September 29, 1999, including unallocated shares held by the ESOP and allocated shares owned by ESOP participants. As of September 29, 1999, Madison River, acting through its directors, officers, employees, and agents, became a fiduciary of the Plan within the meaning of ERISA § 3(21)(A)(i), 29. U.S.C. § 1002(21)(A)(i), in that it exercises discretionary authority or discretionary control respecting management of the Plan or authority or control respecting management or disposition of the Plan assets, and ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), in that it exercises discretionary authority or discretionary responsibility in the administration of the Plan. On or about September 28, 1999, Madison River became a party in interest to the Plan within the meaning of ERISA section 3(14), 29 U.S.C. § 1002(14). Collectively, Madison River and all of the present and former members of its Board of Directors are referred to as the "Madison River Defendants."

35. Defendant Donald Roberton was the Chairman of the Board of Directors and CEO of Gulf Coast from September 29, 1999 until on or about 2002. Upon information and belief, Roberton

13

was and is a member of the Board of Directors of Madison River. Roberton was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), in that he exercised discretionary authority or discretionary control respecting management of the Plan or authority or control respecting management or disposition of Plan assets, including assets held in the Escrow Fund, and ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), in that he exercised discretionary authority or discretionary responsibility in the administration of the Plan. Roberton was also a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

36. Defendant Kenneth Amburn was the President and Chief Operating Officer of GulfTel from September 29, 1999 until on or about 2002. Upon information and belief, Amburn was a member of the Board of Directors of GulfTel from September 29, 1999 until on or about 2002. Upon information and belief, Amburn was and is a member of the Board of Directors of Madison River. Amburn was fiduciary of the Plan within the meaning of § 3(21)(A)(i), 29. U.S.C. § 1002(21)(A)(i), in that he exercised discretionary authority or discretionary control respecting management of the Plan or authority or control respecting management or disposition of Plan assets, including assets held in the Escrow Fund, and ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), in that he exercised discretionary authority or discretionary responsibility in the administration of the Plan. Amburn was also a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

37. Defendant Stephen Vanderwoude is the Chairman of the Board of Directors and Chief Executive Officer of Gulf Coast and Madison River. Vanderwoude is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), in that he exercises discretionary authority or discretionary control respecting management of the Plan or authority or control

14

respecting management or disposition of Plan assets, including assets held in the Escrow Fund, and ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), in that he exercises discretionary authority or discretionary responsibility in the administration of the Plan. Vanderwoude is also a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

38.     Defendant Paul Sunu is the Managing Director of the Board of Directors and Chief Financial Officer of Madison River. Sunu is a fiduciary of the Plan within the meaning of § 3(21)(A)(i), 29. U.S.C. § 1002(21)(A)(i), in that he exercises discretionary authority or discretionary control respecting management of the Plan or authority or control respecting management or disposition of Plan assets, including assets held in the Escrow Fund, and ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), in that he exercises discretionary authority or discretionary responsibility in the administration of the Plan. Sunu is also a party interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

39.     Defendant Randy Wood is the President of GulfTel. Upon information and belief, Wood is a member of the Board of Directors of GulfTel. Upon information and belief, Wood is a member of the Board of Directors of Madison River. Wood is a fiduciary of the Plan within the meaning of § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), in that he exercises discretionary authority or discretionary control respecting management of the Plan or authority or control respecting management or disposition of the Plan's assets, including assets held in the Escrow Fund, and ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), in that he exercises discretionary authority or discretionary responsibility in the administration of the Plan. Wood is also a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

40.     Defendant Matt Springer is the Vice President – General Counsel of Madison River.

15

As such, he is a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

41.     Defendant Millry Management Corporation ("Millry"), an Alabama Corporation, was a 50% shareholder of DiGiPH with Gulf Coast being the other 50% shareholder prior to and on or about September 29, 1999. As such, Millry is a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

42.     Defendant Paul Brown was an owner of Millry and executive of DiGiPH prior and subsequent to September 29, 1999. As such, he was a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14). Collectively, Millry and Paul Brown are referred to as the "Millry Defendants."

43.     Defendant Snook Testamentary Trust, with Marjorie Snook and Lyman Holland, Jr. serving as Co-Trustees, and Marjorie Snook also serving as Executrix, held 29.4% of the outstanding shares of Gulf Coast prior to September 29, 1999. The Snook Testamentary Trust was a party in interest to the Plan within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

44.     Defendant American Appraisals Associates, Inc. ("AAA") is a valuation consulting firm that has performed annual appraisals of ESOP Gulf Coast stock since on or about 1997. Upon request of the ESOP Trustees, AAA performed an updated appraisal in connection with Madison River's offer to purchase all outstanding shares of Gulf Coast stock and prepared a "fairness opinion" regarding the consideration to be received from Madison River in connection with the merger. AAA is a party in interest within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

45.     Defendant Arthur Andersen & Co. ("Arthur Andersen") was engaged by the ESOP Trustees to review the updated appraisal performed by AAA. Arthur Anderson is a party in interest

16

within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

46.     Defendant Joseph DeCosimo and Company ("DeCosimo and Co.") advised the ESOP Trustees that he found AAA's valuation analysis and discount factors reasonable and appropriate. DeCosimo and Co. is a party in interest within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

47.     Defendant Gulf Merger Corporation was formed by Madison River as a wholly owned subsidiary corporation under the Alabama Business Corporation Act solely to facilitate the acquisition of all of the common stock of Gulf Coast. Gulf Merger Corporation, acting through its Board of Directors and officers, knowingly participated in ERISA breaches.

## V. FACTUAL ALLEGATIONS

### A.     Ownership of Gulf Coast Prior to the Merger Transaction

48.     As of July 10, 1999, the stock of Gulf Coast was owned as follows:

| ESOP | 39,040 shares | 42.2% |
|---|---|---|
| Snook Testamentary Trust | 27,113 shares | 29.4% |
| Snook Irrevocable Trust 1 | 1,700 shares | 1.8% |
| Snook Irrevocable Trust 2 | 23,000 shares | 24.9% |
| Others | 1,557 shares | 1.7% |
| Total | 92,410 shares | |

49.     In addition to the 39,040 Gulf Coast shares owned by the ESOP, as discussed below, the ESOP had an interest in the Gulf Coast shares held in the Snook Trusts.

### B.     John McClure Snook's Estate Plan

50.     The late John McClure Snook ("Mr. Snook")[4] created an Irrevocable Trust dated December 23, 1993 (the "Snook Irrevocable Trust Instrument"),[5] which was divided into two

---

[4] Mr. Snook passed away on July 21, 1994.

[5] A true and correct copy of the Snook Irrevocable Trust Instrument is attached hereto as Exhibit "C," made a part hereof, and

17

separate trusts: i) Snook Irrevocable Trust 1 ("Snook Trust 1") which was funded with 1,700 shares of stock of Gulf Coast; and ii) Snook Irrevocable Trust 2 ("Snook Trust 2") which was funded with 23,000 shares of stock of Gulf Coast. Marjorie Snook, the surviving spouse of Mr. Snook, was the income beneficiary of both trusts during her lifetime. The ESOP was the remainder beneficiary of Snook Trust 1. The ESOP had an interest in the Snook Foundation, in that, as discussed below in Paragraphs 61-62, the Snook Foundation had only five years to dispose of all but 35% of its holdings of Gulf Coast stock and its trustees were directed by Mr. Snook to cooperate in helping the ESOP obtain 65% voting control of Gulf Coast.

51.    Mr. Snook contemplated in Article Four of the Snook Irrevocable Trust Instrument that a qualified terminable interest property ("QTIP") election may be filed with respect to the gift of 23,000 shares of Gulf Coast stock allocated to Snook Trust 2 to qualify it for the marital deduction and thereby shelter the gift from gift tax.

52.    A testamentary trust (the "Snook Testamentary Trust") was also created under Mr. Snook's Last Will and Testament dated December 23, 1993 (the "Snook Will"),[6] which was admitted to probate and record in Baldwin County at Mr. Snook's death. This Trust held 27,113 shares of Gulf Coast stock, which upon information and belief, constituted approximately 95% of the value of the Trust. Marjorie Snook was also the income beneficiary of the Trust during her lifetime, with the remainder passing either to the ESOP (with respect to any portion for which no QTIP election was made by the executor of Mr. Snook's estate) or to the Snook Foundation (with respect to any portion for which a QTIP election was made by the executor of Mr. Snook's estate).

53.    Upon information and belief, a QTIP election was filed so that the remainder interest

---

incorporated by reference.

[6] A true and correct copy of the Snook Will is attached hereto as Exhibit "D," made a part hereof, and incorporated by reference.

18

vested in the Snook Foundation based upon various court filings discussed below.

54.    Article Two of both the Snook Will and the Snook Irrevocable Trust Instrument, which appear to be substantially similar, outline Mr. Snook's three primary goals:

    (a)    to provide financial security for Marjorie Snook, if she survived him;

    (b)    to transfer to the ESOP enough Gulf Coast stock to give the ESOP and the
           employees of the company a minimum of 65% of the voting control of Gulf
           Coast, whether this be by gift, sale or a combination of the two; and

    (c)    to provide funding for the Snook Foundation.

Mr. Snook recognized that United States tax laws may limit the amount of Gulf Coast stock held by the Snook Foundation.

55.    Section 2.04 of the Snook Will and the Snook Irrevocable Trust Instrument provides that the trustees shall have the authority to sell stock in Gulf Coast to the ESOP to accomplish his second goal, but that Marjorie Snook's aggregate ownership interest in the total voting stock of Gulf Coast shall not fall below 50.1% during Marjorie Snook's lifetime without her consent. Mr. Snook also gave Marjorie Snook, as Co-Trustee of the Snook Trusts, voting control of Gulf Coast insofar as election of directors is concerned during her lifetime.

56.    Section 2.05 of the Snook Will and the Snook Irrevocable Trust Instrument, which appear to be substantially identical, discusses the founding of Gulf Telephone Company by Mr. Snook's parents and his desire "to devise a method by which the ownership of the Telephone Company [Gulf Coast] can remain in the hands of persons from the area which it serves." Section 2.05 of the Snook Irrevocable Trust Instrument, which appears to be substantially identical to the same section of the Snook Will, provides that Mr. Snook "has concluded that the best and most

19

appropriate method [to accomplish his desire] is through the transfer of Telephone Company [Gulf Coast] stock to the ESOP which he encouraged Gulf Telephone Company to set up several years ago."

57.     In pertinent part, Section 2.06 of the Snook Irrevocable Trust Instrument, which is substantially identical to the same section in the Snook Will, provides the following:

> It is Trustor's plan, after Marjorie and he have both died, to encourage the sale to the ESOP of the bulk of the Telephone Company [Gulf Coast] stock upon the terms he has set forth in this Trust and his will, and under limited circumstances, give some stock to the ESOP.

58.     Section 2.07 of both the Snook Will and the Snook Irrevocable Trust Instrument provides that Mr. Snook would like to give all of the stock of Gulf Coast to the ESOP, but that this is not practical because it would cause substantial estate taxes and would frustrate his desire to fund the Snook Foundation. Accordingly, he will give part of his stock outright to the ESOP and sell part at a discount (even though this will cause estate tax).

59.     Section 2.08 of both the Snook Will and the Snook Irrevocable Trust Instrument describes Mr. Snook's desire that the ESOP ultimately acquire control of Gulf Coast and preserve its independence from "regional telephone companies." Upon information and belief, Madison River is a "regional" telephone company.

60.     Section 2.09 of both the Snook Will and the Snook Irrevocable Trust Instrument acknowledges that Mr. Snook has given the ESOP an option to purchase enough shares of Gulf Coast to give it control at his death, subject to Marjorie Snook's right not to sell during her lifetime.

61.     Section 2.10 of the Snook Irrevocable Trust Instrument, which is substantially identical to the same section in the Snook Will, provides that "[i]f...[the Snook Foundation] does

20

become a stockholder of the Telephone Company [Gulf Coast], it is his [Mr. Snook's] hope that the trustees of the Snook Foundation will work with the trustees of the ESOP in selling the remaining voting stock of the Telephone Company [Gulf Coast] to the ESOP, unless both parties agree that this is not advisable."

62. Section 2.13 of both the Snook Will and the Snook Irrevocable Trust Instrument acknowledges that the present tax laws only give the Snook Foundation a limited number of years in which to dispose of all but 35% of the voting common stock of Gulf Coast.[7] Both documents provide that the Snook Foundation may be permitted to hold some other form of security, including a debenture, in order to give the ESOP "sufficient time to acquire the remaining equity in the Telephone Company [Gulf Coast] from the Snook Foundation." These documents then authorize the executor and trustees to pursue such alternatives.

63. Thus, Mr. Snook clearly contemplated that not only control, but also enough stock to give the ESOP at least 65% of the ownership of Gulf Coast would be transferred to it shortly after Marjorie Snook's death, if not before.

## C.    ESOP Stock Options

64. Upon information and belief, the late Mr. Snook provided for two separate Gulf Coast stock purchase options for the ESOP, one through a separate document executed prior to his death entitled "Option to Purchase Stock," and another group of stock purchase options set out in his Will ("Snook Will Options"). Collectively, the Option to Purchase Stock and the Snook Will Options are referred to as the "ESOP Stock Options."

---

[7] Upon information and belief, this is a broad reference to the limitations imposed on private foundations under Code § 4943, 26 U.S.C. § 4943. A private foundation which violates Code § 4943 incurs an initial excise tax equal to 5% of the value of the "excess business holdings," followed by a tax equal to 200% of such excess if the violation is not cured within a stated period, which is generally five years for gifts or bequests to the foundation.

21

## 1.    Option to Purchase Stock

65.    The Option to Purchase Stock, granted on December 23, 1993, gave the ESOP the option to purchase 25,000 shares of the common stock of Gulf Coast at fair market value at any time; provided, however, the ESOP could not acquire more than 49.9% of the total outstanding common stock of Gulf Coast during Marjorie Snook's lifetime without her written consent.  This Option expires nine years after her death.

66.    Upon information and belief, prior to July 10, 1999, the ESOP had purchased 1,034 shares of Gulf Coast stock from the estate of Mr. Snook pursuant to the Option to Purchase Stock, leaving 23,966 shares subject to this Option.  Therefore, as of July 10, 1999, the ESOP owned 42.2% of the outstanding shares of Gulf Coast and had the right to purchase an additional 7.7% of the outstanding stock, or 7,300 shares without Marjorie Snook's consent.

## 2.    Snook Will Options

67.    The Snook Will included various directions that Gulf Coast common stock be offered for sale to the ESOP at various price discounts and under various conditions.  Under one such provision, the ESOP was given the option of buying $5 million worth of Gulf Coast common stock for $3 million, reflecting a 40% discount.  The participants of the ESOP were informed in a memorandum from the ESOP Trustees and Administrative Committee dated July 10, 1999 (the "Disclosure Memorandum")[8] that this sale was in fact consummated in 1994 shortly after Mr. Snook's death.

68.    The Snook Will also provided that if Marjorie Snook survived Mr. Snook, then upon her subsequent death, the ESOP would be offered the opportunity to buy a certain amount of stock at

---

[8] A true and correct copy of the Disclosure Memorandum is attached hereto as Exhibit "E," made a part hereof, and incorporated by reference.

22

a discounted price based upon the year of her death (the "Discounted Testamentary Stock Options"),

as follows:

| If Marjorie Snook's date of death is: | Amount of Stock | Percentage Discount | Value of Discount |
|---|---|---|---|
| Before 7/24/99 | $ 4,000,000 | 75% | $3,000,000 |
| After 7/23/99 and before 7/24/02 | $ 6,000,000 | 60% | $3,600,000 |
| After 7/23/02 and before 7/24/05 | $ 8,000,000 | 55% | $4,400,000 |
| After 7/23/05 | $10,000,000 | 50% | $5,000,000 |

## D.   Offers to Buy Gulf Coast or DiGiPH

69.     Upon information and belief, negotiations were underway in the Fall of 1997 for the sale of Gulf Coast, bids were being solicited for the sale of Gulf Coast at that time, and a bid was received for the stock and/or assets of Gulf Coast as of the Fall of 1997, if not earlier.

70.     On at least two occasions, once in 1998 and once in 1999, Campbell Lanier III, an owner and executive of PowerTel (a Georgia based telecommunications company), approached Gulf Coast and Millry about buying DiGiPH.

71.     In September of 1998, an offer was made by Gulf Coast Communications, Inc. ("GCCI"), a company formed by Dale Younce, a nephew of Marjorie Snook, and Charles Houser, to purchase all outstanding stock of Gulf Coast for $926.41 per share (the "Younce Offer"). In addition to the consideration offered for the stock, this offer included an additional payment of $2.33 million to the ESOP participants as consideration for the relinquishment of certain stock option interests held by the ESOP under the terms of certain trusts created by John McClure Snook. Upon information and belief, the $2.33 million was for the relinquishment of the Snook Will Options.

72.     After receiving the Younce Offer, Gulf Coast solicited other offers for the purchase of

23

its stock, the highest of which, according to the Disclosure Memorandum, was from Madison River.

## E.  The Proposed Merger

### 1.  Overview of Merger Consideration

73.     On or about May 9, 1999, a merger agreement was entered into by and between Gulf Coast and Madison River for the acquisition of all shares of Gulf Coast (the "Merger Agreement"). The Board of Directors of Gulf Coast authorized the execution of the Merger Agreement on May 8, 1999.  On July 1, 1999, the First Amendment to the Merger Agreement ("First Amendment") was executed by the parties.

74.     The primary document used to communicate the terms of the acquisition to ESOP participants was the Disclosure Memorandum dated July 10, 1999 and addressed to ESOP participants from the ESOP Trustees and Administrative Committee.

75.     The Disclosure Memorandum explains that the acquisition by Madison River would be arranged in the form of a merger of Gulf Merger Corp., an Alabama corporation to be formed and solely owned by Madison River, with and into Gulf Coast. Gulf Coast was to be the surviving entity and each share of Gulf Coast stock was to be converted into the right to receive a pro rata share of the "Merger Consideration" and the "Additional Merger Consideration" in cash.

76.     As to the definition of the term "Merger Consideration," the Disclosure Memorandum states the following:

> The Merger Consideration was defined in the original Merger
> Agreement and refers to the sum of (i) $310,000,000 reduced by (A)
> the Adjusted Long Term Debt (as defined in Article I of the Merger

24

> Agreement) of GCSI [Gulf Coast] as of the closing date, which is
> estimated to be $60-65 million at closing, and (B) unexpended and
> unincurred capital budgeted items for fiber projects described in
> GCSI's 1999 capital budget as of the closing date, plus (ii) the sales
> price of the Non-Business Real Estate (as defined in Article I of the
> Merger Agreement), and (iii) the sales price of GCSI's 50% interest
> in DigiPH Holding Company, Inc., an Alabama corporation.

77.     As to the definition of the term "Additional Merger Consideration," the Disclosure
Memorandum states the following:

> The Additional Merger Consideration was also defined in the original
> Merger Agreement as meaning generally the sum of (i) the amounts
> paid or disbursed by GCSI or any of its subsidiaries in connection
> with fiber projects after May 9, 1999 (the date of the Merger
> Agreement) and on or before the closing date, not to exceed
> $10,000,000, and (ii) the Incentive Payment of up to $5,000,000 (as
> defined in Article I of the original Merger Agreement).

78.     Under the heading "Summary of Cash Offer Under the Original Merger Agreement,"

the Disclosure Memorandum states that the estimated net merger consideration under the Madison

River purchase offer would be approximately $250 million and that additional payments of as much

as $23.1 million could result in a total potential merger consideration of approximately $273.1

million.  Footnote 3[9] of the Disclosure Memorandum indicates that the $23.1 million represents the

net proceeds of the sale of Gulf Coast's DigiPH interest ($6.5 million), the sale of Gulf Coast non-

operating real and personal property ($1.67 million) ("Non-Business Assets"), and up to $15 million

in incentive payments as part of the merger, which are generally based on the extent of a completed

fiber network construction project before closing.  This section of the Disclosure Memorandum

concludes by stating that the price per share under the original Merger Agreement was previously

expected to range from approximately $2,705 to $2,950 per share, but that these projections have

since been reduced somewhat due to the terms of the First Amendment.

---

[9] Exhibit E, Page 4.

79.     Under the heading "Summary of the Cash Offer Terms under the First Amendment," the Disclosure Memorandum states that the total net merger consideration will be reduced under the First Amendment by "approximately $6.5 million below the projected range of merger consideration under the original Merger Agreement, so that the total net merger consideration now can be expected to range approximately from $243.5 million to $266.5 million, or from approximately $2,635 to $2,884 per share, more or less." It is not readily apparent why the consideration for fiber projects was reduced under the Amendment.

80.     In a section describing the ESOP Stock Options, the Disclosure Memorandum states that "for the reasons potentially applicable to the Snook Will and Trusts, the Snook Trustees initially requested that the ESOP Trustees waive, or agree not to exercise this option [the Option to Purchase Stock], contingent upon the successful completion of the merger." The Disclosure Memorandum does not state when this waiver or agreement occurred, how long it lasted, the value of the stock on such date, or if any consideration was paid for the waiver or agreement. The Disclosure Memorandum states that the ESOP Trustees subsequently exercised the right to purchase the maximum number of shares authorized under the Option to Purchase Stock on July 2, 1999. The Disclosure Memorandum indicates that the stock subject to the Option was sold at a discounted rate of approximately 12.5% less than the current cash offer price by Madison River, resulting in an additional $1.8 million, more or less, payable to the ESOP upon closing the Merger Agreement. Upon information and belief, based upon the ESOP's stated ownership of the Escrow Fund, as discussed below in Paragraph 148, the Option to Purchase Stock may not have been fully exercised.

## 2.     Valuation of ESOP Stock and Fairness Opinion

81.     According to the Disclosure Memorandum, after the execution of the Merger

26

Agreement on May 9, 1999, the ESOP Trustees engaged AAA, the company that had previously conducted annual appraisals of the Gulf Coast stock for the ESOP, to prepare an annual valuation of the Gulf Coast stock for the 1998 Plan year. The same firm was also asked to update the appraisal through the May 9, 1999 Merger Agreement, to provide a "fairness opinion" with respect to the proposed merger consideration, and to value the options granted to the ESOP under the Option to Purchase Stock.

82.    ESOP participants were informed through the Disclosure Memorandum that AAA considered the projected merger consideration of $2,705 to $2,950 per share, "discounted for time and risk factors at a rate of 12.5%, or approximately $2,365 to $2,580 per share," to be reflective of the fair market value of a minority interest as of May 9, 1999.

83.    According to the Disclosure Memorandum, AAA assigned a value of "approximately zero" to the options granted under the Option to Purchase Stock, "assuming among other factors, a minority interest limitation and the non-assignability of the option."

84.    The conclusion that zero value should be assigned to the options granted under the Option to Purchase Stock is inconsistent with later statements made in the Disclosure Memorandum to the effect that the exercise of the Option resulting in the ESOP acquiring an additional 7.7% (*i.e.*, the maximum allowed given the 49.9% ownership limitation noted above) of Gulf Coast stock at the discounted rate of 12.5% could provide an additional $1.8 million, more or less, payable to the ESOP upon the closing of the Merger Agreement.

85.    The options granted under the Option to Purchase Stock had value at the time of the proposed merger because the option holder had the ability to veto any proposed transaction and the minority interest limitations expired at Marjorie Snook's death. Upon information and belief, the

27

Snook Will Options, which also had value, were not considered by AAA.

86.     The Disclosure Memorandum informed participants that the updated appraisal was reviewed by Arthur Andersen and an unnamed independent financial advisor engaged by the "Snook Trustees" and Gulf Coast. Upon information and belief, the financial advisor was DeCosimo and Co.

87.     The Disclosure Memorandum notes that AAA valued the ESOP shares at only $510.00 per share as of December 31, 1997. After the Merger Agreement was executed by the parties, AAA was asked to perform the 1998 valuation and placed a value of $939.00 per share on the ESOP shares as of December 31, 1998. The updated value as of May 9, 1999, some five months later, was approximately $2,365 to $2,580 per share. This increase of approximately 500% in value from the December 31, 1997 appraisal of ESOP stock occurred over an 18-month period and would have caused any prudent person to be concerned about the independence of the appraiser.

88.     The GulfTel Board of Directors, who had oversight responsibility of the ESOP Trustees, did not object to the selection of AAA. Upon information and belief, no other appraisers were considered to perform the initial appraisal of Gulf Coast stock for purposes of the merger.

89.     The ESOP Trustees and Gulf Coast Board of Directors, all of whom were GulfTel officers, knew, or should have known, that AAA was likely to render a valuation supporting the price offered for Gulf Coast shares by Madison River in connection with the merger.

90.     Although members of the Board of Directors of Gulf Coast, and possibly others, knew of PowerTel's interest in DiGiPH, neither the Board of Directors of Gulf Coast nor any ESOP Trustees contacted Dennis Kaiser, the President of DiGiPH, to inquire about PowerTel's interest in buying DiGiPH or the value of this component of the Merger Consideration.

28

91. Upon information and belief, neither AAA, Arthur Andersen, nor DeCosimo and Co. made any inquires with Dennis Kaiser or any other executives who might have had knowledge of the value of DiGiPH.

92. Upon information and belief, AAA did not consider DiGiPH in evaluating the adequacy of the consideration to be paid for Gulf Coast's interest in DiGiPH pursuant to the Merger Agreement.

## 3. Notice to Shareholders and Vote to Approve Merger

93. Section 10.16 of the ESOP Plan Document provides that a participant has the right to direct the Trustee of the ESOP regarding the voting of Gulf Coast stock allocated to his account with respect to any corporate merger. *Code of Alabama* (1975) §10-2B-11.03 requires that any notice sent to shareholders for the purpose of considering a plan of merger contain or be accompanied by a copy or summary of the plan.

94. The Disclosure Memorandum contains a partial description of the plan of merger between Madison River and Gulf Coast and states that the Merger Agreement and First Amendment are available for participant review at the GulfTel offices. The final page of the Disclosure Memorandum provides an instruction form for each ESOP participant to complete in order to direct the ESOP Trustees to vote all of the Gulf Coast shares allocated to that participant's account for or against the proposed merger. The Disclosure Memorandum directs ESOP participants to complete and return their voting instructions to the ESOP Trustees by August 2, 1999.

## F. Material Omissions Regarding the Terms of the Merger

### 1. Disclosure Memorandum Omits Discussion of the Escrow Fund

95. The Disclosure Memorandum fails to make any reference to the establishment of the

29

Escrow Fund or the Escrow Agreement pursuant to which $25 million in proceeds from the merger would be diverted to the Escrow Fund. The $25 million in proceeds that was diverted to the Escrow Fund constituted approximately 11% of the final net merger consideration that was received by Gulf Coast shareholders from Madison River.

**2.    Disclosure Memorandum Provides Insufficient Information Regarding DiGiPH**

96.    Upon information and belief, $6.5 million is approximately equal to Gulf Coast's initial investment outlay in DiGiPH. DiGiPH is the successor of Tri-States Management Company, Inc. 130 ("Tri-States"), a corporation formed pursuant to the Alabama Business Corporation Act on or about June 6, 1995. The initial Board of Directors of Tri-States consisted of Marjorie Snook, Dennis Kaiser, Robert Mackey, Edd Williams, and Paul Brown. Upon information and belief, Tri-States was equally owned by Gulf Coast and Millry upon initial issuance of Tri-States stock.

97.    On or about February 20,1997, Tri-States amended its Articles of Incorporation to change its name to DiGiPH. Before this date, Tri-States acquired eight Personal Communication Service ("PCS") licenses through an auction administered by the Federal Communications Commission (the "FCC"). According to FCC File No. 0000151639, Tri-States acquired these licenses at a "twenty-five-percent bidding credit as an entrepreneur qualifying as a small business."

98.    Based on its ownership of these licenses, *inter alia*, Millry and the members of the Board of Directors of DiGiPH, including Marjorie Snook, Robert Mackey, and Paul Brown knew, or should have known, that Gulf Coast's 50% interest in DiGiPH was worth substantially more than $6.5 million.

99.    Article IX of the Merger Agreement between Madison River and Gulf Coast contains a reference to the eight FCC licenses possessed by DiGiPH. Therefore, Madison River, Gulf Coast,

30

and at least the directors and executives of both companies were aware of the eight FCC licenses DiGiPH possessed.

100.    The only information stated in the Disclosure Memorandum regarding DiGiPH was that Merger Consideration included the sales price of Gulf Coast's 50% DiGiPH interest and that $6.5 million for the sale of DiGiPH was included in $23.1 million of additional payments as part of the total merger consideration. Therefore, the Disclosure Memo fails to communicate sufficient information regarding DiGiPH that would allow ESOP participants to evaluate the merits of the Madison River offer.

**3.    Disclosure Memorandum Omits Discussion of Valuation of Snook Will Options**

101.    ESOP Participants were not informed in the Disclosure Memorandum or otherwise whether AAA placed any value on the Snook Will Options or if AAA was even asked to consider the same in determining the value of the ESOP's interest in Gulf Coast.

**4.    Undisclosed Amendments Subsequent to the Disclosure Memorandum**

102.    Upon information and belief, in addition to the First Amendment, second and third amendments to the Merger Agreement were executed subsequent to the Disclosure Memorandum.

103.    Upon information and belief, the ESOP participants were not informed of the material terms of these amendments.

104.    Upon information and belief, the First Amendment and subsequent amendments to the Merger Agreement reduced the consideration that ESOP participants would receive in connection with the merger for the benefit of Marjorie Snook and/or other majority Gulf Coast shareholders. Upon information and belief, the third amendment to the Merger Agreement, which authorized execution of the Escrow Agreement, was adopted solely to protect Gulf Coast fiduciaries and future

31

Madison River fiduciaries from pending litigation relating to the ESOP.

## G.   Marjorie Snook's Misuse and/or Conversion of Gulf Coast Assets

105.   Upon information and belief, Marjorie Snook wasted corporate assets by purchasing personal assets through Gulf Coast, including her personal residence and/or other assets characterized as the Non-Business Assets in the Merger Agreement. In addition, she utilized Gulf Coast employees to work on her farm and personal residence and for other improper purposes.

106.   Upon information and belief, Marjorie Snook improperly used and/or converted Gulf Coast assets for her own benefit, including, but not limited to Gulf Coast's interest in a joint venture investment with Lamar Advertising. This misuse and/or conversion occurred prior to and/or in connection with the merger of Gulf Coast with Madison River.

107.   Upon information and belief, the value of Gulf Coast was reduced by Marjorie Snook's misuse and/or conversion of corporate assets and misuse of Gulf Coast employees, thereby, leading to a reduction in merger consideration received by the ESOP participants.

## H.   Litigation Relating to the Snook Trusts Prior to Merger Closing

### 1.   Petition for Termination of the Trusts

108.   A Petition for Termination of Trusts (the "Termination Petition") was filed by the Trustees of the Snook Trusts and one of the Trustees of the Snook Foundation on August 13, 1999 (Civil Action No. 99-496). Upon information and belief, Robert Mackey, Jr., Ann Byrd, and Esther Williams as the ESOP Trustees, certain Trustees of the Snook Foundation, including Zona Cross, Lester Smith, Edith Broz, Margaret Gunnison, and Billy Lambert, and the Attorney General of the State of Alabama as representative of the beneficiaries of the Snook Foundation were named as defendants.

32

109. The Termination Petition sought the early termination of the Snook Trusts prior to Marjorie Snook's death, the early distribution of the purported value of the income interest to Marjorie Snook, the early distribution of the purported value of the remainder interest in Snook Trust 1 to the ESOP, and the early distribution of the purported value of the remainder interest in the Snook Testamentary Trust and Snook Trust 2 to the Snook Foundation.

## 2. Joint Stipulation of the Parties

110. A Joint Stipulation of the Parties was filed in connection with the Termination Petition on or about August 26, 1999. Upon information and belief, the parties to the Joint Stipulation are identical to the parties of the Termination Petition. The Joint Stipulation, *inter alia*, contains the following stipulations of the parties i) there were nonbusiness assets owned by Gulf Coast that were to be purchased by Marjorie Snook for $1,672,771.42; ii) Marjorie Snook, in her capacity as income beneficiary, has made demand that the shares of Gulf Coast stock in the Snook Trusts be made productive; iii) since Gulf Coast has not paid a dividend since 1979, the shares of Gulf Coast in the Snook Trusts have produced no income to pay the income beneficiary (*i.e.*, Marjorie Snook); iv) consideration to be provided under the Merger Agreement, includes $6.5 million to be paid for Gulf Coast's 50% interest in DiGiPH, and up to $15 million based on the money spent for the additional miles of optic cable installed by Gulf Coast as of the closing date; and v) Marjorie Snook "has negotiated, or is negotiating, a severance agreement for which she will be compensated."

111. The stipulation relating to Gulf Coast's failure to pay a dividend is misleading in that Marjorie Snook had effective control over whether Gulf Coast paid a dividend, considering that she was given voting control with respect to the election of directors of Gulf Coast pursuant to Section

33

2.04 of the Snook Will and the Snook Irrevocable Trust Instrument.

### 3.    First Amendment to Termination Petition

112.    A First Amendment to the Termination Petition was filed by Mort Swaim, as Marjorie Snook's attorney in the above-referenced action, on September 14, 1999. The Amendment states that the ESOP Trustees and the Trustees of the Snook Foundation are both in favor of early termination. The Amendment seeks immediate termination of the Snook Trusts prior to the closing of the merger between Madison River and Gulf Coast, which it described as imminent. This Amendment further states that Marjorie Snook objects to any continuance of a hearing scheduled for Monday, September 20, 1999, which she anticipated would be filed by Lyman Holland, Jr. as a Co-Trustee of the Snook Trusts.

113.    Upon information and belief, as discussed below, Snook Trusts 1 and 2 were terminated.

### I.    Sale of DiGiPH

114.    Although the Disclosure Memorandum indicates that $6.5 million was to be paid by Madison River for Gulf Coast's 50% interest in DiGiPH as a part of the Merger Consideration, upon information and belief, this interest was actually sold for this amount to Millry pursuant to a right of first refusal it had under an existing buy-sell agreement. Upon information and belief, pursuant to the terms Article IX of the Merger Agreement, this sale occurred prior to September 29, 1999.

115.    Based on published news reports, DiGiPH was sold for $375 million in May of 2000, more than 28 times the value assigned by Gulf Coast to DiGiPH when it sold its 50% interest for $6.5 million, a little more than nine months prior to such date.

### J.    Establishment of the Escrow Fund

34

116.    The Escrow Agreement was entered into on September 28, 1999 by and among

Madison River, Gulf Merger Corp., Gulf Coast, the GCSI Stockholders, and Regions Bank, as the

"Escrow Agent."

117.    The Escrow Agreement provides, *inter alia*, that the "Merger Agreement

contemplates the execution and delivery of this Agreement and the deposit by Regions Bank...with

Escrow Agent the Escrow Amount in the sum of $25,000,000."

118.    The Escrow Agreement provides for the establishment of an Escrow Committee:

> The Escrow Committee shall consist of the following members: a
> representative of MRTC [Madison River], a representative of GCSI
> Stockholders and a third party designated by the members of the
> Escrow Committee. The third member of the Escrow Committee
> shall be a qualified person with prior judicial or other relevant
> experience. Such third member shall not have previously represented
> the MRTC, GCSI [Gulf Coast] or its subsidiaries, or any shareholder
> or ESOP participant. The reasonable fees and expenses of such third
> member shall be paid out of the Escrow pursuant to the terms of a
> written agreement approved by the other members of the Escrow
> Committee. Such third member may be removed by agreement of the
> MRTC and representative of the GCSI Stockholders, for any or no
> reason, upon seven (7) days' notice. The representative of the
> majority shareholders, who shall initially be selected by Marjorie Y.
> Snook, shall be replaced only upon nomination of a replacement by
> Ms. Snook and confirmed by a majority vote of GCSI Stockholders
> voting. The representative of the GCSI Stockholders and MRTC may
> receive reimbursement for all expenses associated with their work on
> the Escrow Committee, as provided herein. Except as otherwise
> specified herein, all actions taken by the Escrow Committee must be
> confirmed in writing of all members.

119.    Paragraph 6(a) of the Escrow Agreement provides that sums may be disbursed from

the Escrow Fund under the following terms and conditions:

> Through a disbursement notice signed only by Paul H. Sunu of
> MRTC [Madison River], or such other person designated in writing
> by MRTC to Escrow Agent [Regions Bank] from time to time,
> MRTC may draw upon the Escrow Fund to pay expenses (including,

35

> but not limited to, attorney's fees but excluding any allocation of
> costs of MRTC or GCSI salary or general overhead expenses)
> incurred by MRTC, GCSI or any of their subsidiaries or affiliates, in
> connection with investigating, defending, settling or prosecuting any
> action, suit, proceeding, declaratory judgment action, claim,
> counterclaim, dispute or litigation (other than claims covered under
> the workers' compensation laws of the State of Alabama)
> (individually or collectively, "Proceedings") which:
>
> (1) as of this date have a court docket number; or
>
> (2) (i) arise from claims, counterclaims, crossclaims or circumstances
> referenced in any Proceedings described in (1) above; and (ii) which
> are filed on behalf of any current or future claimant in such
> Proceedings described in (1) above or any similarly situated claimant
> in any future Proceedings…
>
> In addition, MRTC may draw upon the Escrow Fund to pay insurance
> premiums for a sixty-month, $10,000,000 supplemental directors and
> officers liability policy. It is the understanding of the Parties that
> such policy will not cover any matter related to a Proceeding.

With respect to these types of disbursements, the Escrow Committee has the "right to

object to any payment which it decides is not a *bona fide* payment to a third party, and shall have the

right to obtain reimbursement of such payments either from the party to whom payment was made or

the party on whose behalf payment was made."

120. The Escrow Agreement further provides that, upon a disbursement notice signed

by a majority of members of the Escrow Committee, the following payments may be made from

the Escrow Fund:

> [A]mounts constituting or satisfying any and all actions, suits,
> proceedings, claims, liabilities, demands, settlements assessments,
> judgments, interest, penalties, costs and expenses, including
> reasonable attorneys' fees (whether or not incurred in connection with
> investigating, defending, settling or prosecuting any action, suit,
> proceeding or claim against MRTC, GCSI, the ESOP or any affiliate,
> officer director or employee thereof hereunder), incident to any
> Proceedings referred to in paragraph (a) of this Section 6.

36

121.    The Escrow Agreement provides that the Escrow Agent shall receive 5% of the

gross investment income generated by the Escrow Fund which shall be paid from the Escrow

Fund.

122.    The Escrow Agreement allows for certain other payments to be made to Madison

River associated with the Gulf Coast's obligation to maintain a certain amount of cash and cash

equivalent reserves and unpaid financial obligations under the terms of the Merger Agreement;

however, these payments may not exceed $2 million in the aggregate.

123.    Paragraph 6(e) of the Escrow Agreement provides for the final disbursement of all

remaining amounts in the Escrow Fund after the earlier of the following:

> (i) a final, non-appealable resolution of all Proceedings referred to in
> paragraph (a) of this Section 6 filed within three (3) years from the
> date hereof (ii) a final non-appealable resolution of all claims arising
> from claims or circumstances described in any Proceedings which as
> of this date have a court docket number and which is binding, as a
> matter of law, on all Claimants, or (iii) three (3) years, in the event no
> claims referred to in paragraph (a) of this Section 6 are pending and
> no claims described in (e)(ii) above are filed within such three (3)
> year period…

124.    The final disbursement of assets held in the Escrow Fund is to be made first to

Madison River to pay any amounts due under the Escrow Agreement (*i.e.*, amounts for cash reserves

and unpaid financial obligations not to exceed $2 million) and then to GCSI Stockholders, including

ESOP participants whose shares were sold in connection with the merger.

## K.    Merger Closing

125.    The merger between Gulf Coast and Madison River closed on September 29, 1999.

According to a communication issued to ESOP participants on or about September 2002 regarding

37

the establishment and status of the Escrow Fund (the "Escrow Fund Notice"),[10] the purchase price received in connection with the merger was as follows:

| | | |
|---|---|---|
| Purchase price paid by Madison River | 312,558,656.00 | |
| Adjustments for cash on hand and long-term debt | (51,654,065.21) | |
| Net cash paid to shareholders | 260,904,590.79 | |
| Less: | | |
| Administrative expenses | (209,547.44) | |
| Escrow Fund | (25,000,000.00) | |
| | 235,695,043.35 | Per share 44,556 |
| ESOP Ownership interest % (a) | 48.215562% | ESOP shares |
| Cash distributed to ESOP trust | 113,641,689.76 | 2,550.54 |
| Repayment of ESOP's share of Co-Bank loan post-closing | (1,732,457.00) | (38.88) |
| | 111,909,232.76 | 2,511.65 |

(a) Note that with the settlement of the Snook Trust in December 1999, the ESOP's Beneficial interest in the Escrow Fund increased from 48.2% to 48.9%

126.   The actual cash consideration received by the ESOP was $2,511.65 per share (after deducting the $25 million placed in the Escrow Fund) - more than $120.00 per share less than the lowest projected price set out in the Disclosure Memorandum.

## L.   Termination of Snook Trusts 1 and 2

127.   An Order was entered by the Circuit Court of Baldwin County on October 14, 1999 terminating the Snook Trusts (the "Termination Order") based upon a finding that "(a) all beneficiaries are competent and consent to the trust termination; (b) there are no contingent

---

[10] A true and correct copy of the Escrow Fund Notice is attached hereto as Exhibit "F," made a part hereof, and incorporated by reference.

beneficiaries; and (c) the material purposes of the trust will not be frustrated by the trust termination." The Termination Order directed distribution of the assets as follows:

| Snook Irrevocable Trust 1 | Marjorie Snook | 63.412% |
| | ESOP | 36.588% |
| | | |
| Snook Irrevocable Trust 2 | Marjorie Snook | 63.412% |
| | Snook Foundation | 36.588% |
| | | |
| Snook Testamentary Trust | Marjorie Snook | 63.412% |
| | Snook Foundation | 36.588% |

128.    The Termination Order does not mention Mr. Snook's stated desire that the ESOP ultimately acquire most, if not all, of Gulf Coast's stock or the Snook Will Options and the Option to Purchase Stock. Further, there is no indication from the Order that the ESOP Stock Options were given any value in determining the value of each party's interest in the various trusts.

129.    On December 14, 1999, Mort Swaim, attorney for Marjorie Snook,[11] filed a Petition for Removal of Estate from Probate Court and Consolidation with Case No. CV-99-496 in the Circuit Court of Baldwin County (the "Removal Petition"). The Removal Petition requests that the Circuit Court remove the "administration of Estate [of John McClure Snook, Deceased] from the Probate Court of Baldwin County...to the Circuit Court of Baldwin County" and states that in "the opinion of the petitioner, the Estate can be better administered in the Circuit Court of Baldwin County, Alabama than in the Probate Court of Baldwin County, Alabama." The Removal Petition references a motion to vacate, alter or amend the Circuit Court's order filed by Lyman Holland, Jr. on November 15, 1999, which motion was Denied on December 1, 1999.

130.    A Pro Tanto Settlement Agreement was entered into on December 17, 1999 by Marjorie Snook and Lyman Holland, individually, and as Co-Trustees of all three Snook Trusts, the

---

[11] According to the Petition, Marjorie Snook was acting individually and in her capacities as Executrix of the Estate of John McClure Snook, Deceased, Co-Trustee of the Snook Trusts, and Co-Trustee of the Snook Foundation.

39

Trustees of the Snook Foundation, and the Attorney General on behalf of the charitable beneficiaries. The ESOP Trustees were not parties.

131.    The Pro Tanto Settlement Agreement provides that Lyman Holland, as a Co-Trustee of the Snook Trusts, and the Attorney General opposed the early termination of the Snook Trusts and that Holland was considering an appeal of the Circuit Court's Termination Order. Based on a pleading entitled "First Supplement to Petition for Termination of Trust," at a hearing on August 13, 1999, Holland had taken the position that the termination of the Snook Trusts was "was up to the beneficiaries." The Settlement Agreement purports to be a compromise and settlement of this dispute and principally provides that Snook Trusts 1 and 2 shall be terminated, but that the Snook Testamentary Trust shall not be terminated. The Agreement provides that the parties will file a joint motion to alter or amend the Termination Order so that the Snook Testamentary Trust will not be terminated.

132.    The Pro Tanto Settlement Agreement acknowledges that the ESOP released all claims it had to shares of Gulf Coast stock under any of the Snook Trusts by instrument dated September 29, 1999. It does not mention that any consideration was received by the ESOP for this release.

133.    The Pro Tanto Settlement Agreement directs that the legal fees of various firms involved in the termination of Snook Trusts 1 and 2 be charged against the principal of the Snook Testamentary Trust and that a "success fee in the amount of $920,000 shall be paid to the attorneys (other than M. Mort Swaim, P.C. and Stone, Granade and Crosby, P.C.) who participated in the negotiation and sale of the Company [Gulf Coast] in recognition of the benefit realized on behalf of the trusts as the result of the sale of the trusts' interests in the Company."

134.    The Pro Tanto Settlement Agreement further provides for the payment of a "trustee's

40

fee" of $2,900,000 to Lyman Holland and a "personal representative's fee" of $2 million to Marjorie Snook. In addition, $2,559,613.09 of the net proceeds received by Snook Trust 2 and $2,233,581.87 of the net proceeds received by the Snook Testamentary Trust were allocated as "delayed income" and paid to Marjorie Snook. A $3 million loan made to Marjorie Snook from the Snook Testamentary Trust on September 29, 1999 was to be paid concurrently with the distribution of assets of Snook Trust 2.

135. The Escrow Fund is referenced in the Pro Tanto Settlement Agreement "as a way to keep monies in escrow while certain civil cases are being resolved regarding the amount received by retiring employees as a result of their participation in the ESOP."

## M.    Grimes Litigation and Amendment to Escrow Agreement

### 1.    Grimes Litigation

136. On November 18, 1999, the class action complaint *Grimes, et al. v. Gulf Telephone, et al.*, No. 99-986-RV-C was filed in the United States District Court for the Southern District of Alabama (the "*Grimes* Complaint"). The *Grimes* Complaint was filed by former participants in the ESOP that had been cashed out prior to September 29, 1999. GulfTel, Gulf Coast, Dale Younce, GCCI (Younce's company), Marjorie Snook, and Robert Mackey, Jr., Ann Byrd, and Esther Williams as ESOP Trustees , were named as defendants.

137. The *Grimes* Complaint alleged, *inter alia*, that defendants Snook and Younce told the plaintiff class members that Gulf Coast would not be sold in order to induce them to sell their ESOP stock back to either the ESOP and/or Gulf Coast based on a stock valuation as of December 31, 1997. This valuation was significantly lower than the consideration received from Madison River. The Complaint also noted that the bid made by GCCI in 1998 was more than twice the value set by

41

the December 31, 1997 valuation prepared by AAA. The Escrow Fund Notice, as discussed below, indicates that the case was settled for $5,023,872.39 (the "*Grimes* Settlement"). Upon information and belief, this settlement occurred on or about July of 2000.

## 2.     Amendment to Escrow Agreement

138.     On May 31, 2000, the "Amendment to Escrow Agreement" was executed. The Amendment was executed by Madison River, Gulf Coast (as itself and successor in interest to Gulf Merger Corp.), the GCSI Stockholders, and the Escrow Agent (*i.e.*, Regions Bank).

139.     The Amendment to Escrow Agreement amends Paragraph 6(a)(2) of the original Escrow Agreement to specifically permit payments from the Escrow Fund to be made for expenses "arising out of any present or former employee's interests in the Gulf Telephone Company Restated Employee Stock Ownership Plan and/or 401(k) Plan." Thus, the Amendment to Escrow Agreement makes clear that the Escrow Fund can be used to pay claims arising from any future litigation in connection with the ESOP, including the payment of claims relating to ERISA fiduciary breaches.

140.     In addition, the Amendment to Escrow Agreement amends Paragraph 6(e) of the Escrow Agreement to extend the final distribution under the Escrow Fund to the following:

> After (and not before) the later of: (i) a final, nonappealable resolution of all Proceedings or Related Proceedings referred to in paragraph(a) of this Section 6 filed within (6) years of the date of this Amendment; (ii) a final non-appealable resolution of all claims arising from claims or circumstances described in any Proceedings which as of this date have a court docket number and which is binding, as a matter of law, on all Claimants; or (iii) six (6) years, in the event that no claims described in (e)(ii) above are filed within such six (6) year period...

Thus, pursuant to the Amendment to Escrow Fund, no final distribution from the Escrow Fund can be made earlier than six years from May 31, 2000, and the final distribution could possibly be later.

141.    Upon information and belief, the six-year period provided for in Paragraph 6(e) is

based on ERISA § 413, 29 U.S.C. § 1113, which provides for a six-year statute of limitations period

on actions under ERISA for fiduciary breaches in certain instances, including actions involving fraud

or concealment.

## N.    Participant Communications Relating to the Escrow Fund

### 1.    May 23, 2000 Memorandum

142.    A May 23, 2000 Memorandum to "GulfTel Employees" regarding "Settlement of

*Grimes* Litigation" from Kenneth Amburn, Chief Operating Officer of GulfTel, states the following:

> I am pleased to announce that last week the Company reached a
> preliminary settlement of the litigation brought by certain former
> employees with respect to the Company's...ESOP...As you no doubt
> recall, because of the potential liability of the ESOP, this litigation in
> part has prevented substantial distributions of the proceeds from the
> sale to ESOP participants.  From the outset, our goal has been to
> achieve an early resolution of this litigation so that we can remove a
> major uncertainty surrounding the ESOP and our employees' ESOP
> interests.
>
> The Company and other defendants have vigorously defended the
> *Grimes* litigation and deny any wrongdoing alleged in the complaint.
> Nevertheless, we recognize that the litigation carries with it certain
> risks.  For example, if the plaintiffs were successful, the litigation had
> the potential to have a significant negative impact on the ESOP
> interest held by you, our current employees.  Moreover, even if we
> were able to successfully defend the litigation through trial, our
> defense could have been very costly, thereby eroding the value of
> your ESOP interests.  Finally, lengthy litigation would have further
> delayed ESOP distributions...
>
> The details of the settlement still need to be finalized but, in essence,
> we have agreed to pay those employees who left the Company in
> 1996 or 1997 and received distribution of their ESOP interests in
> 1997 or 1998 a specified share amount.  When added to per share
> values of prior distributions, these former employees will receive a
> total value of between $654 and $1325 per share, substantially less
> than the per share value of your ESOP account.  The defendants,

>    including the ESOP and the Company, will not have any
>    responsibility for the attorneys' fees of the former employees'
>    lawyers. The settlement will be funded largely by amounts set aside
>    to account for this potential liability at the time the Company was
>    sold last year.

143.   This May 23, 2000 Memorandum is patently misleading and/or false for at least the

following five reasons: i) under ERISA, the fiduciaries of the ESOP, parties in interest to the ESOP,

and nonfiduciary knowing participants are subject to exposure to liability under ERISA and,

therefore, in all likelihood, these parties, not the ESOP would have been liable for restitution; ii)

upon information and belief, Amburn knew that the Escrow Fund would remain in existence for

approximately another six years considering that the Amendment to the Escrow Agreement was

executed on May 31, 2000 and discussions as to the content of the Amendment were likely underway

more than one week before the Amendment was executed; iii) by settling the *Grimes* litigation with

payment from the Escrow Fund, the defendants "eroded" the value of ESOP interests; iv) Robert

Mackey, Jr., Ann Byrd, and Esther Williams as ESOP Trustees were named as defendants in the

*Grimes* Complaint, not the ESOP; and v) upon information and belief, the attorney's fees for the

plaintiffs were paid from a settlement fund that was funded by a payment from the Escrow Fund of

which, according to GulfTel's own representations, the ESOP held a 48.9% stake.

## 2.   Escrow Fund Notice

144.   Upon information and belief, the Escrow Fund Notice issued to ESOP participants on

or about September 2002 was the first detailed description provided to ESOP participants regarding

the Escrow Fund.

145.   The Escrow Fund Notice discusses the establishment of the Escrow Fund,

disbursements made to date from such fund, distributions made to date from the ESOP and the

44

GulfTel 401(k) plan (a second employee benefit plan sponsored by GulfTel), certain compliance problems with these plans, and the status of the trustees' efforts to correct past compliance mistakes. The Escrow Fund Notice confirms that the Escrow Fund was formed with $25 million in proceeds realized in conjunction with the sale of Gulf Coast stock in September of 1999.

146.    The Escrow Fund Notice states that the "purpose of the Escrow Fund is to protect Gulf [Gulf Coast] and Madison River from claims, disputes, investigations, or obligations in conjunction with any proceedings arising out of any present or former employee's interests in the ESOP and/or 401(k) plan that emanated prior to acquisition ("Proceedings")." The Notice informs participants that the Escrow Agreement was amended in May 2000 in conjunction with the settlement of the *Grimes* litigation and that if no "Proceedings" are outstanding, the remaining balance of the Escrow Fund will be distributed in June of 2006. This date is "based on the longest possible statute of limitation pursuant to which a litigant could bring a Proceeding affecting the Escrow Fund."

147.    In a section entitled "Escrow Fund Accounting (September 1999 to September 2002),"[12] the Escrow Fund Notice reveals that the *Grimes* litigation was in fact settled and that $5,023,872.39 was paid to settle the lawsuit in addition to $798,733.05 in attorney fees related thereto. Upon information and belief, this $798,733.05 is for attorneys' fees of the defendants named in the *Grimes* Complaint. Upon information and belief, plaintiffs' attorneys were compensated in the amount of $1.25 million from the $5,023,872.39 settlement.

148.    The Escrow Fund Notice states that "the ESOP participants have a 48.9% interest in the Escrow Fund." This communicates to participants that the funds held in the Escrow Fund are Plan assets. If the Option to Purchase Stock had been fully exercised the ESOP should have held

---

[12] Exhibit F, Page 3.

49.9% of the outstanding Gulf Coast stock (prior to the termination Snook Trust 1 and 2).

149.    The Escrow Fund Notice mentions that $1.7 million was transferred into the ESOP pursuant to an initial Voluntary Correction of Operational Failures ("VCO") filing. VCO is a program administered by the IRS to encourage voluntary corrections of compliance problems with a retirement plan in order to avoid disqualification of the plan. The Escrow Fund Notice informed participants that there were two separate VCO filings with the IRS that sought to correct numerous compliance problems. The Escrow Fund Notice states that the Administrative Committees for the ESOP and the 401(k) Plan may not have corrected qualification failures in "strict conformance with the terms of the ESOP and 401(k) Plans" in that the 401(k) Plan provides an ordering system for determining the manner in which benefits should be reduced when more than one plan is being administered. A brief description of four types of qualification failures relating to the ESOP is provided: i) incorrect compensation used for allocating contributions and forfeitures; ii) incorrect calculation of share release from the loan suspense account; iii) incorrect timing of forfeitures; and iv) incorrect determination of eligibility. The Escrow Fund Memo directly or indirectly concedes that the ESOP Plan Document was not followed with respect to each of these four types of errors.

150.    In describing the VCO process, the Escrow Fund Notice states the following:

> The VCO process is very slow…The First VCO took 15 months to complete and that only involved one Qualification Failure whereas the Second VCO Filing involves over 50 Qualification Failures. It is impossible to predict how long the Second VCO will take.

The delay in distributing the ESOP's assets to the Plaintiffs has exceeded four years (*i.e.*, it was the intention of Madison River to terminate the ESOP on December 31, 1999). During this period, ESOP assets have been invested in an undiversified manner, solely in low-yielding money market accounts.

151.    The Escrow Fund Notice reveals that $143,465.76 in attorney fees and $126,095.03 in consulting fees had been expended out of the Escrow Fund as of September 30, 2002 to correct these compliance problems. According to the Notice, $145,615.57 has been paid to Regions Bank for escrow administration fees.

152.    The Escrow Fund Notice states that the Escrow Fund is invested to "retain principal in conservative money market funds that currently yield approximately 1.9% [as of September of 2002]."

153.    The Escrow Fund Notice indicates that disbursements of $241,301 were made for directors and officers' policy premiums. There is no explanation as to whether any insurance was in place to cover liability or losses due to acts or omissions of fiduciaries.

## VI. DOCUMENT REQUEST

154.    The Disclosure Memorandum states the following:

> [T]he GTESOP Plan Document [the Plan Document], the Last Will
> and Testament of John McClure Snook dated December 23, 1993, the
> John McClure Snook Irrevocable Trust dated December 23, 1993, the
> John McClure Snook Testamentary Trust of December 23, 1993, the
> John McClure Snook Option to Purchase Stock, also dated December
> 23, 1993, the Merger Agreement and First Amendment to the Merger
> Agreement, its various exhibits, schedules and attachments, the court
> papers filed in the declaratory judgment action by the Snook Trustees,
> your GTESOP Participant account statements, and the appraisals and
> fairness opinion described above, will be made available for your
> review at the Gulf Telephone Company Accounting Office at 100
> West Laurel Avenue in Foley, Alabama during regular business hours
> of 8:00 AM to 5:00 PM by calling (334) 952-5350, with reasonable
> notice in advance.

155.    On at least five occasions by letters directed to Jo Gould Smith, [13] acting as or on behalf of the ESOP Plan Administrator, R. Mark Kirkpatrick, on behalf of Plaintiff David Eslava,

---

[13] These letters are dated July 10, 2003, July 24, 2003, August 7, 2003, August 14, 2003 and January 26, 2004. A true and correct copy of these letters is attached hereto as Exhibit "G," made a part hereof, and incorporated by reference.

requested to review and/or receive copies of the above referenced documents. Each request has either been ignored or denied.

## VII. CLASS ALLEGATIONS

156.    Plaintiffs bring Counts II - XI of this class action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and/or 502(a)(2), 29 U.S.C. § 1132(a)(2), on behalf of themselves and all others similarly situated (the "Plaintiff Class"). The Plaintiff Class is composed of those persons who were participants in or had a right to receive benefits from the ESOP at any time during the period from September 29, 1999 to the present (the "Class Period"). Excluded from the Plaintiff Class are the Defendants, any entity in which a Defendant has a controlling interest, and their legal representatives, assigns and successors.

157.    The class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that there were over 400 participants in the Plan as of September 29, 1999. Although the exact number and identities of the Plaintiff Class are unknown at this time, this information is easily ascertainable from the Plan Administrator through discovery of the Plan's records.

158.    Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

    (a) Whether ESOP Trustee Defendants, ESOP Administrative Committee Defendants, and GulfTel Defendants engaged in a prohibited transaction under ERISA by selling DigiPH, Gulf Coast Non-Business Assets, and Gulf Coast stock for less than adequate consideration;

    (b) Whether ESOP Trustee Defendants and GulfTel Defendants prudently

48

selected and monitored service providers that rendered opinions with respect to the proposed merger consideration to be received by the ESOP from Madison River;

(c)   Whether the establishment and operation of the Escrow Fund violates ERISA and whether the participation of the GulfTel Defendants, *et al.*, in the establishment and operation of the Escrow Fund violates their fiduciary duties;

(d)   Whether Defendant Marjorie Snook, *et al.*, knowingly participated in ERISA violations and can be held liable for such violations.

159.   The Plaintiffs' claims are typical of those of the Plaintiff Class. The Plaintiffs, like other Plan participants in the Plaintiff Class, suffered a loss when the ESOP Trustees voted to approve the merger of Gulf Coast with Madison River and the sale of Gulf Coast stock for less than fair market value.

160.   The Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class. The Plaintiffs have retained counsel competent and experienced in class actions and ERISA.

161.   Class certification of Plaintiffs' Counts II - XI for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

162. In addition, Class certification of Plaintiffs' Counts II - XI for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.

163. Class certification of Plaintiffs' Counts II - XI for violations of ERISA is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Plaintiff Class predominate over any questions affecting only individual members of the Class because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common practices have unlawfully precluded Class members from receiving fair market value for shares of Gulf Coast stock held by the Plan and resulted in Defendant Marjorie Snook, *et al.*, profiting at the Plaintiff Class' expense. The harm suffered by individual Class members is small compared to the expense and burden of individual prosecution of this litigation. Class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' practices.

164. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

165. The names and addresses of the Plaintiff Class are available from the Plan. To the extent required by law, notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

## VIII. CLAIMS FOR RELIEF

### COUNT I

50

## Failure to Provide Instruments Under which the Plan is Established
## or Operated in Violation of ERISA §§ 104(b)(4) and 502(c)

### (Against ESOP Plan Administrator)

166.    Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

167.    ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), requires that a plan administrator provide "any instruments under which the plan is established or operated."

168.    ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan participant to bring a civil action for relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c). ERISA § 502(c), 29 U.S.C. § 1132(c), provides that a plan administrator may be held personally liable for penalties of $100 per day, increased to $110 per day by 29 C.F.R. § 2570.502c-1 for failure to comply within 30 days of a participant's request for information required to be provided under ERISA.

169.    Defendant, Mary Jo Gould, acting as Plan Administrator or acting on behalf of GulfTel as Plan Administrator, has failed to provide Plaintiff Eslava with documents that the Disclosure Memorandum represented would be made available to participants after at least five different written requests were made. The failure to disclose or make these documents available, constitutes a failure by the ESOP Plan Administrator to comply with Plaintiff Eslava's request for documents available under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). Plaintiff Eslava is entitled to an injunction and penalties for this failure.

## COUNT II

### Establishment and Operation of the Escrow Fund Violate ERISA
### §§ 404(a)(1)(A), (B), and (D), 406(a)(1)(D), 406(b)(1) and (2), and 410

### (Against GulfTel Defendants, ESOP Administrative Committee Defendants,
### ESOP Trustee Defendants, Escrow Committee Defendants,

51

**North Star Defendants, and Madison River Defendants)**

170.    Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

171.    ERISA § 410(a), 29 U.S.C. § 1110(a), makes void as against public policy any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility, obligation, or duty under ERISA's fiduciary provisions.

172.    The provisions in the third amendment to the Merger Agreement, the Escrow Agreement, and Amendment to Escrow Agreement[14] violate ERISA § 410(a), 29 U.S.C. § 1110(a). All of the Defendants in this Count, except the North Star Defendants, negotiated, consummated, and/or facilitated the merger with the knowledge that the Escrow Fund would be established and Plan assets would be diverted to the Escrow Fund pursuant to the provisions of the Escrow Agreement in violation of ERISA § 410(a), 29 U.S.C. § 1110(a). Upon information and belief, all of the Defendants, except the ESOP Administrative Committee Defendants, negotiated and/or executed the Amendment to the Escrow Agreement in violation of ERISA § 410(a), 29 U.S.C. § 1110(a).

173.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104 (a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of the ESOP participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the ESOP (the "duty of loyalty"). ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims (the "duty of prudence"). ERISA §

---

[14] Except those provisions which relate to a maximum of $2 million to be paid to Madison River in the event GulfTel maintained inadequate cash and cash equivalent reserves or had unpaid financial obligations. These provisions are no longer relevant. Thus, the entire Escrow Agreement and Amendment to Escrow Agreement are void.

404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA ("duty to act in accordance with plan documents").

174. All of the Defendants in this Count violated ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), and violated the provisions of the Plan Document, including, but not limited to, Plan Document Sections 13.01 and 7.03, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by, *inter alia*, causing and/or approving: i) proceeds from the merger that would otherwise have been distributed to the ESOP Trust, then to participants, to be diverted to the Escrow Fund; ii) payment for the *Grimes* Settlement to be made from Plan assets held in the Escrow Fund, including attorneys' fees of the plaintiffs and defendants; iii) payment for the correction of plan qualification errors, and other expenses to be made from the Escrow Fund; iv) Plan assets to be held in the Escrow Fund instead of the ESOP Trust as required by ERISA § 403(a), 29 U.S.C. § 1103(a); and v) the acts that constitute prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106, as described below.

175. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary from causing a plan to engage in a transaction if the fiduciary knows, or should know, that such transaction constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest of any assets of a plan.

176. All of Defendants in this Count engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 406(a)(1)(D), by causing the Escrow Fund to be established for the benefit of the present and former fiduciaries of the Plan who may have liability in connection with "claims, disputes, investigations, or litigation in conjunction with any proceedings arising out of

53

any present or former employee's interest in the ESOP and/or 401(k) Plan that emanated prior to the acquisition."

177. ERISA § 406(b)(1), 29 U.S.C. § 406(b)(1), prohibits fiduciaries from dealing with the assets of a plan for their own interest or own account.

178. All of the Defendants who are former or successor fiduciaries are avoiding personal liability and potential payment of their own monies for fiduciary liability through the establishment and payment of claims and expenses out of the Escrow Fund at the expense of the ESOP participants. Therefore, all of the Defendants in this Count engaged and are continuing to engage in self-dealing in violation of ERISA § 406(b)(1), 29 U.S.C. § 406(b)(1), because the Escrow Agreement and Amendment to Escrow Agreement utilize Plan assets to pay at least[15] 48.9% of the costs of defense and settlement of litigation relating to fiduciary breaches of ERISA.

179. ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), prohibits fiduciaries, in their individual or any other capacity, from acting in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interests of its participants or beneficiaries.

180. All of the Defendants in this Count engaged and are continuing to engage in self-dealing in violation of ERISA § 406(b)(2), 29 U.S.C. § 406(b)(2), because of their involvement in the establishment and operation of the Escrow Fund which is adverse to the interests of the ESOP participants in that Plan assets have been and may continue to be dissipated for an unlawful purpose.

181. All of the Defendants in this Count are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plan under ERISA § 405, 29 U.S.C. § 1105.

---

[15] Due to the numerous ERISA breaches described in Counts II - XI, the Plaintiff Class is entitled to a greater proportion if not all of the funds held in the Escrow Fund.

182.   As a result of the violations of ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104, 1105, and 1106, all of the Defendants in this Count have caused the Plaintiffs to suffer losses in an amount to be proven at trial.

## COUNT III

### Escrow Fund Investments Violate ERISA §§ 404(a)(1)(A),(B), and (C)

### (Against ESOP Trustee Defendants, Escrow Committee Defendants, and North Star Defendants)

183.   Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

184.   ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), requires fiduciaries to discharge their duties by diversifying the investments of a plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so (the "duty to diversify investments").

185.   All of the Defendants in this Count have breached their duties of loyalty and prudence and duty to diversify investments in violation of ERISA §§ 404(a)(1)(A),(B), and (C), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (C), by investing the Plan assets held in the Escrow Fund solely in low-yielding money market funds. The Plan assets held in the Escrow Fund have been invested in this manner in order to facilitate the purpose of the Escrow Fund which is unlawful. Even assuming, *arguendo*, that the Escrow Fund were lawful, these investments would be imprudent because of the six-year time horizon of the Fund.

186.   All of the Defendants in this Count are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plan under ERISA § 405, 29 U.S.C. § 1105.

187.   As a result of the violations of ERISA §§ 404 and 405, 29 U.S.C. §§ 1104 and 1105, all of the Defendants in this Count have caused the Plaintiffs to suffer losses due to lost investment

55

gains in an amount to be proven at trial.

## COUNT IV

### Failure to Prudently Select and Monitor Service Providers
### Violates ERISA §§ 404(a)(1)(A) and (B), and 406(b)(1)

#### (Against ESOP Trustee Defendants and GulfTel Defendants)

188.    Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

189.    Pursuant to Section 10.08 of the Plan Document, the ESOP Trustee Defendants had the power to employ necessary service providers to assist in their fiduciary duties. The ESOP Trustees breached their duty of prudence in violation of ERISA § 404(a)(1)(B), 29 U.S.C. 1104(a)(1)(B), when, after the Merger Agreement had been executed on May 9, 1999, they selected AAA to perform the 1998 annual valuation of ESOP GulfTel stock, the Option to Purchase Stock, the updated 1998 appraisal through May 9, 1999, and the fairness opinion in connection with the merger. These Defendants breached their duty of prudence because a prudent person would have considered and selected a different appraiser after noting the discrepancies between the previous appraisals rendered by AAA. The ESOP Trustee Defendants, who were all members of the GulfTel Board of Directors, were influenced by Marjorie Snook's desire to see the merger consummated and personal gain. These Defendants breached their duty of loyalty in violation of ERISA § 404(a)(1)(A), ERISA § 1104(a)(1)(A), by selecting AAA, an appraiser they knew, or should have known, was likely to find that the total consideration offered by Madison River was adequate. In addition, the ESOP Trustee Defendants further breached their duties of loyalty and prudence by failing to carefully examine and review the methodologies and conclusions of the appraisals conducted by AAA, and the methodologies and conclusions of Arthur Andersen and DeCosimo and Co., and/or by failing to

56

provide these service providers with adequate information necessary to conduct a meaningful appraisal. The ESOP Trustee Defendants engaged in self-dealing in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), by compensating AAA, Arthur Andersen, and, upon information and belief, DeCosimo and Co. from Plan assets, companies they knew, or should have known, would act as a rubber stamp for the merger transaction.

190. The GulfTel Defendants, who upon information and belief appointed the ESOP Trustees pursuant to Plan Document Sections 10.11 and 10.12, were required by the duties of prudence and loyalty to monitor the ESOP Trustees in the performance of their fiduciary duties. The GulfTel Defendants were involved in and had extensive knowledge about the details of the merger and the total consideration offered by Madison River. The GulfTel Defendants also had knowledge about the value of GulfTel and its assets. These Defendants were influenced by personal gain, including the possibility of negotiating a severance package similar to Marjorie Snook and/or maintaining positions at GulfTel after the merger, and Marjorie Snook's desire to see the merger consummated. The GulfTel Defendants breached their duties of prudence and loyalty in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), by failing to monitor the ESOP Trustees. In addition, the GulfTel Defendants engaged self-dealing in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), by permitting the ESOP Trustees to compensate AAA, Arthur Anderson, and DeCosimo and Co. from Plan assets, companies they knew, or should have known, would act as a rubber stamp for the merger transaction.

191. The ESOP Trustee Defendants and GulfTel Defendants are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plan under ERISA § 405, 29 U.S.C. § 1105.

57

192.   As a result of the violations of ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104,

1105, and 1106, all of the Defendants in this Count have caused the Plaintiffs to suffer losses in an

amount to be proven at trial.

## COUNT V

### Sale of DiGiPH, Gulf Coast Non-Business Assets, and Gulf Coast Stock for Less than Fair Market Value Violates ERISA §§ 404(a)(1)(A),(B), and (D), 406(a)(1)(A) and (D), and 406(b)(1) and (2)

### (Against ESOP Trustee Defendants, ESOP Administrative Committee Defendants, and GulfTel Defendants)

193.   Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully

herein.

194.   Pursuant to Section 10.14 of the Plan Document, the ESOP Trustee Defendants had a

duty to determine the fair market value of assets held in the ESOP Trust annually and on any other

dates as directed by the ESOP Administrative Committee. These Defendants breached their duties of

loyalty and prudence, and duty to act in accordance with plan documents in violation of ERISA §§

404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D), by the conduct described in

Paragraph 189 which resulted in their failure to determine fair market value of the Gulf Coast stock

held in the ESOP Trust. The ESOP Trustee Defendants further breached their duties of loyalty and

prudence, and duty to act in accordance with plan documents because they relied on the AAA

appraisal and review of the appraisal by Arthur Andersen and DeCosimo and Co., which they knew

or should have known were deficient, thereby causing ESOP participants to receive less than fair

market value for their Gulf Coast shares.

195.   ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a fiduciary from causing

a plan to engage in a transaction, if that fiduciary knows, or should know, that such transaction

58

constitutes a direct or indirect sale or exchange, or leasing, of any property between the plan and a party in interest.

196.     ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the prohibited transaction rules for sale of employer securities by a plan if a sale is made for adequate consideration. ERISA § 3(18)(B), 29 U.S.C. § 1002(18), defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B), 29 U.S.C. § 1002(18), requires that the price paid must reflect the fair market value of the asset, and the trustee must conduct a prudent investigation to determine the fair market value of the asset.

197.     The ESOP Trustee Defendants failed to appropriately consider DiGiPH and the Non-Business Assets as components of the merger transaction (despite the fact that the Merger Agreement specifically included the proceeds from the sale of DiGiPH and Non-Business Assets in the definition of Merger Consideration) resulting in the sale of Gulf Coast stock for grossly less than it was worth. The ESOP Trustee Defendants either imprudently relied on the AAA fairness opinion if no discussion of the value of DiGiPH and the Non-Business Assets was included as a part thereof, or failed to prudently review and evaluate the discussion of the value of DiGiPH and the Non-Business Assets in the AAA fairness opinion if such discussion was included. These Defendants also failed to consider the interest of PowerTel in acquiring DiGiPH. By failing to ensure that adequate consideration for DiGiPH was received from Millry, a party in interest, and adequate consideration for the Non-Business Assets was received from Marjorie Snook, a party in interest, the ESOP Trustee Defendants violated ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B).

59

and (D), ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), and ERISA §§ 406(b)(1) and (2), 29 U.S.C. §§ 1106(b)(1) and (2). Because these Defendants also failed to ensure that adequate consideration for Gulf Coast stock was received by the ESOP, part of which DiGiPH and the Non-Business Assets were critical components, they violated ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D), ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), and ERISA §§ 406(b)(1) and (2), 29 U.S.C. §§ 1106(b)(1) and (2).

198.    As discussed below in Count IX, all of the Defendants in this Count failed to provide participants with sufficient information to discover that the sale of ESOP stock to Madison River was for less than fair market value, including, but not limited to the value of DiGiPH, Gulf Coast Non-Business Assets, the zero value assigned to the Option to Purchase Stock, and the Snook Will Options.   The failure of the ESOP Administrative Committee Defendants and the GulfTel Defendants to provide this information, as well as monitor the ESOP Trustees, violated their duties of loyalty and prudence, and the duty to act in accordance with plan documents in violation of ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D).  These Defendants engaged in a prohibited transaction by failing to ensure that the ESOP participants received adequate consideration for their shares of Gulf Coast stock in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D), and self-dealing in violation of ERISA §§ 406(b)(1) and (2), 29 U.S.C. §§ 1106(b)(1) and (2), because they wanted the merger transaction to be consummated at the expense of the ESOP participants.

199.    All of the Defendants in this Count are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plan under ERISA § 405, 29 U.S.C. § 1105.

200.    As a result of the violations of ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104,

60

1105, and 1106, all of the Defendants in this Count have caused the Plaintiffs to suffer losses in an amount to be proven at trial.

## COUNT VI

### Failure to Perform Duties Relating to the Operation of the Plan Causing ESOP to Pay Improper Expenses and Investment Losses Violates ERISA §§ 404(a)(1)(A)-(D), 406(a)(1)(D), and 406(b)(1)

### (Against ESOP Administrative Committee Defendants, ESOP Trustee Defendants, GulfTel Defendants, North Star Defendants, and Escrow Committee Defendants)

201. Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

202. Pursuant to Sections 3.04 and 3.07, the ESOP Administrative Committee has primary responsibility with respect to limitations on contributions to the ESOP and significant responsibility with respect to maintaining ESOP tax qualification. By failing to ensure that proper contributions were allocated to the Plan and generally failing to maintain the Plan in compliance with the Code, the Administrative Committee Defendants breached their duty of prudence and duty to act in accordance with plan documents[16] in violation of ERISA §§ 404(a)(1)(B) and (D), 29 U.S.C. §§ 1104(a)(1)(B) and (D). By failing to properly monitor the ESOP Administrative Committee Defendants, the ESOP Trustee Defendants and GulfTel Defendants breached their duty of prudence in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

203. All of the Defendants in this Count failed to correct these qualification errors in a permissible manner when these errors were discovered. The Defendants paid, authorized, and/or allowed fees for the correction of these errors to be paid out of the Escrow Fund which held Plan assets, thus charging Plan participants for errors caused by the ESOP Administrative Committee

---

[16] This includes the failure to follow the plan document of the GulfTel 401(k) Plan insofar as that plan's ordering rules relate to the ESOP.

Defendants, ESOP Trustee Defendants, and GulfTel Defendants. These fees include at least $143,465.72 for VCO corrections, $241,301 of service provider fees to Benefit Consultants Inc. for VCO corrections, and $17,220 in accounting fees to Ernst & Young, LLP. The payment of these fees violates ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D), ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), and ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

204. As a result of the qualification errors and/or the establishment and maintenance of the Escrow Fund, the Plan has not been able to be terminated as Madison River intended to do by December 31, 1999. During this time, upon information and belief, the balance of the ESOP Trust has been invested in cash investments with a low yield. By investing in this manner, the ESOP Trustee Defendants and North Star Defendants have breached their duties of loyalty and prudence, and duty to diversify investments in violation of ERISA §§ 404(a)(1)(A),(B), and (C), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (C).

205. All of the Defendants in this Count are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plan under ERISA § 405, 29 U.S.C. § 1105.

206. As a result of the conduct of all of the Defendants in this Count, the Plaintiffs have suffered losses due to reduction in the value of the ESOP Trust due to payment of fees associated with the correction of qualification errors and lost investment gains in an amount to be proven at trial.

## COUNT VII

**Failure to Conduct Due Diligence After Being Retained and Failure to Take Action to Protect ESOP Participants Violates ERISA §§ 404(a)(1)(A),(B), and (D), 406(a)(1)(D), and 406(b)(1)**

**(Against North Star Defendants)**

62

207.    Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

208.    North Star, acting as Trustee to the ESOP, had a duty under ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D), to conduct reasonable and necessary due diligence after its appointment to ensure that Plan assets under its supervision were being protected and invested prudently in accordance with ERISA. In the event improprieties or violations of ERISA were discovered, North Star had a duty to protect Plan assets by taking action to correct such improprieties or violations. The North Star Defendants knew, or should have known, that Plan assets were being misused in connection with the Escrow Fund and the correction of qualification errors. In addition, the North Star Defendants had a duty to ensure that Plan assets were properly invested. The North Star Defendants breached their duties of prudence and loyalty, duty to diversify investments, and duty to act in accordance with plan documents in violation of ERISA §§ 404(a)(1)(A)-(D), 29 U.S.C. §§ 1104(a)(1)(A)-(D), by failing to take action to prevent or correct the misuse of Plan assets held in the Escrow fund, and by failing to properly invest ESOP Plan assets that remained undistributed due to qualification errors and the maintenance of the Escrow Fund. By allowing payments from the Escrow Fund to be made for improper purposes, the North Star Defendants have engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). Further, by permitting fees to be paid from the ESOP Trust to themselves for the performance of Trustee duties that are not being performed in accordance with ERISA, the North Star Defendants engaged and continue to engage in self-dealing in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

209.    In the event the North Star Defendants act as a directed trustee, ERISA § 403(a)(1),

63

29 U.S.C. § 1103(a)(1), permits a directed trustee to follow only proper directions of a fiduciary. Therefore, since the establishment of the Escrow Fund and the manner that Plan assets have been used with respect to the Escrow Fund violate ERISA, the North Star Defendants have violated ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), and ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), even if it is determined that these Defendants act as a directed trustee.

210.    As a result of the violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, the North Star Defendants have caused the Plaintiffs to suffer losses in an amount to be proven at trial.

## COUNT VIII

### Failure to Properly Represent the ESOP in Snook Estate Litigation Violates ERISA §§ 404(a)(1)(A),(B), and (D), 406(a)(1)(D), and 406(b)(1) and (2)

### (Against ESOP Trustee Defendants, Marjorie Snook, and GulfTel Defendants)

211.    Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

212.    The ESOP Trustee Defendants knew, or should have known, that the ESOP had a direct interest in the outcome of the litigation relating to the Snook Trusts. The Snook Trusts held 56.1% of the outstanding Gulf Coast stock prior to the merger, and the express intent of the maker of the Trusts was to transfer to the ESOP enough common stock to make the ESOP at least a 65% voting control owner of Gulf Coast. Although the Snook Trusts made Marjorie Snook an income beneficiary, the ESOP was entitled to its 65% voting control after Marjorie Snook's death. Pursuant to its duties described in Article X, including Section 10.03(j), of the Plan Document, and the duties of loyalty and prudence imposed by ERISA, the ESOP Trustee Defendants had a fiduciary

64

responsibility to ensure that the ESOP's interest in the Snook Trusts was preserved for the participants of the ESOP. The ESOP Trustees breached their duties of prudence and loyalty, and duty to act in accordance with plan documents in violation of ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D), by failing to adequately participate in the litigation of the Snook Trusts and signing a release of claims, including a release of the Snook Options, or allowing a release of claims to be signed on behalf of the ESOP, with inadequate or no consideration for such release. The ESOP Trustee Defendants breach of their duties of prudence and loyalty, and duty to act in accordance with plan documents allowed a portion of the ESOP's interest in the Snook Trusts to be transferred to Marjorie Snook in connection with her scheme of terminating the Trusts in order to obtain the Trusts' principal. By breaching their fiduciary duties, the ESOP Trustee Defendants engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(D) by allowing the ESOP to transfer a portion of its interest in the Snook Trusts to Marjorie Snook, a fiduciary and party in interest to the Plan.

213. Marjorie Snook, a member of the GulfTel Board of Directors, breached her duties of prudence and loyalty in violation of ERISA §§ 404(a)(1)(A) and (B) , 29 U.S.C. §§ 1104(a)(1)(A) and (B), by failing to monitor the ESOP Trustees when they did not protect the ESOP's interest in the Snook Trusts. Marjorie Snook engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), and self-dealing in violation of ERISA § 406(b)(1) and (2), 29 U.S.C. §§ 1106(b)(1) and (2), by causing the transfer of a portion of the ESOP's interest in the Snook Trusts to herself through the litigation and Pro Tanto Settlement relating to the Snook Trusts.

214. By failing to monitor the ESOP Trustees, who failed to properly represent the ESOP's interests in the Snook Trusts, all of the GulfTel Defendants breached their duties of loyalty and

65

prudence in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B). The

GulfTel Defendants also engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(D),

29 U.S.C. § 1106(a)(1)(D), by allowing a portion of the ESOP's interest in the Snook Trust to be

transferred to Marjorie Snook.

215.   All of the Defendants in this Count are also liable as co-fiduciaries with respect to the

fiduciary violations of the other fiduciaries of the Plan under ERISA § 405, 29 U.S.C. § 1105.

216.   As a result of the violations of ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104,

1105, and 1106, all of the Defendants in this Count have caused the Plaintiffs to suffer losses in an

amount to be proven at trial.

## COUNT IX

### Failure to Fully and Accurately Disclose Material Information Regarding the Terms of the Merger, Establishment of Escrow Fund, Escrow Fund Investments, and Cause and Effect of Qualification Errors Violates ERISA § 404(a)(1)(A), (B), and (D)

### (Against ESOP Trustee Defendants, ESOP Administrative Committee Defendants, ESOP Plan Administrator, North Star Trust Defendants, GulfTel Defendants, and Madison River Defendants)

217.   Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully

herein.

218.   The ESOP Trustee Defendants, ESOP Administrative Committee Defendants, and

Sandra Bixler acting as Plan Administrator (or on behalf of GulfTel as Plan Administrator) had a

duty under ERISA to fully and accurately communicate material information to Plan participants.

This duty arises generally from the duties of loyalty and prudence and also from the duty to act in

accordance with plan documents.[17] In addition, the GulfTel Defendants had a duty to ensure full and

---

[17] Plan Document Section 8.11 and the Alabama Business Corporation Act require the Administrative Committee to advise ESOP participants in writing of the terms of tender offers. The ESOP Trustees' duty to fully and accurately communicate

accurate disclosure of material information which emanates from their duty to monitor the Administrative Committee, ESOP Trustees, and Plan Administrator.

219.    The Disclosure Memorandum, the primary document used to communicate the terms of the Madison River offer to participants, did not communicate, *inter alia*, sufficient information regarding DiGiPH, the Escrow Fund, the Snook Will Options, and the First Amendment to the Merger Agreement. The Disclosure Memorandum stated that the ESOP participants were required to vote their shares not later than August 2, 1999 even though the Escrow Fund was not established until September 28, 1999 pursuant to a third amendment to the Merger Agreement believed to be executed on that same date. These failures created a misleading and inaccurate description of the total consideration that ESOP participants would receive in connection with the merger. In addition, upon information and belief, no additional disclosures were made to ESOP participants summarizing the terms of second and third amendments that were made to the Merger Agreement. Upon information and belief, the First Amendment and the second and third amendments were executed in order to increase the compensation received by Marjorie Snook and/or other majority Gulf Coast shareholders at the expense of the ESOP participants. By failing to fully and accurately disclosure material information relating to the merger, the ESOP Administrative Committee Defendants, the ESOP Trustee Defendants, and Sandra Bixler or GulfTel acting as Plan Administrator violated ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D). The GulfTel Defendants violated ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), by failing to monitor the ESOP Administrative Committee Defendants, the ESOP Trustee

---

material information also emanates from Section 8.11 of the Plan Document and the numerous duties and responsibilities described in Article X of the Plan Document, including Section 10.16 which relates to the Trustees receiving direction with respect to employer securities. Plan Document Section 1.04 provides that the Plan Administrator has "full responsibility for compliance with reporting and disclosure rules under ERISA."

Defendants, and the Plan Administrator.

220. Subsequent to the merger, the ESOP Administrative Committee Defendants (upon information and belief, Roxanne Henderson and Cynthia Gates had been replaced), the North Star Trust Defendants who were acting as Trustee, Jo Gould Smith acting as Plan Administrator (or on behalf of GulfTel), or GulfTel (now controlled by Madison River) acting as Plan Administrator, had the same duty under ERISA, as described in Paragraph 218, to fully and accurately disclose material information. The Madison River Defendants (now serving on the Board of Directors of GulfTel and/or controlling GulfTel) also had a duty to ensure full and accurate disclosure of material information which emanates from their duty to monitor the Administrative Committee, the Trustee of the ESOP, and the Plan Administrator.

221. The Escrow Fund Notice fails to sufficiently communicate information relating to the establishment and use of the Escrow Fund. Adequate communication regarding the Escrow Fund may have revealed the improper purpose of the Escrow Fund allowing participants to take appropriate action more quickly. In addition, the Escrow Fund Notice inadequately and inaccurately communicates the cause and effect of tax qualification errors. For example, the Escrow Fund Notice implies that employee benefit plan qualification errors of this extent and magnitude are common and that Plan fiduciaries responsible for qualification are acting in the best interest of participants to correct these problems rather than clearly communicating the fact that Plan participants are paying for qualification errors caused by Plan fiduciaries. The May 23, 2000 Memorandum from Kenneth Amburn contributes to the inadequate and misleading nature of this communication. Finally, the Escrow Fund Notice omits any discussion of how the delay in terminating the ESOP due to fiduciary breaches has resulted in investment losses due to investment by the ESOP in money market funds.

68

By failing to fully and accurately disclose material information relating to the Escrow Fund and Plan qualification failures, the ESOP Administrative Committee Defendants, the North Star Trust Defendants, and the Plan Administrator violated ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D). By failing to monitor the ESOP Administrative Committee Defendants, the North Star Trust Defendants, and the Plan Administrator, the Madison River Defendants violated ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

222. All of the Defendants in this Count are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plan under ERISA § 405, 29 U.S.C. § 1105.

223. As a result of the violations of ERISA §§ 404 and 405, 29 U.S.C. § 1104 and 1105, all of the Defendants in this Count have facilitated and/or caused the violations described in Counts II - IX, resulting in the Plaintiffs suffering losses in an amount to be proven at trial.

## COUNT X

## Misuse and/or Conversion of Gulf Coast Assets to the Detriment of the ESOP
## Violates ERISA §§ 404(a)(1),(A),(B), and (D), 406(a)(1)(D), 406(b)(1) and (2)

### (Against Marjorie Snook, ESOP Trustee Defendants,
### GulfTel Defendants, and Madison River Defendants)

224. Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

225. By misusing and/or converting Gulf Coast assets (including, but not limited to, misusing the services of GulfTel employees) which reduced the value of Gulf Coast stock, the primary asset of the ESOP, Defendant Marjorie Snook breached her fiduciary duties of loyalty and prudence, in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B). Further, Snook engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(D), 29 U.S.C.

69

§ 1106(a)(1)(D), and self-dealing in violation of ERISA §§ 406(b)(1) and (2), 29 U.S.C. §§ 406(b)(1) and (2), by causing the sale of DiGiPH to Millry for less than adequate consideration and by purchasing Gulf Coast's Non-Business Assets for less than adequate consideration.

226.    By failing to take action (including, but not limited to, initiating a shareholder derivative action) to end Marjorie Snook's misuse and/or conversion of Gulf Coast assets which they knew, or should have known was occurring, the ESOP Trustee Defendants and GulfTel Defendants violated their duties of loyalty and prudence, and their duty to act in accordance with plan documents, in violation of ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A),(B), and (D). In addition, because, upon information and belief, Marjorie's Snook's misuse and/or conversion of Gulf Coast assets occurred with either the approval or without objection, and possibly for the benefit of the ESOP Trustee Defendants and GulTel Defendants, these Defendants engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), and self-dealing in violation of ERISA §§ 406(b)(1) and (2), 29 U.S.C. §§ 1106(b)(1) and (2).

227.    All of the Defendants in this Count are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plan under ERISA § 405, 29 U.S.C. § 1105.

228.    As a result of the violations of ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104, 1105, 1106, all of the Defendants in this Count have caused losses to the Plaintiffs in an amount to be proven at trial.

## COUNT XI

**Party In Interest and Knowing Participant Liability Pursuant to ERISA § 502(a)(3)**

**(Against Marjorie Snook, Millry Defendants, Escrow Committee Defendants, GulfTel Defendants, Madison River Defendants, Matt Springer, North Star Defendants,Snook Testamentary Trust, AAA, Arthur Andersen, DeCosimo, and Co. and Gulf Merger Corporation)**

229.   Plaintiffs incorporate the previous paragraphs of this Complaint as if set forth fully herein.

230.   In order to accomplish her goal of obtaining the cash value of Gulf Coast and its assets instead of remaining an income beneficiary of the Snook Trusts, Marjorie Snook carried out a scheme involving, *inter alia*, the diversion of Plan assets to insulate herself from liability, the sale of Gulf Coast and its assets for less than adequate consideration, misrepresentation and/or fraud to perpetuate her scheme, and misuse and/or conversion of Gulf Coast assets. Because she knowingly participated in conduct which constituted ERISA violations as described in Counts II, IV, V, VI, VIII, IX, and X, Defendant Marjorie Snook, in her capacity as a party in interest with respect to the ESOP and/or knowing participant in a breach, is subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

231.   Because they knowingly participated in conduct which constituted ERISA violations as described in Count V, the Millry Defendants, in their capacities as parties in interest with respect to the ESOP and/or knowing participants in a breach, are subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

232.   Because they knowingly participated in conduct which constituted ERISA violation as described in Counts II, III, and VI, the Escrow Committee Defendants, in their capacities as parties in interest with respect to the ESOP and/or knowing participants in a breach, are subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29

71

233. Because they knowingly participated in conduct which constituted ERISA violations as described in Counts II, IV, V, VI, VIII, IX, and X, the GulfTel Defendants, in their capacities as parties in interest with respect to the ESOP and/or knowing participants in a breach, are subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

234. Because they knowingly participated in conduct which constituted ERISA violations as described in Counts II, VI, and IX, the Madison River Defendants, in their capacities as parties in interest with respect to the ESOP and/or knowing participants in a breach, are subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). In addition, because they knowingly participated in conduct which constituted ERISA violations as described in Counts V and X, the Madison River Defendants are subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

235. Because he knowingly participated in conduct which constituted ERISA violations as described in Counts II, VI, and IX, Defendant Matt Springer, in his capacity as a party in interest with respect to the ESOP and/or knowing participant in a breach, is subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). In addition, because he knowingly participated in conduct which constituted ERISA violations as described in Counts V and X, Springer is subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

72

236.    Because they knowingly participated in conduct which constituted ERISA violations as described in Counts II, III, VII, and IX, the North Star Defendants, in their capacity as a parties in interest with respect to the ESOP and/or knowing participants in a breach, are subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

237.    Because it knowingly participated in conduct which constituted ERISA violations as described in Count VIII, Defendant Snook Testamentary Trust, in its capacity as a party in interest with respect to the ESOP and/or knowing participant in a breach, is subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

238.    Because they knowingly participated in conduct which constituted ERISA violations as described in Count V, Defendants AAA, Arthur Andersen, and DeCosimo and Co., in their capacities as parties in interest with respect to the ESOP and/or knowing participants in a breach, are subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

239.    Because it knowingly participated in conduct which constituted ERISA violations as described in Count V, Defendant Gulf Merger Corporation is subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## IX.  PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against the Defendants on each Claim for Relief and for the following Relief:

73

**As to Count I:**

1.      Order the Plan Administrator to produce all documents that the Disclosure Memorandum represented would be made available;

2.      Enjoin the Plan Administrator from denying a request for similar documents by a Plan participants;

3.      Award Plaintiff David Eslava penalties of $110 per day pursuant to ERISA § 502(c), 29 U.S.C. § 1132, and 29 C.F.R. § 2570.502c-1;

4.      Enjoin the Plan Administrator from imposing conditions on the release of documents, including but not limited to enjoining the Plan Administrator from requiring that participants sign confidentiality agreements, waivers, or similar devices;

5.      Provide such other relief as the Court deems equitable and just.

**As to Counts II and III:**

1.      Certify this action as a class action pursuant to F. R. Civ. P. 23;

2.      Issue a preliminary injunction enjoining the Escrow Committee Defendants, Madison River, and Paul Sunu from authorizing further distributions of any assets held in the Escrow Fund until final judgment after trial on the merits as to the Plaintiff Class's ownership interest in the Escrow Fund and whether the purpose of the Escrow Fund is lawful, or, alternatively, Plaintiffs and Defendants agree upon the proper distribution of the assets held in the Escrow Fund;

3.      Declare that the Defendants, and each of them, have breached their ERISA fiduciary duties to the Plaintiff Class.

4.      Declare that the Defendants, and each of them, have engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C § 1106(a), and self-dealing in violation of

74

ERISA § 406(b), 29 U.S.C. 1106(b), by establishing and operating the Escrow Fund for an unlawful purpose.

5.   Order that the Defendants, and each of them, restore all Plan assets currently held in the Escrow Fund to the Plaintiff Class;

6.   Order that the Defendants, and each of them, disgorge amounts by which they were unjustly enriched from their fiduciary breaches, engagement in prohibited transactions, and/or self-dealing;

7.   Impose a constructive trust on any amounts by which any Defendant was unjustly enriched from its fiduciary breaches, engagement in prohibited transactions, and/or self-dealing;

8.   Order equitable restitution and other appropriate equitable monetary relief against the Defendants, and each of them;

9.   Order the Defendants, and each of them, to make good to the Plan all losses to the Plan resulting from fiduciary breaches, and to restore to the Plan any profits which have been made through use of assets of the Plan.

10.   Enjoin the Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations, and duties;

11.   Award Plaintiffs attorneys' fees and costs pursuant to the common fund doctrine and/or applicable federal law;

12.   Award such other and further relief as the Court deems equitable and just.

**As to Counts IV – X:**

1.   Certify this action as a class action pursuant to F. R. Civ. P. 23;

2.   Declare that the Defendants, and each of them, have breached their ERISA fiduciary

75

duties to the Plaintiff Class.

3. Declare that the Defendants, and each of them, have engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C § 1106(a), and self-dealing in violation of ERISA § 406(b), 29 U.S.C. § 1106(b).

4. Order that the Defendants, and each of them, disgorge amounts by which they were unjustly enriched from their fiduciary breaches, engagement in prohibited transactions, and/or self-dealing;

5. Impose a constructive trust on any amounts by which any Defendant was unjustly enriched from its fiduciary breaches, engagement in prohibited transactions, and/or self-dealing;

6. Order equitable restitution and other appropriate equitable monetary relief against the Defendants, and each of them;

7. Order the Defendants, and each of them, to make good to the Plan all losses to the Plan resulting from fiduciary breaches, and to restore to the Plan any profits which have been made through use of assets of the Plan.

8. Enjoin the Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations, and duties;

9. Award Plaintiffs attorneys' fees and costs pursuant to the common fund doctrine and/or applicable federal law;

10. Award such other and further relief as the Court deems equitable and just.

**As to Count XI:**

1. Certify this action as a class action pursuant to F. R. Civ. P. 23;

2. Declare that the Defendants, and each of them, have knowingly participated in

76

violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106;

3.  Order that the Defendants, and each of them, disgorge amounts by which they were unjustly enriched from their participation in prohibited transactions, self-dealing, and/or fiduciary breaches;

4.  Impose a constructive trust on any amounts by which the Defendant, and each of them, were unjustly enriched from their participation in fiduciary breaches, prohibited transactions, and/or self-dealing;

5.  Order equitable restitution and other appropriate equitable monetary relief against the Defendants, and each of them;

6.  Enjoin the Defendants, and each of them, from further participation in prohibited transactions, self-dealing, and/or fiduciary breaches;

7.  Award Plaintiffs attorneys' fees and costs pursuant to the common fund doctrine and/or applicable federal law.

8.  Award such other and further relief as the Court deems equitable and just.

Respectfully submitted,

_____
THOMAS H. BENTON, JR. (BENTT7991)

OF COUNSEL:

MCFADDEN, LYON & ROUSE, L.L.C.
718 Downtowner Blvd.
Mobile, Alabama 36609
Telephone: (251) 342-9172
Facsimile: (251) 342-9457

77

COALE, DUKES, KIRKPATRICK & CROWLEY
R. Mark Kirkpatrick
2610-B Dauphin Street, Suite 101
Mobile, Alabama 36606
Telephone: (251) 471-2625
Facsimile: (251) 471-2139


LAW OFFICE OF JOSEPH A. GAROFOLO
Joseph A. Garofolo
88 King Street, Suite 806
San Francisco, California 94107
Telephone: (415) 517-5307
Facsimile: (415) 348-1515

## Certificate of Service

I do hereby certify that I have on this _____ day of _____, 2004, served a true and correct copy of the foregoing to counsel of record by placing a copy of same in the United States mail properly addressed and first class postage prepaid.

H. William Wasden, Esq.
BOWRON, LATTA & WASDEN, P.C.
Post Office Box 16046
Mobile, Alabama 36616
As Attorney for Defendants:
**Gulf Telephone Company ESOP Plan**
**Woodward Setzer**
**Robert Mackey, Jr.**
**Ann Byrd**
**Esther Williams**
**Roxanne Henderson**
**Cynthia Gates**

William H. Hardie, Jr.
JOHNSTONE, ADAMS, BAILEY
GORDON & HARRIS, L.L.C.
Post Office Box 1988
Mobile, Alabama 36633
As Attorney for Defendant:
**The Snook Foundation**

John C. Morrow
BURR & FORMAN, LLP
420 North Twentieth Street, Suite 3100
Birmingham, Alabama 35203-5206
As Attorney for Defendants:
**Marjorie Snook**
**Snook Testamentary Trust**

S. Andrew Kelly
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
400 20th Street North
Birmingham, Alabama 35203-3200
As Attorney for Defendant:
**Arthur Anderson & Co.**

Paul Cheney
1417 Azalea Road, Apt. 6N
Mobile, Alabama 36609

Randy Wood
c/o Gulftel Communications
19812 Underwood Road
Foley, Alabama 36536

Jo-Gould Smith
c/o Gulftel Communications
19812 Underwood Road
Foley, Alabama 36536

Donald K. Roberton
110 Miranda Way
Pittsboro, NC 27312

Joseph Decosimo
Building One
7000 Peachtree Dunwoody Road
Atlanta, GA 30328

American Appraisal Associates, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, Alabama 36109

North Star Trust Company
Edward J. Halper
Michael, Best & Friedrich
401 N. Michigan Avenue, Ste. 1900
Chicago, IL 60611

Madison River Communications, LLC
c/o The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, Alabama 36109

Lee H. Copeland
COPELAND, FRANCO, SCREWS & GILL, P.A.
444 South Perry Street
Montgomery, Alabama 36104
As Attorney for Defendants:
**Millry Management Corporation**
**Paul Brown**

Gulf Telephone Company
c/o The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, Alabama 36109

Sandra Bixler
411 W. Persimmon Avenue
Foley, Alabama 36535

Robert H. Younce
2370 Younce Lane
Gulf Shores, Alabama 36542

Dale Younce
14606 Oak Street
Foley, Alabama 36535

Gulf Merger Corporation
c/o The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, Alabama 36109

Gulf Coast Services, Inc.
c/o The Corporation Company
2000 Interstate Park Drive, Ste. 204
Montgomery, Alabama 36109

Howard Killian
326 Prestwick Avenue
Gulf Shores, Alabama 36542

Madison River Telephone Co., LLC
103 South Fifth Street
Mebane, NC 27302

Willard R. Mitchem
13280 J.B. Williams Road
Loxley, Alabama 36551

_____
THOMAS H. BENTON, JR.