# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID ESLAVA, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION  04-0297-KD-B** |
| | ) | |
| **GULF TELEPHONE COMPANY, INC.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the following: defendant Marjorie Snook's motion to dismiss and brief in support (Docs. 51, 52); plaintiff's brief in opposition thereto (Doc. 74) and defendant's reply brief (Doc. 96).

I.    Procedural Background

Plaintiffs [1] filed the instant complaint on or about May 7, 2004 against multiple defendants alleging claims for violations of the Employee Retirement Income Security Act 29 U.S.C. §§ 1101, *et. seq.,* ("ERISA") (Doc. 1)  On or about June 15, 2004, plaintiffs filed an amended complaint alleging claims against defendant Marjorie Snook, in her capacity as "President, CEO, a member of the Board

---

[1]  Plaintiffs, a group of ten individuals, filed suit on behalf of themselves and a proposed class of participants and beneficiaries of an employee stock ownership plan of Gulf Tel. ("GTESOP").  The ESOP was created in October of 1990 and was amended several times thereafter.  (Complaint, Exhibit B)

of Directors of GulfTel, and the largest beneficial individual shareholder of Gulf Coast stock *prior to*

September 29, 1999." (Doc. 25 at 8) (emphasis added) [2]  Plaintiffs further allege that "[o]n or about

September 28, 1999, Snook became a representative of the GCSI Stockholders with respect to the

Escrow Fund [and] [a]s such, she was and is a fiduciary of the Plan within the meaning of ERISA  §

3(21)(A), 29 U.S.C.  § 1002(21)(A), and a party in interest to the Plan within the meaning of ERISA

§ 3(14), 29 U.S.C.  § 1002(14)."  (Id.)  Plaintiffs allege, in sum, that Snook breached her fiduciary

duties under ERISA and, in addition, participated in transactions prohibited by the statute.  (Doc. 25)

Plaintiffs identify Counts II, III, IV, V, VI, VIII, IX and X and XI as alleging ERISA violations

against Mrs. Snook. Plaintiffs contend and defendant does not dispute that she is not seeking dismissal

as to Counts IV, V and IX**.** [3]

Count II of the amended complaint,  entitled "Establishment and Operation of the Escrow Fund

Violate ERISA §§ 404(a)(1)(A), (B), and (D) [4] , 406 (a)(1)(D) [5] ,  406(b)(1) and (2) [6] and 410" [7] ,

---

[2]  The complaint identifies defendant Donald Robertson as "Chairman of the Board of Directors
and CEO of Gulf Coast from September 29, 1999 until on or about 2002."  (Complaint at p. 13)

[3]   In her brief in reply to plaintiffs' opposition brief, defendant moves, for the first time, for
dismissal of the portion of Count XI relating to mismanagement of corporate assets.

[4]   ERISA § 404(a) is entitled "Fiduciary duties" and provides, in pertinent part:

(a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall
discharge his duties with respect to a plan solely in the interest of the participants and
beneficiaries and--

(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C)

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. 1104 (a)(1)(A), (B) (C) and (D).

[5]   ERISA § 406 (a)(1)(D) provides, in part:

(a) Transactions between plan and party in interest

Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--

...

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan;

[6]   ERISA § 406(b)(1) and (2) provides:

(b) Transactions between plan and fiduciary

A fiduciary with respect to a plan shall not--

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries;

[7]   ERISA § 410 provides, in part as follows:

Except as provided in sections 1105(b)(1) and 1105(d) of this title, any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or

3

alleges, in part, that "[t]he provisions in the third amendment to the Merger Agreement, the Escrow

Agreement, and Amendment to Escrow Agreement violate ERISA § 410(a), 29 U.S.C. § 1110(a) and

that "[a]ll of the Defendants...negotiated, consummated, and/or facilitated the merger with the

knowledge that the Escrow Fund would be established and Plan assets would be diverted to the

Escrow Fund pursuant to the provisions of the Escrow Agreement in violation of ERISA § 410(a), 29

U.S.C. §1110(a)."  (Doc. 25 at 52) Count II further alleges that the defendants caused or approved

the following prohibited transactions:  (1) proceeds from the merger that would have gone to the ESOP

were diverted to the Escrow Fund; (2) payment for the Grimes settlement, including attorneys' fees

were paid from the Escrow Fund; (3) payment of the correction of plan qualification errors, and other

expenses from the Escrow Fund, (4) holding plan assets in the Escrow Fund and (5) by causing the

Escrow Fund to be established to benefit "present and former fiduciaries of the Plan who may have

liability in connection with 'claims, disputes, investigations or litigation in conjunction with any

proceedings arising out of any present or former employee's interest in the ESOP and /or 401(k) Plan

that emanated prior to the acquisition, '" and (6) engaging in self - dealing as a result of establishment of

the Escrow Fund.  (Doc. 25 at 53-54)

Count III of the amended complaint is entitled "Escrow Fund Investments Violate ERISA §§

404(a)(1)(A), (B) and (C)" and alleges that the defendants "breached their duties of loyalty and

prudence and duty to diversify investments in violation of... [of ERISA] by investing the Plan assets held

liability for any responsibility, obligation, or duty under this part shall be void as against
public policy.

4

in Escrow Fund solely in low-yielding money market funds."  (Doc. 25 at 55)

Count VI of the amended complaint is entitled "Failure to Perform Duties Relating to the Operation of the Plan Causing ESOP to Pay Improper Expenses and Investment Losses Violates ERISA §§ 404(a)(1)(A) -(D), 406 (a)91)(D), and 406(b)(1)" and alleges that Snook violated her fiduciary duty to monitor the members of the ESOP's Administrative Committee by failing to ensure that proper contributions were made to ESOP and by failing to maintain compliance with IRS code and that she engaged in prohibited transactions by allowing costs associated with these errors to be paid from the escrow fund.  (Doc. 25 at 61-62)

Count VIII, entitled "Failure to Properly Represent the ESOP in Snook Estate Litigation Violates ERISA 404(a)(1)(A), (B), and (D), 406(a)(1)(D), and 406 (b)(1) and (2)" alleges that Snook, as "a member of the Gulf Tel Board of Directors, breached her duties of prudence and loyalty in violation of ERISA 404(a)(1)(A) and (B), 29 U.S.C. 1104(a)(1)(A) and (B), by failing to monitor the ESOP Trustees when they did not protect the ESOP's interest in the Snook Trusts."  (Doc. 25 at 65) Count VIII further alleges that Snook "engaged in a prohibited transaction in violation of ERISA 406(a)(1)(D), 29 U.S.C. 1106(a)(1)(D), and self-dealing in violation of ERISA 406(b)(1) and (2), 29 U.S.C. 1106(b)(1) and (2), by causing the transfer of a portion of the ESOP's interest in the Snook Trusts to herself through the litigation and Pro Tanto Settlement relating to the Snook Trusts."  (Id.)

Count X, entitled "Misuse and/or Conversion of Gulf Coast Assets to the Detriment of the ESOP violates ERISA 404(a)(1)(A),(B) and (D), 406 (a)(1)(D), 406(b)(1) and (2) alleges that  "[b]y misusing and/or converting Gulf Coast assets (including, but not limited to, misusing the services of GulfTel employees) which reduced the value of Gulf Coast stock, the primary asset of the ESOP,

Defendant Marjorie Snook breached her fiduciary duties of loyalty and prudence, in violation of ERISA 404(a)(1)(A) and (B), 29 U.S.C. 1104(a)(1)(A) and (B)."  (Doc. 25 at 70) Count X further alleges that "Snook engaged in a prohibited transaction in violation of ERISA 406(a)(1)(D), 29 U.S.C. 1106(a)(1)(D), and self-dealing in violation of ERISA 406(b)(1) and (2), 29 U.S.C. 406(b)(1) and (2), by causing the sale of DiGiPH to Millry for less than adequate consideration and by purchasing Gulf Coast's Non-Business Assets for less than adequate consideration." (Id.)

Count XI, entitled "Party in Interest and Knowing Participant Liability Pursuant to ERISA 502(a)(3)" alleges that "[i]n order to accomplish her goal of obtaining the cash value of Gulf Coast and its assets instead of remaining income beneficiary of the Snook Trusts, Marjorie Snook carried out a scheme, *inter alia*, the diversion of Plan assets to insulate herself from liability, the sale of Gulf Coast and its assets for less than adequate consideration, misrepresentation and/or fraud to perpetuate her scheme, and misuse and/or conversion of Gulf Coast assets."  (Doc. 25 at 71)  Count XI further alleges that "[b]ecause she knowingly participated in conduct which constituted ERISA violations as described in Counts II, IV, V, VI, VIII, IX and X, Defendant Marjorie Snook, in her capacity as a party in interest with respect to the ESOP and/or knowing participant in a breach, is subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA 502(a)(3), 29 U.S.C. 1132(a)(3)."  (Id.)

Defendant seeks dismissal of all claims against her relating to the escrow account and the contingent stock option.  In addition, defendant seeks dismissal of Count X in its entirety and the

portions of Count XI containing allegations of mismanagement of plan assets. [8]

II.    Factual Background

Gulf Telephone Company Employee Stock Ownership Plan ("GTESOP") is an employee

benefits plan. [9]    The Plan provides for the creation of a trust, under which assets of the plan are held.

(Complaint, Exhibit A) Under the Plan, plaintiffs held a vested interest in shares of stock of Gulf Coast

Services Inc. [10]

---

[8]  For the first time, in her brief in reply to plaintiffs' opposition brief, defendant moves the Court to dismiss a portion of Count XI of the amended complaint.

[9]  A defined benefit plan consists of a general pool of assets. Such a plan, "as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment." Commissioner v. Keystone Consol. Industries, Inc., 508 U.S. 152, 154, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993); see also  Mead Corp. v. Tilley, 490 U.S. 714, 717, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989); ERISA § 3(35), 29 U.S.C. § 1002(35). The asset pool may be funded by employer or employee contributions, or a combination of both. See ERISA § 204(c); 29 U.S.C. § 1054(c).  To the contrary, a defined contribution plan "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." ERISA § 3(34); 29 U.S.C. § 1002(34). Employees and employers may contribute to the plan, and " 'the employer's contribution is fixed and the employee receives whatever level of benefits the amount contributed on his behalf will provide.' " Nachman Corp. v. Pension Benefit Guaranty Corporation, 446 U.S. 359, 364, n. 5, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) (quoting Alabama Power Co. v. Davis, 431 U.S. 581, 593, n. 18, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977)).
There appears to be no dispute among the parties that the GTESOP plan was a defined contribution plan.

[10]  Gulf Coast is identified as the holding company for Gulf Telephone Company ("Gulf-Tel"), a provider of local telephone service in Baldwin County, Alabama, Gulf Long Distance, Inc., a provider of long distance service in Baldwin County, Alabama and other entities, including a 50% interest in DiGiPH Holding Company, Inc., the holding company of a local provider of cellular telephone service. (Doc. 25 at 4)

Marjorie Snook's late husband,  John McClure Snook, provided for two separate Gulf Coast stock purchase options for the ESOP, one through a separate document executed prior to his death (in 1994) entitled "Option to Purchase Stock", and another group of stock purchase options set out in his Will ("Snook Will Options").  Collectively, the Option to Purchase Stock and the Snook Will Options are referred to as the "ESOP Stock Options." (Doc. 25 at 21)

The Option to Purchase Stock, granted on December 23, 1993,  gave the ESOP the right to purchase 25,000 shares of common stock of Gulf Coast for fair market value at any time.  (Doc. 25 at 22) However, the option mandates that the ESOP may not acquire more that 49.9% of the total outstanding common stock of Gulf Coast during Marjorie Snook's lifetime without her written consent. (Id.)  As of July 10, 1999 the ESOP owned 42.2% of the outstanding shares of Gulf Coast with a right to purchase an additional 7.7% without Mrs. Snook's consent.  (Id.)

The Snook Will Options also provided that upon Mrs. Snook's death that the ESOP be offered the opportunity to buy a certain amount of stock at a discounted price which was determined according to the year Mrs. Snook died.  (Id.)

In May 1999 a merger agreement was entered into between Gulf Coast Services, Inc. and Madison River Telephone Company, LLC for the acquisition of *all* of the shares of Gulf Coast Services, Inc. pursuant to a transaction in which Gulf Coast Services, Inc. would be merged into Gulf Merger Corp. (Doc. 25 at 24).  As a condition of the merger an escrow account was funded with $25 million out of the total cash purchase price of $312,558,656.00.  According to the Agreement the escrow fund was created as a result of "certain issues pertaining to GCSI and its subsidiary corporations which remain unresolved as of the date of this agreement and which will likely remain

8

unresolved as of the date of closing under the Merger Agreement."  (Complaint, Exhibit B at 1)

III.    <u>Standard for Motion to Dismiss</u>

Defendants move the Court for an order dismissing plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12.  (Doc. 48) A defendant may move to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if plaintiff has failed to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6).  A 12(b)(6) motion tests the legal sufficiency of a plaintiff's claim and the court construes all allegations as set forth in plaintiff's complaint as true and resolves all inferences in favor of the plaintiff.  <u>United States v. Gaubert</u>, 499 U.S. 315, 327 (1991); <u>Powell v. Lennon</u>, 914 F.2d 1459, 1463 (11th Cir. 1990).  The Eleventh Circuit has held that  "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>In re Johannessen,</u> 76 F.3d 347, 349 (11th Cir. 1996)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).   "As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." <u>South Fla. Water Mgmt. Dist. v. Montalvo</u>, 84 F.3d 402, 408 n. 10 (11th Cir.1996).  However, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. <u>Ancata v. Prison Health Services, Inc</u>., 769 F.2d 700, 703 (11th Cir.1985). With this legal framework in mind, the Court now turns to defendants' specific grounds for dismissal.

IV.    <u>Analysis</u>

Defendant moves the Court for an order dismissing all of plaintiffs' claims which are based on Mrs. Snook's involvement with the escrow funds on the grounds, in sum, that the escrow funds were not plan assets within the meaning of ERISA and that Snook did not act in a fiduciary capacity with

respect to the fund. (Doc. 52) Defendant further seeks dismissal of all claims based on Mrs. Snooks

involvement with the contingent stock option, on the grounds that it was not a plan asset, but a "mere

expectancy." (<u>Id.</u> at 2)  Finally, defendant seeks dismissal of Count X of the amended complaint

(alleging Snook mismanaged and or misused corporate assets in violation of ERISA) as well as a

portion of Count XI alleging mismanagement.

      A.     <u>Is Marjorie Snook a Fiduciary Under ERISA?</u>

      Counts II, III, VI, VIII and X of the amended complaint are predicated on Marjorie Snooks'

status as a fiduciary.  Defendant has moved to dismiss these counts on the grounds that Snook was not

a fiduciary within the meaning of ERISA.  Specifically, defendant contends that "all of Mrs. Snook's

alleged acts or omissions concerning the escrow funds occurred after September 29, 1999" the date of

the merger and therefore she was "not a fiduciary within the meaning of ERISA with respect to her

involvement with the escrow funds." (Doc. 52 at 16)    In response to defendant's motion, plaintiffs

first assert that Mrs. Snooks' fiduciary status implicates "mixed questions of law and fact [and] there

will typically not be sufficient facts to make a determination at the motion to dismiss stage." (Doc. 74 at

7) Notwithstanding, plaintiffs go on to argue that Snook was a fiduciary with respect to the escrow fund

and stock option since as a member of the GulfTel Board of Directors she had the power to appoint

and remove ESOP trustees. (Doc. 25 at 56) Plaintiffs also maintain that Snook exercised fiduciary

authority over the ESOP by using her position as GulfTel President, CEO, and a member of the Board

of Directors to influence and control the ESOP trustees. (<u>Id.</u>)  Plaintiffs allege, in part, that the "ESOP

Trustee Defendants, who were all members of the GulfTel Board of Directors were influenced by

Marjorie Snook's desire to see the merger consummated." (<u>Id.</u>)  Plaintiffs argue that definition of

10

fiduciary is broad and that "involvement in decisions relating to the management or disposition of plan assets is not the only way for an entity or individual to become a fiduciary." (Doc. 74 at 14)

Defendant argues that ERISA's fiduciary provisions are not implicated in the sale of a business, nor are the provisions implicated when an employer sells its stock or merges with another company. (Doc. 52 at 9) Moreover, Snook maintains that while a person may be a fiduciary for one purpose that does not make that person a fiduciary in all respects. Rather, the defendant argues that the crucial inquiry is the nature of the function performed. (Doc. 52 at 11)

Under ERISA, fiduciaries are identified as those persons expressly named as such by a plan. See ERISA § 402(a) , 29 U.S.C. § 1102 (a). In addition, ERISA also designates as fiduciaries those persons exercising control over the management and administration of the plan and the distribution of its assets. ERISA 2(21), 29 U.S.C. § 1002(21). Fiduciaries have the duty to act "with complete and undivided loyalty to the beneficiaries" Donovan v. Walton, 609 F.Supp. 1221, 1228 (S.D.Fla.1985), aff'd, 794 F.2d 586 (11th Cir.1986). However, fiduciary duty is not an all-or-nothing concept; defendants have fiduciary duties only over those activities for which they are responsible. See Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir.1992). The weight of authority recognizes that the term "fiduciary" is to be liberally construed, a position that is consistent with the remedial purposes of ERISA. See In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F.Supp.2d 511, 544 (S.D.Tex.2003), quoting Ariz. State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 720 (9th Cir.1997), citing John Hancock Mut. Life Ins. v. Harris Trust & Sav. Bank, 510 U.S. 86, 96, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993), and quoting Mertens v. Hewitt Associates, 508 U.S. 248, 262, 113 S.Ct. 2063 (1993) (" 'Fiduciary status under ERISA is to be construed liberally, consistent with

ERISA's policies and objectives,' and is defined 'in functional terms of control and authority over the plan, ⋯ thus expanding the universe of persons subject to fiduciary duties-and to damages-under § 409(a).' ")

ERISA § 404(a)(1)(A) requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries  and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).  In determining whether a  defendant is a fiduciary under ERISA, the Court first examines the terms of the ERISA plan. See Varity Corp. v. Howe, 516 U.S. 489, 502, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

While it does not appear that the Plan named Snook as a fiduciary, if she "exercis[ed] control over the management and administration of the plan and the distribution of its assets" she may likewise be held to fiduciary status.  29 U.S.C. § 1104(a)(1)(A).  Plaintiffs have alleged that Snook's fiduciary status arises from the following: (1) as a member of the Board of Directors of GulfTel she was a plan sponsor of the ESOP with power to appoint and remove trustees; (2) GulfTel may have acted as plan administrator prior to and/or subsequent to September 29, 1999; (3) Snook exercised fiduciary authority over ESOP in her position as GulfTel President, CEO, Board of Directors and largest individual shareholder of Gulf Coast stock prior to the merger.  (Doc. Id. at 15) Plaintiffs argue that "[i]nfluence and control exerted over other fiduciaries, which amounts to actual discretionary authority or control over the management of the ESOP by the Defendant for the purposes of ERISA, is more than sufficient as a matter of law to satisfy ERISA's functional fiduciary test."  (Id. at 16)

The Court is of the opinion that the question of whether Snook functioned in a fiduciary

capacity is a fact-intensive inquiry.  Moreover, while filed in 2004, this case is at the infant stage of litigation, in that no discovery has been conducted. [11]  Accordingly, the Court is reluctant to dismiss plaintiffs' ERISA claims based on Snook's alleged fiduciary status or the parameters of her fiduciary capacities at this stage of the case.  See  In re Polaroid Erisa Litig., 362 F.Supp.2d at 470 ("an ERISA complaint need do little more than track the statutory definition to establish a defendant's fiduciary status in compliance with Rule 8") (internal quotations omitted); In re AEP ERISA Litig., 327 F.Supp.2d 812, 827 (S.D.Ohio 2004) ("[T]his Court subscribes to the view that fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss."); In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 312 F.Supp.2d 1165, 1180-81 (D.Minn.2004) (questions of fiduciary status and capacity are ill-suited to resolution on Rule 12(b)(6) motion); In re Sprint Corp. ERISA Litig., 388 F.Supp.2d 1207, 1227 (D.Kan.2004) (it is premature to determine scope of fiduciary duties and whether particular defendant acted in fiduciary capacity on motion to dismiss). Accordingly, to the extent defendant moves the Court to dismiss plaintiffs' claims on the grounds that Mrs. Snook is not a fiduciary with respect to the escrow fund or the stock option, the motion is **DENIED.**

However, this determination does not end the Court's inquiry.  Regardless of Marjorie Snook's status as a fiduciary, *if* the escrow funds and contingent stock options are not "plan assets", at least some of the violations alleged pursuant to ERISA are not viable.  Thus, the Court now turns its focus to

---

[11]  On August 30, 2004, District Judge Charles R. Butler granted defendants' motion to stay discovery in this action pending resolution of the motions to dismiss.  (Doc. 112) This action was transferred to the docket of District Judge Kristi K. DuBose on December 30, 2005.  (Doc. 139)

the crux of the issue - - what constitutes a "plan asset" within the meaning of ERISA?

B.    Whether Escrow Funds are Plan Assets

Defendant next moves to dismiss on the grounds, in sum, that no violation of ERISA occurred since the escrow funds are not plan assets.  (Doc. 52 at 11) In support of her argument, defendant first points to the plain language of the Plan, which defines the "Trust Fund" as "all property of every kind held or acquired by the Trustee under the Plan."  (Doc. 25, Exhibit A at 8)

Specifically, defendant argues that "[t]he funds held in the escrow account in this case were not paid into and have <u>never</u> been "held" or "acquired" by the Trust.  (Doc. 96 at 6 )(emphasis in original) Rather, defendant maintains that Madison River "paid the funds into the escrow account in connection with the merger <u>for its own protection</u> [and]..."did not, and was not required to pay the escrow funds into the Plan, GulfTel, or its shareholders. " <u>Id</u>.  Defendant argues that "Madison River <u>alone</u>, out of its own resources, paid into the escrow account $25 million out of the total cash purchase price of $312, 558, 656.00 Madison River paid for the common stock of GCSI." (<u>Id</u>.)  Thus, defendant takes the position that Madison River owns the escrow account and thus the Plan does not.

Defendant relies, in part, on an unpublished opinion out of the Seventh Circuit Court of Appeals.  <u>See</u> <u>Becker v. Midwest Stamping & Mgf. Co. Profit Sharing Plan & Trust</u>, 221 F.3d 133 (Table), 2000 WL 924072 (6th Cir., June 29, 2000) In <u>Becker</u> a former employee of defendant filed suit under ERISA alleging that he was entitled to a distribution from the escrow fund.  The distribution was made *after* the employee's separation.  Relying on the language of the Plan, the Court concluded that the district court's ruling granting summary judgment in favor of the employer was proper.  The Court opined, in part, as follows:

14

The Committee further interpreted § 4.04's annual valuation process as referring to assets actually realized within the valuation year, and thus *treated the escrow funds as income in 1996, when the funds were actually distributed to the Plan and other shareholders, rather than in 1993, when shareholders had at best a contingent interest in the funds that might never have been realized. This may not be a legally compelled result, but as the district court painstakingly explained, this is not only a rational means of accounting for the Plan's income, but quite commonplace and sensible.* Had the Committee counted the funds as assets in 1993, and had the funds been subsequently spent to cover indemnification claims (wholly unrelated to the Plan), the Plan's records would have shown a $6 million loss when no actual loss of the Plan's funds occurred. Losses as well as gains factor into the individual entitlements of Plan participants under § 4.04. We seriously doubt that Plaintiffs would have been as likely to consider the escrow funds as Plan assets if they had proved insufficient to cover the indemnification claims. Moreover, the Committee acted consistently with this interpretation by distributing the escrow proceeds to those persons participating in the Plan in 1996, and as it notes, recalculating portions of the funds already distributed would cause substantial hardship. We cannot logically find any evidence in this record of the bad faith or internal inconsistency required for reversal.

Id. at *4. (emphasis added)

Plaintiffs argue that Becker is inapposite as that case did not involve misrepresentations about merger proceeds that were diverted to an escrow account nor the use of assets to relieve fiduciaries of liability.  (Doc. 74 at 24) The Court agrees that Becker is factually distinguishable from the instant case. Moreover, the Court's focus in Becker was whether the district court applied the proper standard of review in concluding that the Committee's interpretation of the Plan was not arbitrary and capricious. The court concluded that the committee's decision not to consider the escrow funds as income until they were actually distributed to the plan "may not be a legally compelled result" but it was "a rational means of accounting for the Plan's income."  Becker, 2000 WL at *4.

Plaintiffs argue that the escrow account, established as a result of the merger agreement, was a

plan asset[12] and point to the language of the escrow agreement itself which provides, in part: "Parties agree that, for the purposes of federal, state and other taxes based on income, the GCSI Stockholders will be treated as the owner of the Escrow Fund." (Complaint, Exhibit B, Section 9) However, defendant argues that this stipulation is of no consequence since ownership for tax purposes is not the same as "legal" ownership. (Doc. 96 at 11) Plaintiffs also note that the complaint alleges that "[t]he Escrow Fund Notice states that 'the ESOP participants have 48.9% interest in the Escrow Fund,'" which plaintiffs alleges "communicates to participants that the funds held in the Escrow Fund are Plan Assets." (Doc. 25 at 45)

Plaintiffs next argue that the proceeds from the merger are similar to contributions to an employee benefit plan withheld from employees' paychecks. (Doc. 74 at 19) However, defendant counters that the analogy is misplaced, since in those instances where the money is withheld from the employee's paycheck, the money belongs to the <u>employee,</u> whereas in this case the <u>employer</u> is the only one allowed to make contributions to the plan. (Doc. 52 at 13) [13] Defendant relies, in part, on

---

[12]In the alternative, plaintiffs argue that ERISA § 410(a) makes the agreement establishing the escrow fund void as a matter of law. (Doc. 74 at 24) Under § 410, any "agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty" is deemed void. This contention is also part of plaintiffs' claim in Count Two of the complaint. To resolve this issue would in essence be a partial judgment as to Count Two, which would not be proper on the current motiont.

[13]  Article IV of the Plan, entitled "Participant Contributions" states as follows:

4.01 <u>Participant Voluntary Contributions</u> - The Plan does not permit nor require participant voluntary contributions or rollover contributions.

(Complaint, Exhibit A, p. 24)

<u>Local Union 2134 v. Powhatan Fuel, Inc.</u>, 828 F. 2d 710 (11th Cir. 1987) wherein the Court held that "until monies are paid by the corporation to the plan there are no assets in the plan under the provisions of ERISA."  <u>Id.</u> at 714.

Plaintiff argues that <u>Powhatan</u> is distinguishable from the instant case in that it did not involve allegations of corporate improprieties.  (Doc. 74 at 30)  The Court agrees that <u>Powhatan</u> is not dispositive of this issue.  This conclusion is bolstered by the opinion of the Eleventh Circuit Court of Appeals in <u>ITPE Pension Fund v. Hall</u>, 334 F.3d 1011 (11th Cir. 2003), where the Court limited its holding in <u>Powhatan</u> as follows:

> In <u>Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.</u>, 828 F.2d 710 (11th Cir.1987), the president of a troubled corporation opted to spend corporate assets to pay employee salaries and to otherwise try to keep the corporation afloat, to the detriment of the ERISA plan. We decided in that case that these decisions were made in the president's role as president, and not in his role as an ERISA-plan fiduciary, and that no personal liability could attach therefore under ERISA. Id. at 714. Another way of making this point is to say that the assets over which the president had control were not plan assets. <u>See id.</u> ("Indeed, until monies were paid by the corporation to the [ERISA] plan there were no assets in the plan under the provisions of ERISA."). *However, <u>Powhatan</u> does not stand for the proposition that unpaid employer contributions are never assets of an ERISA plan until those contributions are actually paid into the plan. Our decision in <u>Powhatan</u> concerned the general rule, that unpaid employer contributions are not assets of an ERISA plan, and we had no occasion to consider in that case the effect of contrary plan language, which, as we have stated supra, is the exception to the rule.*

<u>Id.</u> at 1014, n.2. (emphasis added).

Moreover, the escrow account in which a portion of the proceeds from the sale of stock was placed is simply not equivalent to employer contributions.  An employee does not necessarily have a vested right in employer contributions until they are paid.  In this case the escrow account of $25 million was funded solely from the cash purchase price of $312,558,656.00 Madison River paid for the

common stock of GCSI.  The ESOP owned a portion of the common stock of GCSI, thus a portion of the $25 million is part of the purchase price Madison River paid for the ESOP's stock.  Although it is true that the ESOP may not ever receive any of the money due to the fact that certain contingent liabilities may deplete the account, it appears that the ESOP has a vested interest in the account as it is part of the purchase price for their stock.

In her reply brief defendant also cites to <u>Burns v. Rice</u> 39 F.Supp. 2d 1350 (M.D. Fla. 1998) for the proposition that the escrow funds were mere contingency interests.  In <u>Burns,</u> participants in an employee retirement savings plan brought suit against their employer under ERISA alleging that the employer breached its fiduciary duty in preventing disbursement of stock to participants that was to occur upon merger.  <u>Id.</u>  In holding that the stock benefits had not accrued to the benefit of the participants prior to the merger, the court opined, in part:

> It is clear that the Financed Shares in the Suspense Account in the instant case were contingent, see BEST Plan § 4.5(a) (requiring allocation of all shares in Suspense Account to accounts of all Plan participants only upon a Change in Control, as defined therein), and thus that these benefits were neither accrued, see29 U.S.C. § 1002(23)(B) (defining term "accrued benefit" as "in the case of a plan which is an individual account plan, the balance of the individual's account."), nor vested, see BEST Plan § 4.5(b)(4) (stating that all account balances of all participants would be fully vested as of the date of a Change in Control), at the time the Defendants prevented the triggering of § 4.5 of the Plan. Thus it is clear that the above stated principle applies, precluding Plaintiff's claims herein.")

<u>Id.</u>  at 1356.  Again, as in <u>Becker,</u> the court in <u>Burns</u> looked to the plan document to determine whether the escrow account was a plan asset and it was clear from the specific plan that the shares were contingent.

In the present case it is undisputed that the $25 million was part of the purchase price for the

stock of GCSI.  Thus a portion of the $25 million appears to be an asset of the ESOP.  While the asset may be later depleted because it was committed to pay certain contingent liabilities,  it is still an asset. The contention that the $25 million belongs to Madison River is perplexing.  The court has not been directed to any evidence in the escrow agreement or the merger agreement that would indicate that Madison River has any right to receive any of the proceeds back from the cash price they paid for the stock.  In fact the escrow agreement itself indicates that for tax  purposes the GCSI stockholders will be treated as the owner of the escrow fund.  Although the agreements contemplate that the money will be used to cover contingent liabilities of the former GCSI, there has been no contention that Madison River has a right to ever receive any of the money.[14]

Resolving all inferences in favor of plaintiffs, the Court cannot hold at this point that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief".  In re Johannessen 76 F.3d at 349.  Accordingly, defendant's motion to dismiss those claims involving the escrow account is **DENIED**, at this time.

C.     Whether Contingent Stock Option is Plan Asset

As to Count VIII, plaintiffs allege that the Discounted Testamentary Stock Options are plan assets.  (Doc. 74 at 27)  Defendants move to dismiss these claims on the grounds, in sum, that they are mere expectancies and are therefore not plan assets.  (Docs. 52, 96 at 15) [15]

_____

[14]  Treas.Reg. § 1.83-3(e) provides that assets that are set aside in a so-called secular trust are property, since they are funded rather than unfunded promises, and the regulations specifically provide that "property" includes a beneficial interest in assets that are transferred or set aside from the claims of creditors of the transferor *in a trust or escrow account*.(emphasis added)

[15]  Plaintiffs argue that defendant "seeks to dismiss only the portion of this Count relating to certain stock options granted to the ESOP to purchase stock at a discount upon the Defendant's

The Defendant argues that "the stock option created by Mr. Snook's will, which could be exercised only after Mrs. Snook's death and at some unknown time in the future, was a mere 'expectancy[y]'" (Doc. 52 at 23) Defendant also states that pursuant to the Snook Will, the Trust that held the stock could have sold the stock  Defendant maintains that "[s]ince a conditional stock option is not 'a vested interest' and there was no common stock in the Snook Testamentary Trust after the merger, there is no option for the Plan to exercise."  (Id.)

The defendant relies on Shaffer v. Reed, 437 So.2d 98 (Ala. 1983) for the proposition that the Plan did not have a "vested interest" in the testamentary stock options.  However, in Shaffer the court only determined that the particular will at issue did not properly vest the stock options because the will violated the rule against perpetuities.  Id.  Shaffer does not state or imply that stock options granted pursuant to a will can never be an asset.[16]  The only authority cited that is remotely on point is Frey v. Frey, 757 So.2d 450 (Ala. Civ. App. 2000).  In Frey the court determined that certain stock options were a marital asset although the husband could have lost his right to the options had he been terminated before he exercised the options.  However, in Frey, the stock options had matured, that is the husband could have exercised his option to purchase the stock.   The testamentary stock options at issue in this motion had not matured, that is the ESOP could not have exercised the option until the

death...."  (Doc. at 5) In her brief in reply defendant maintains that her motion to dismiss "presents only two narrow legal issues: (1) whether the escrow funds established in connection with the merger and the contingent stock option created by the Last Will and Testament of John C. Snook constitute 'plan assets' within the meaning of ERISA; and (2) whether Mrs. Snook's alleged mismanagement or misuse of corporate assets constitutes a violation of ERISA."  (Doc. 96 at 3)

[16]The court will not engage in a analysis of whether the Snook Will gave a valid stock option to the ESOP as this argument has not been advanced.  For purposes of this motion to dismiss the court assumes that the plaintiffs' allegations in that regard are true.

death of Mrs. Snook or unless Mrs. Snook agreed, neither of which had occurred.  The plaintiffs

concede that the stock options had not vested.  Moreover, the defendant alleges, and the plaintiffs do

not contest, that the Snook Trust had the ability to sell the stock prior to the ESOP's stock option

maturing.  Pursuant to <u>Frey</u>,  stock options are an asset when they have matured to the point that the

option can be exercised.  Because the Snook Trustees could have sold the stock prior to ESOP's

stock option maturing, and in fact did sell it to Madison River, the ESOP's stock option was a mere

contingency.

 The court looks to the Plan to determine was constitutes Plan assets.  The Plan defines the

"Trust Fund" as "all property of every kind held or acquired by the Trustee under the Plan."   The

plaintiffs have cited no authority nor has the court found any authority that would support the

proposition that stock options that have not matured are considered property.  The court agrees that

the contingency in the stock option was too uncertain to be considered property of the Plan.  Thus,

under Count VIII , for claims pursuant to section 406(a)(1)(D) and section 406(b)(1) which are based

on the allegation that the testamentary stock options were Plan assets, the motion to dismiss is

**GRANTED**.

    C. <u>Mismanagement of Assets (Count X)</u>

 Defendant next moves the Court to dismiss Count X of plaintiffs' complaint in its entirety.

(Doc. 52 at 24-25)  Count X, alleges, in sum, that Snook violated her fiduciary duties in violation of

ERISA §§ 404(a)(1)(A), (B), (D) by misusing and/ or converting Gulf Coast assets and then failing to

bring a shareholder derivative action against herself for the misuse and/or conversion of Gulf Coast

assets.  Count X also claims that Mrs. Snook  breached her fiduciary duties pursuant to 406(a)(1)(D),

406(b)(1) and (2) by causing the sale of DIGIPH stock to Millry for less than adequate consideration and by purchasing Gulf Coast's Non-Business Assets for less than adequate consideration.  (Doc. 25 at 69-70)

As to plaintiffs claims pursuant to §§ 406(a)(1)(D), 406(b)(1) and (2) and 404(a)(1)(A) and (B) against Mrs. Snook, plaintiffs maintain that discovery is needed to "determine if any of the 'GulfCoast' assets are plan assets under 'ordinary notions of property rights' and, therefore, whether Defendant became a fiduciary with respect to those assets."  (Id at 30) Plaintiffs also contend that "with the assistance of facts obtained in discovery, [they] will show that Marjorie Snook used her influence over other fiduciaries to either assist her in or ignore her improprieties, and thus exerted actual control over management of the ESOP, *regardless of whether the assets are plan assets.*"  (Id.) (emphasis added)

ERISA §406 (a)(1)(D) prohibits transactions between the plan and a party in interest, as a result of the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan..." 29 U.S.C. § 1106(a).  ERISA § 406(b)(1) and (2) prohibits a fiduciary from engaging in transactions with plan assets for his own benefit or adversely transacting with plan assets on behalf of a third party. 29 U.S.C. § 1106(b).  In order to constitute a breach under ERISA § 406(a)(1)(D) or § 406(b)(1) the transaction must involve *plan assets* and under §406(b)(2) it must be a transaction involving the plan.  The plaintiff has failed to even allege that plan assets where involved or that the plan was involved in the transaction.[17]   Thus the defendant's motion to dismiss as to these claims is **GRANTED**.

---

[17]This Court has previously determined that the DiGiPH stock was not a plan asset. (See Doc. 150)

Plaintiffs also allege that Mrs. Snook violated § 404(a)(1)(A) and (B) in that she "wasted corporate assets by purchasing personal assets through Gulf Coast, including her personal residence and/or other assets characterized as the Non-Business Assets in the Merger Agreement...[and] utilized Gulf Coast employees to work on her farm and personal residence and for other improper purposes." (Doc. 25 at 32) Plaintiffs further allege that Snook "improperly used and/or converted Gulf Coast assets for her own benefit including, but not limited to Gulf Coast's interest in a joint venture investment with Lamar Advertising." (Id.) The plaintiffs also claim that Mrs. Snook violated her fiduciary duties by failing to bring a shareholder derivative action against herself for the above cited violations.

Defendant maintains that an allegation that Snook, as a member of the company's board of directors, "mismanaged" corporate assets does not state a claim under ERISA. (Doc. 52 at 24) Specifically, defendant argues that ERISA does not regulate purely corporate behavior. (Id.) In support of her argument defendant cites to Husvar v. Rapoport 337 F.3d 603, 605, 608 (6th Cir. 2003. )(The opinion was subsequently amended and superceded at 430 F.3d 777 (6th Cir. 2005).) In Husvar the issue was whether the plaintiffs claims, which did not cite ERISA, were in fact claims under ERISA. Finding that the claims were not ERISA claims, the Court reversed the district court's denial of remand and concluded that;

> A claim that company directors did not operate the business itself in conformity with sound business practices does not, however, implicate the protections afforded by ERISA. Absent any indication in the complaint that the plaintiff's intend to challenge the decisions of actions of plan fiduciaries, the filing contains no claims arising under federal law."

Id. at 782. Thus Husvar is distinguishable on the facts. In the present the plaintiffs have clearly alleged that defendant Snook was acting contrary to her fiduciary duties.

23

ERISA § 404(a) unequivocally requires the fiduciary both to (1) comport with the prudent man's standard of care under 29 U.S.C. § 1104(a)(1)(B) and (2) to act in accordance with any documents and instruments governing the plan under §1104(a)(1)(D).   The court is aware that "the ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer.   ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets."   Phillips v. Amoco Oil Co., 799 F.2d 1464, 1471 (11th Cir.1986).   The Court however, being mindful of the liberal pleading rules, cannot say that it appear beyond doubt that the plaintiffs can prove no set of facts in support of their claims against Snook under §404(a) which would entitle them to relief.   Accordingly, defendant's motion to dismiss Count X as to the claims under §404(a)  is **DENIED**, at this time.

     D.     <u>Count XI - ERISA 502(a)(3)</u> [18]

In her brief in reply to plaintiffs' opposition brief, defendant, for the first time, seeks dismissal of Count XI of the amended complaint "to the extent it seeks to assert a claim for Mrs. Snooks' alleged 'misuse and/or conversion of Gulf Coast assets."  (Doc. 96 at 20) Since this was raised for the first time in the reply brief the plaintiffs did not have an opportunity to respond. (See Doc. 101)   The motion to dismiss Count XI is thus **STRICKEN.**

---

[18] Section 502(a) provides, in pertinent part:

(a) A civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

E.     Failure to Serve Secretary of Labor

In response to defendant's motion to dismiss based on ERISA § 502(h) [19], plaintiffs maintain that both Secretaries were served in compliance with the statute.  (Doc. at 30)  In the reply brief Snook states that she "no longer seeks a dismissal of this action in its entirety for plaintiffs' failure to serve copies of the complaint on the Secretary of Labor and Secretary of the Treasury because they now assert they have done so."  (Doc. 96 at 3)

IV.     Conclusion

The Court has construed (as it is so required) all the allegations contained in plaintiffs' complaint as true and has resolved all inferences in favor of plaintiffs.  Accordingly, defendant's motion to dismiss those claims involving the escrow funds is **DENIED**.  Defendant's motion to dismiss those claims involving the stock options is **GRANTED**.  Defendant's motion to dismiss claims in Count X brought pursuant to §406 is **GRANTED**.  Defendant's motion to dismiss claims in Count X brought pursuant to § 404 is **DENIED.**    Defendant's motion to dismiss Count XI is **STRICKEN.**

---

[19]   29 U.S.C. § 1132(h) requires private litigants to serve their complaint on the Secretary and gives the Secretary discretion to intervene. The purpose of § 1132(h) is to provide the Secretary notice of ongoing private lawsuits.  § 1132(h) states as follows:

> A copy of the complaint in any action under this subchapter by a participant, beneficiary, or fiduciary (other than an action brought by one or more participants or beneficiaries under subsection (a)(1)(B) of this section which is solely for the purpose of recovering benefits due such participants under the terms of the plan) shall be served upon the Secretary and the Secretary of the Treasury by certified mail. Either Secretary shall have the right in his discretion to intervene in any action, except that the Secretary of the Treasury may not intervene in any action under part 4 of this subtitle. If the Secretary brings an action under subsection (a) of this section on behalf of a participant or beneficiary, he shall notify the Secretary of the Treasury.

**DONE** and **ORDERED** this the <u>28th</u> day of February, 2006.

<u>S/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**