IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID ESLAVA, *et al.*,           *
                                  *
    Plaintiffs,                   *
                                  *
vs.                               *   CIVIL ACTION 04-00297-KD-B
                                  *
GULF TELEPHONE COMPANY,           *
*et al.*,                         *
                                  *
    Defendants.                   *

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiffs' Motion for Class Certification and supporting Memorandum (Docs. 224, 225), Defendants' Responses in Opposition (Docs. 282, 284, 286, 288, 312), Plaintiffs' Reply (Docs. 356, 357), and the parties' Post-Hearing Briefs (Docs. 414, 415). This matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned conducted an evidentiary hearing on October 24, 2006. Based upon a careful review of the parties' briefs and the evidence submitted at the hearing, the undersigned RECOMMENDS that Plaintiffs' Motion be Denied.

## I. Background Facts

Gulf Telephone Company established the Gulf Telephone Company Employee Stock Ownership Plan ("GTESOP"). The GTESOP is an employee benefit plan, which provides for the creation of a trust, under which assets of the plan are held. Under the Plan, plan participants held a vested interest in shares of stock of Gulf Coast

Services, Inc.[1]

Defendant Marjorie Snook's late husband, John McClure Snook, provided for two separate Gulf Coast stock purchase options for the GTESOP, one through a separate document executed prior to his death in 1994, entitled "Option to Purchase Stock" ("Option"), and another group of stock purchase options established in his Will ("Snook Will Options"). (Doc. 25 at 21).

The Option to Purchase Stock, granted on December 23, 1993, gave the GTESOP the right to purchase 25,000 shares of common stock of Gulf Coast for fair market value at any time. (Doc. 25 at 17-18). However, the option mandates that the ESOP may not acquire more than 49.9% of the total outstanding common stock of Gulf Coast during Marjorie Snook's lifetime without her written consent. (Id.). As of July 10, 1999, the GTESOP owned 42.2% of the outstanding shares of Gulf Coast with a right to purchase an additional 7.7% without Mrs. Snook's consent. (Id.)

In May 1999, a merger agreement was entered into between Gulf Coast Services, Inc. (hereinafter "Gulf Coast") and Madison River Telephone Company, LLC, for the acquisition of all of the shares of Gulf Coast, pursuant to a transaction in which Gulf Coast would be

---

[1]Gulf Coast Services is identified as the holding company for Gulf Telephone Company ("Gulf-Tel"), a provider of local telephone service in Baldwin County, Gulf Long Distance, a provider of long distance service in Baldwin County, and other entities, including a 50% interest in DIGiPH Holding Company, the holding company of a local provider of cellular telephone service. (Doc. 25 at para. 8)

merged into Gulf Merger Corp. (Doc. 25 at 24). The merger consideration included in the sales price Gulf Coast's 50% interest in DiGiPH Holding Company ("DiGiPH"). In connection therewith, Gulf Coast entered into an agreement with Millry Management Corporation, the owner of the remaining 50% interest in DiGiph to sell its 50% share to Millry for $6.5 million, plus the release of Gulf Coast from future funding obligations.

American Appraisal Associates, Inc., ("AAA"), a valuation consulting firm which had performed annual appraisals of the GTESOP's Gulf Coast stock since 1997, was engaged by the GTESOP trustees to prepare an annual valuation of Gulf Coast stock for the 1998 Plan year. (Doc. 25 at 27). The GTESOP trustees also requested that AAA update the appraisal through the May 9, 1999, Merger Agreement and prepare a "fairness opinion" regarding the proposed merger, including a valuation of the options granted to the GTESOP under the Options to Purchase Stock.

Gulf Coast was sold to Madison River in September 1999. (Doc. 25 at 34). At the time of the sale, Gulf Coast had four primary stockholders: the Snook Testamentary Trust (which held 29.4% of outstanding Gulf Coast stock), the Snook Irrevocable Trust 1 (1.8%); the Snook Irrevocable Trust 2 (24.9%), and the GTESOP, which owned 42.2% of the stock (Doc. 25 at para. 48).

On July 10, 1999, the GTESOP trustees and administrative committee sent a Disclosure Memorandum to all plan participants concerning the proposed merger transaction and events leading up to

3

it.   The Memorandum included information regarding the AAA valuations, Ms. Snook's desire to terminate the trusts, and the declaratory action filed in Baldwin County requesting court review of the proposed merger transaction, and instruction as to whether the Snook Trustees could sell the Company stock. (Doc. 69, Ex. B at 12-13).

In 1999, after a group of Gulf-Tel retirees filed a preliminary discovery action in Baldwin County indicating that they planned to bring suit against the GTESOP and certain Gulf-Tel entities under the claim that they had been enticed to opt-out of the GTESOP at per-share prices substantially lower than the merger consideration, a condition was included in the merger agreement whereby an escrow account was established and funded with $25 million out of the total cash purchase price of $312,558,656.00. (Doc. 69, Ex. I, Escrow Agreement).

The Escrow Agreement was executed on September 28, 1999, with the merger agreement amended to reflect the change. (Id.). Subsequent thereto, the merger between Gulf Coast and Madison River was closed. (Id. at 3-4).

After the merger, on October 2, 1999, GTESOP Trustees and Administrative Committee sent a letter to the plan participants advising them of the existence of the escrow fund, the impact of the fund on the per-share merger consideration, the fact that slightly less than 10% of the merger consideration was being withheld to cover contingent liabilities and unpaid obligations of Gulf Coast,

4

and that the escrow would be terminated, with the unused escrow funds to be distributed to the GTESOP and other former shareholders of Gulf Coast when certain potential claims and unpaid obligations were resolved. (Doc. 69, Ex. C).

On November 3, 1999, the GTESOP Trustees and Administrative Committee distributed a memorandum to Gulf-Tel ESOP participants informing them of the filing of the Grimes case on October 5, 1999, and that the case "may have an effect on the distribution schedule, including the 60% distribution within 60 days of closing as originally proposed by Madison River Telephone Company." (Doc. 69, Ex. D).

The Grimes litigation was settled, and as a condition of paying the settlement, Madison River demanded that the escrow be extended until June 1, 2006–the date upon which the longest ERISA statute of limitation would expire. (Doc. 307, Ex. 5).  On May 21, 2000, the "Amendment to the Escrow Agreement" was executed by Madison River, Gulf Coast, the Gulf Coast Stockholders, and Regions Bank (as escrow agent). (Doc. 25 at para. 138).

Participants were subsequently informed of the settlement of the Grimes litigation from the escrow fund and notified that the escrow was expected to expire in July 2006. (Doc. 69, Ex. E; Doc. 307, Ex. 39).

The ESOP distributed approximately 60% of its assets to participants in November of 1999, and an additional 20% in June of 2000, with the last distribution occurring in March of 2004. (Doc.

69, Ex. A).  On April 28, 2006, Gulf Tel & North Star issued written notice to the ESOP participants advising them that they would not receive the distribution from the escrow scheduled for June 1, 2006, because the pendency of the instant lawsuit precluded distribution under the amended escrow agreement. (Doc. 307, Ex. 58).

## II.  Plaintiffs' Claims

Ten Plaintiffs initiated this action on May 7, 2004, against multiple defendants alleging claims for violations of the Employee Retirement Income Security Act 29 U.S. C. §§ 1101, *et seq.*, ("ERISA")(Doc. 1).  Plaintiffs filed an amended complaint, on June 15, 2004, alleging that Defendants breached their fiduciary duties in relation to the merger, the creation and management of the escrow fund, and the management of the Snook options. (Doc. 25). Plaintiffs filed a Second Amended Complaint on August 4, 2006 (Doc. 291), and a "Restated Amended Complaint" on November 15, 2006. (Doc. 397).

In June 2006, Plaintiffs Watts, Clouse, Lofton, Ringler, Sutton, and Sharkey moved to dismiss their claims against the Defendants. (Docs. 205, 213).  With no objections from Defendants, their motions were granted. (Docs. 210, 214).  The four remaining Plaintiffs are David Eslava, Robert Kaiser, Jon Hartman, and Thomas Faison.

According to Plaintiffs, they seek to certify a class consisting of "[a]ll participants, except those named as defendants

6

in this action, of the Gulf Telephone Stock Ownership Plan (''the ESOP" or "the Plan") as of September 29, 1999". (Doc. 224). Plaintiffs are seeking class certification with respect to counts II, III[2], IV, VI, VII, VIII, and XI of their complaint, and assert that a class action is "properly maintainable under Fed. R. Civ. P. 23(b)(1) and/or 23 (b)(2)."(Id.).

Count II of Plaintiffs' amended complaint, entitled "Establishment and Operation of the Escrow Fund Violate ERISA §§ 404 (a)(1)(A), (B), and (D), 406 (a)(1)(D), 406 (b)(1) and 2d 410, alleges in part, that "[t]he provisions in the third amendment to the Merger Agreement, the Escrow Agreement, and Amendment to Escrow Agreement violate ERISA §410(a), 29 U.S.C. § 1110(a) and that "[a]ll of the Defendants in this Count, except the North Star Defendants, negotiated, consummated and/or facilitated the merger with the knowledge that the Escrow Fund would be established and Plan assets would be diverted to the Escrow Fund pursuant to the provisions of the Escrow Agreement in violation of ERISA § 410 (a), 29 U.S.C. § 1110(a)" and that "all of the Defendants, except the ESOP Administrative Committee Defendants, negotiated and/or executed the amendment to the Escrow Agreement in violation of ERISA §410(a), 29 U.S.C. § 1110(a). (Doc. 25 at para. 172).

Count II further alleges that the defendants caused or approved

---

[2]In an Order dated September 6, 2006, U.S. District Judge Kristi Dubose dismissed Count III of Plaintiffs' complaint as time-barred. (Doc. 323).

7

the following prohibited transactions: (1) proceeds from the merger that would have gone to the ESOP were diverted to the Escrow Fund; (2) payment for the Grimes settlement, including attorneys' fees were paid from the Escrow Fund; (3) payment of the correction of plan qualification errors, and other expenses from the Escrow Fund, (4) holding plan assets in the Escrow Fund; (5) by causing the Escrow Fund to be established to benefit "present and former fiduciaries of the Plan who may have liability in connection with "claims, disputes, investigations, or litigation in conjunction with any proceedings arising out of any present or former employee's interest in the ESOP and/or 401(k) Plan that emanated prior to the acquisition,"; and (6) engaging in self-dealing as a result of establishment and operation of the Escrow Fund. (Doc. 25 at para 174-180).   Plaintiffs further allege that Defendants "are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plain under ERISA § 405, 20 U.S.C. § 1105. (Id. at para. 181)

Count IV of the amended complaint, entitled "Failure to Prudently Select and Monitor Service Providers Violates ERISA § 404(a)(1)(A) and (B), and 406 (b)(1)" alleges, that "[t]he ESOP Trustees breached their duty of prudence in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), when <u>after</u> the Merger Agreement had executed on May 9, 1999, they selected AAA to perform the 1998 annual valuation of ESOP GulfTel stock, the Option to Purchase Stock, the updated 1998 appraisal through May 9, 1999, and

the fairness opinion in connection with the merger...." when "they knew, or should have known, [that AAA] was likely to find that the total consideration offered by Madison River was adequate." (Doc. 25 at para. 189).

Plaintiffs further allege that defendants "breached their duties of loyalty and prudence by failing to carefully examine and review the methodologies and conclusions of the appraisals conducted by AAA, and the methodologies and conclusions of Arthur Anderson and DeCosimo and Co., and/or by failing to provide these service providers with adequate information necessary to conduct a meaningful appraisal." (Id.) Plaintiffs also allege that "[t]he GulfTel Defendants breached their duties of prudence and loyalty in violation of ERISA § 404(a0(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), by failing to monitor the ESOP Trustees." (Id. at para. 190). Finally, Plaintiffs allege that '[t]he ESOP Trustee Defendants and GulfTel Defendants are also liable as co-fiduciaries with respect to the fiduciary violations of the other fiduciaries of the Plain under ERISA § 405, 29 U. S. C. §1105." (Id. at para. 191).

Count V of the amended complaint is entitled: "Sale of DiGiPH, Gulf Coast Non-Business Assets and Gulf Coast Stock for less than Fair Market Value Violates ERISA §404(a)(1)(A)(B) and (D), §406(a)(1)(A) and (D) and § 406(b)(1) and (2) and is directed "a]gainst ESOP Trustee Defendants, ESOP Administrative Committee Defendants and GulfTel Defendants" (Doc. 25 at 58), and alleges that

9

the defendants breached their duties of loyalty and prudence (1) "by the conduct described in Paragraph 189 which resulted in their failure to determine the fair market value of the Gulf Coast stock held in the ESOP Trust" and "...because they relied on the AAA appraisal and review of the appraisal by Arthur Andersen and DeCosimo Company which they knew or should have known were deficient, thereby causing the ESOP participants to receive less than fair market value for their Gulf Coast shares. (Doc. 25 at para. 194).

Plaintiffs further allege that the ESOP Trustee Defendants "either imprudently relied on the AAA fairness opinion if no discussion of the value of DiGiPH and the Non-Business Assets was included as a part thereof, or failed to prudently review and evaluate the discussion of the value of DiGiPH and the Non-Business Assets in the AAA fairness opinion if such discussion was included." (Id. at para. 197). Additionally, Plaintiffs allege that Defendants violated ERISA 404(a)(1)(A)(B) and (D) "[b]y failing to ensure that adequate consideration for DiGiPH was received from Millry..."(Id.) Finally, Plaintiffs allege that Defendants violated ERISA by (1) failing to provide participants with sufficient information that the sale of ESOP stock to Madison River was for less than fair market value, and (2) failing to ensure that the participants received adequate consideration for their Gulf Coast stock. (Doc. 25 at para. 198).

Count VIII, entitled "Failure to Properly Represent the ESOP

in Snook Estate Litigation Violates ERISA 404 (a)(1)(A), (B) and (D), 406 (a)(1)(D), and 406 (b)(1) and (2)" alleges that Defendants "knew or should have known, that the ESOP had a direct interest in the outcome of the litigation relating to the Snook Trusts and signing a release of claims, including a release of the Snook Options, or allowing a release of claims to be signed on behalf of the ESOP, with inadequate or no consideration for such release" and by "allow[ing] a portion of the ESOP's interest in the Snook Trusts to be transferred to Marjorie Snook in connection with her scheme of terminating the Trusts in order to obtain the Trusts' principal." (Id.)  Finally, Plaintiffs allege that "[b]y failing to monitor the ESOP Trustees, who failed to properly represent the ESOP's interest in the Snook Trustees, all of the GulfTel Defendants breached their duties of loyalty and prudence" in violation of ERISA. (Id. at 214).

Count XI, entitled "Party in Interest and knowing Participant Liability Pursuant to ERISA § 502(a)(3)" alleges that the various Defendants are subject to disgorgement of any unjust enrichment or profits due to their participation in the acts described in Counts II through X of the Complaint.

## III. Analysis

The requirements for class certification are set forth in Rule 23 of the Federal Rules of Civil Procedure.  A class can be maintained only if it satisfies the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Amchem Prods.

11

v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L.Ed. 2d 689 (1997). The proponent of the class bears the burden of proof on the propriety of class certification. Rutstein v. Avis Rent-A-Car Sys., 211 F. 3d 1228, 1233 (11th Cir. 2000). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732(1974).

Fed. R. Civ. P. Rule 23(a) allows a representative class member to bring an action on behalf of the class only if:

> (1) the class is so numerous that joinder of all class members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These four elements are commonly abbreviated as numerosity, commonality, typicality, and adequacy of representation. Piazza v. Ebsco Indus., 273 F.3d 1341, 1346 (11th Cir. 2001). With respect to the numerosity requirement, the courts have held that it is not necessary for the representative plaintiff to establish that joinder of all members is "impossible" ; rather, the representative

plaintiff  "need only show that it would be extremely difficult or inconvenient to join all members of the class." In re Miller Indus. Sec. Litig., 186 F.R.D. 680, 685 (N.D. Ga. 1999).  Plaintiffs herein contend that they meet the numerosity requirement because the proposed class consists of 410 members, and that joinder of all members would be "impracticable".   In their opposition briefs, Defendants concede that the numerosity requirement has been met. Here, where there are in excess of 400 potential class members, the undersigned finds that joinder would be impracticable; thus, the numerosity requirement is satisfied.  Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986). (stating that the numerosity requirement is generally met where the proposed class has more than 40 members.)

To satisfy the "commonality" requirement, Plaintiffs must show that there are questions of law and fact common to the class. Indeed, a class may be certified if there is but one common question of law or fact. See Cox, 784 F.2d at 1557; Buford v. H & R Block, Inc., 168 F.R.D. 340, 349 (S.D. Ga. 1996).  Individual claims of the putative class members need not be factually or legally identical. Jones v. Am. Gen. Life & Accident Ins. Co., 213 F.R.D. 689, 694-95 (S.D. Ga. 2002).  Moreover, factual difference among members of the class do not destroy commonality if common questions of law exist. Cox,784 F.2d at 1557.

The Eleventh Circuit has stated that claims generally involve

13

common questions of law or fact where the allegations of wrongdoing involve a common course of conduct by the defendants. Kennedy v. Tallant, 710 F.2d 711, 717 (llth Cir. 1983); *See also* Haitian Refugee Center, Inc. v. Nelson, 694 F. Supp. 864, 877 (S.D. Fla. 1988)("Commonality...exists when plaintiffs allege that a defendant has acted or is acting uniformly regarding a class.") In this case, Plaintiff allege that "questions of fact and law common to the class arise from Defendants' uniform course of conduct which does not vary from class member to class member." According to Plaintiffs, Defendants committed fiduciary breaches and/or participated in such breaches that all relate to or arise out of the sale of the GTESOP's GCSI stock in the September 1999, merger between GCSI and Madison River, or relate to the improper establishment and administration of the Escrow Fund established as part of the merger. Plaintiffs further contend that because the alleged fiduciary breaches and knowing participation in such breaches engaged in by the Defendants affect all participants of the ESOP in a uniform manner, the commonality requirement is met.

Defendants, on the other hand, contend that the commonality requirement has not been met because Plaintiffs have argued, with respect to the statute of limitations issue, that the three-year limitation for Plaintiffs' ERISA claims is triggered only when the claimholder acquires subjective actual knowledge that "facts supported a cause of action under ERISA." According to Defendants,

such an analysis would require the Court to assess, on a case-by-case basis, what each Plaintiff heard or read, what facts they knew and the nature and degree of each Plaintiff's and putative class member's subjective understanding or belief and that the need for such individual proof would result in a lack of commonality.

Interestingly, Defendants go on to argue that such a case-by-case determination is not required with respect to the statute of limitations issue. In fact, in seeking the dismissal of Plaintiffs' claims on the basis of the statute of limitations, Defendants argued in their dispositive motion that the ESOP participants had been provided various letter and memos which provided them with actual knowledge of the facts surrounding the alleged ERISA violations. In ruling on Defendants' dispositive motion, U.S. District Judge Kristi Dubose held that there exists a genuine issue of fact concerning whether the memos and letters provided by Defendants adequately informed the ESOP participants that the claims in the Grimes litigation included claims of fiduciary breaches against the ESOP trustees. (Doc. 323 at 31). Judge Dubose further determined that the Trustees' letter to ESOP participants explaining the investment of the escrow account was sufficient to provide them actual notice of facts which could form the basis of a claim that fiduciary duties were breached "by investing the Plan assets held in the Escrow Fund solely in low yield money market funds"; thus, that claim was barred by the three-year statute of limitations. (Id.

15

at 32). Given that Defendants are contending that the same letters and memos were sent to all ESOP participants and provided them with actual notice of the facts which could form the basis of a claim with respect to the creation of the escrow and payment of the Grimes litigation, it is clear that this will be a common issue with respect to  the ESOP participants as all are alleged to have been provided the exact same notice.  Accordingly, based upon the record before the court, the undersigned finds that Plaintiffs have met the commonality prong of Rule 23 (a).

To satisfy the "typicality" requirement, the named Plaintiffs must present claims that are typical of those of the class.  The focus is on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985). Typicality is closely aligned with commonality.  The Eleventh Circuit has explained the "typicality" requirement as follows:

A class representative's claims or defenses must be typical of the claims or defenses of the class.  In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class.  A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses.

16

A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class. <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984)(internal citations omitted); *See also* <u>Appleyard</u>, 754 F.2d at 958 ("[C]ourts have found a strong similarity of legal theories will satisfy the typicality requirements despite substantial factual differences."; <u>Andrews v. AT & T Co.</u>, 95 F.3d 1014, 1022 (11th Cir. 1996)("Typicality exists when a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.")

With respect to the typicality requirement, Defendants essentially rely on the same arguments advanced with respect to the commonality issue.  As previously noted however, to the extent Defendants are contending that the letters and memos were sufficient to provide the ESOP participants with actual notice of the facts which could form the basis of a claim with respect to the creation of the escrow and payment of the Grimes litigation, this defense would impact tall of the purported class members in much the same fashion.  Moreover, Plaintiffs have asserted that Defendants engaged in the same alleged wrongdoing with respect to all of the ESOP participants.  Defendants, in turn, have not pointed to any probative evidence which suggests that the named Plaintiffs' claims are not typical of the claims of the purported class members.  In

view of such, the undersigned finds that Plaintiffs have met the typicality requirement.

The last requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." This requirement consists of two components: (1) adequacy of the named representatives, and (2) adequacy of counsel. Buford, 168 F.R.D. at 351. In the case at hand, Defendants do not dispute the qualifications or competence of Plaintiffs' counsel. Moreover, a review of the affidavits of Plaintiffs' counsel reflect that they have experience in class litigation. (Doc. 225 at 18; Ex. 9). Thus, the undersigned finds that the adequacy of class counsel requirement has been meet.

Turning next to the adequacy of the named representatives, it is noteworthy that this inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. Amchem Prods.,Inc., v. Windsor, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed 2d. 689 (1997). Additionally, this inquiry serves to ensure that class representatives are capable of fairly and adequately protecting the interests of the class. London v. Wal-mart, Inc., 340 F. 3d 1246, 1253 (llth Cir. 2003). In order to "protect the legal rights of absent class members...[who] are bound by res judicata effect of the judgment, a principal factor in determining the appropriateness of class certification is the forthrightness and vigor with which the representative party can be

expect to assert and defend the interests of the members of the class." Id.

In <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 718, 728 (llth Cir. 1987), the Eleventh Circuit held in the context of a securities case, that as long as class counsel is "competent and zealous", the "named plaintiffs are not inadequate merely because "of a perceived lack of subjective interest," but only if "their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." The Court was careful to note, however, that "[b]ecause the issue of adequate class representation arises in a wide variety of contexts, it would be inappropriate for us to establish a standard for general application." <u>Id.</u> at 727-28. The Court also noted that while forthrightness and vigor are necessary requirements, "meeting these requirements might still be insufficient if the "named plaintiffs....do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." <u>Id</u>. The Eleventh Circuit has stressed that "basic consideration of fairness requires that a court undertake a stringent and continuing examination of the adequacy of representation by the named classed representative[] at all stages of the litigation where absent members will be bound by the court's judgment." <u>London</u>, 340 F.3d. at 1254.

In <u>Danielson v. DMD</u>, 2007 U.S. Dist. LEXIS 18609 (N.D. Ga.), a district court recently addressed the adequacy requirement. The

plaintiffs in <u>Danielson</u> sought to certify a class of persons who had purchased what they believed to be "rosewood" flooring from Home Depot.  The plaintiffs asserted that the defendants intentionally misrepresented that the flooring was "rosewood" when in fact they knew it was an inferior wood in order to increase their sales.  The defendants opposed the certification motion on a number of grounds, including the assertion that the plaintiffs were not adequate representatives.  The district court held that the plaintiffs had not demonstrated that they would adequately represent the interests of the class where several of the plaintiffs did not appear to be aware of the legal or factual issues of their claim, five had never read the complaint before it was filed, two testified at their depositions that they had never read the complaint, including in preparation for their deposition, several testified that they had not investigated any facts related to their claims, and others did not understand what duties they owed to the class of persons they sought to represent.  Against this backdrop of facts, the court concluded that the plaintiffs had failed to demonstrate that they would adequately serve as class representatives.

Similarly, in <u>Hillis v. Equifax Consumer Servs.</u>, 237 F.R.D. 491 (N.D. Ga. 2006), the district court refused to certify some of the plaintiff's claims after finding that while the plaintiff was sufficiently familiar with the general nature of the lawsuit, he was unfamiliar with many of the specific allegations that formed the

basis of his claims under 15 U.S.C. § 16798b(a)(3). The Court observed that the plaintiff's deposition testimony revealed that he did not recall seeing virtually any of the representations enumerated in his complaint, and that formed the basis of his claims under 15 U.S.C. § 16798b(a)(3). According to the Court, the plaintiff's deposition testimony illustrated that he either contradicted or was unfamiliar with almost all of the allegations that formed the basis of his claims under 15 U.S.C. § 16798b(a)(3) and that as a result, the court had serious concerns about the interests of the absent class members who would be bound by any judgment in the case.

In the case at hand, Defendants contend that Plaintiffs are not adequate class representatives because they do not possess a basic understanding of the claims in this case, and because conflicts exist between the named plaintiffs and the members they seek to represent. As noted *supra*, this action originated with a total of ten Plaintiffs, of which four remain. A review of the deposition testimony of these remaining plaintiffs reveals that none possesses a basic understanding of the various violations that the multiple Defendants are alleged to have committed. When Plaintiffs were questioned about the specific allegations contained in the Complaint, they repeatedly deferred to their counsel. (Hartman, Dep., ps. 75-79, 194-195; Eslava Dep., ps. 130-139) While a couple of the Plaintiffs indicated that they would not have filed suit had

the escrow account been distributed, at their depositions, they were not sure whether their lawsuit included claims related to the escrow fund. (Eslava Dep., pp. 114-115; Kaiser Dep. Ps. 97, 104, 145, 150; Hartman Dep. P.66; Faison Dep. Pp. 97-98).   The Plaintiffs also disavowed any knowledge of how the DiGiPH stock related to their lawsuit, and were unsure whether the complaint contained any claims related to "non-business assets", the "Snook Trust", and the "Snook will options".  (Eslava Dep.,  ps. 118-119, 127-139; Kaiser, ps. 100-101, 222-225; Hartman Dep., p. 194).   While one Plaintiff testified that he had seen the complaint at some point after it was filed, two of the other Plaintiffs were unsure of whether they had ever seen the complaints. (Eslava Dep.,  P. 87; Hartman Dep., ps. 87-88, Kaiser Dep., ps. 95)   At the class certification hearing, three of the four Plaintiffs appeared and testified.  (Doc. 390) Plaintiffs Eslava, Kaiser, and Hartman testified that their case involves the establishment of the escrow and the sale of the DiGiPH stock; however, none of the Plaintiffs offered any testimony which evidenced their familiarity with any of the facts surrounding these two issues. (Doc. 390, ps. 14, 40-41, 74) Moreover, the Plaintiffs made no mention of the other claims contained in their latest complaint.  While Plaintiffs testified that they have met with their attorneys, responded to written discovery, attended a mediation, and submitted to a deposition, the undersigned finds that their minimal understanding of the basic claims being asserted in this case, and

the facts in support of their claims, more than two years after the filing of this lawsuit, strongly suggests that they are not adequate class representatives.  In other words, based upon the record before the Court, the undersigned is not satisfied that the named Plaintiffs have met their burden of establishing that they can adequately protect the legal rights of the absent class members who would be bound by the "res judicata" effect of any judgment.  Simply put, it appears that the Plaintiffs have "virtually abdicated to their attorneys the conduct of this case."  Accordingly, the undersigned finds that Plaintiffs have not met the fourth requirement of Rule 23(a) and therefore recommends that Plaintiffs' Motion for Class Certification be **DENIED**.[3]

The attached sheet contains important information regarding objections to this <u>Report and Recommendation.</u>


**DONE** this **14th** day of **June 2007**.


                                                   **/s/ SONJA F. BIVINS**
                                      **UNITED STATES MAGISTRATE JUDGE**

---

[3]While the Defendants have argued that conflicts exist between the Plaintiffs and the members they seek to represent, and that the Plaintiffs cannot meet the requirements of Rule 23(b)(1) or (2), the undersigned has not addressed those arguments in light of the finding that Plaintiffs are not adequate class representatives.

23

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.  **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.