**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **DAVID ESLAVA, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **CIVIL ACTION 04-0297-KD-B** |
| ) | |
| **GULF TELEPHONE COMPANY, INC.,** ) | |
| et al., ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on the following: defendants', Millry Management, L.L.C and Paul Brown's motion for summary judgment and brief in support (Docs. 573, 574) filed April 2, 2007; plaintiffs' response in opposition (Doc. 618) filed May 15, 2007, and defendants' reply brief (Doc. 636) filed June 1, 2007.

I.    Procedural Background

Plaintiffs filed the their initial complaint on or about May 7, 2004 against multiple defendants alleging claims for violations of the Employee Retirement Income Security Act 29 U.S.C. §§ 1101, *et. seq.,* ("ERISA") (Doc. 1) Plaintiffs filed an amended complaint on June 15, 2004, (Doc. 25), a Second Amended Complaint on August 4, 2006 (Doc. 291), and a "Restated Second Amended Complaint" on November 15, 2006. (Doc. 397).

Plaintiffs allege that Millry Management, LLC ("Millry"), formerly a 50% shareholder of DiGiPH, knowingly participated in fiduciary breaches in connection with the purchase of DiGiPH stock. Specifically, the transaction upon which plaintiffs' base their claims against Millry and Brown occurred in 1999 when Millry purchased Gulf Coast Services Inc.'s

1

("GCSI's") 50% interest in DiGiPH Holding Company ("DiGiPH").

In response to the amended complaint, defendants Millry and Brown initially filed a motion to dismiss on the grounds that (1) "[t]he purchase by Millry of Gulf Coast's interest in DiGiPH was not a transaction involving any assets of the employee stock option plan...", and "the challenged transaction [was not] one between the Plan and a party in interest" and (2) the "equitable remedy of disgorgement under ERISA § 502 (a)(3)[1] is not available to Plaintiffs in this case." (Doc. 47) The Court granted Millry's motion to dismiss as to claims arising under ERISA § 406 (a)(1)(A) and (D)[2] and ERISA § 406(b)(1) and (b)(2) and denied the motion as to

---

[1] Section 502(a) provides, in pertinent part:

(a) A civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

[2] The Court opined, in part:

The complaint does not allege that DiGiPH is an asset of the plan. Rather, plaintiffs allege that DiGiPH was owned, in part, by Gulf Coast and that, in turn, the GTESOP owned 42.2% of Gulf Coast stock. While defendants concede that a portion of the sale of the DiGiPH stock may have become a plan asset after the merger, this does not change the Court's conclusion that, at the time of the sale to Millry, the DiGiPH stock, pursuant to 29 C.F.R. §2510.3, was not an asset of the GTESOP. This conclusion is further bolstered by the fact that the sale of the DiGiPH stock occurred *prior* to the merger, a fact that is undisputed.

Plaintiffs' allegations are insufficient to support plaintiffs' claims that the DiGiPH stock was a plan asset. See Barry v. Trustees of Inter'n Assn. Full Time Salaried Officers & Employees of Outside Local Union & District Counsels Pension Plan, 404 F.Supp. 2d 145, 153 (D.D.C. 2005)("[P]laintiffs' allegation that the LU & DC Plan owned ULLICO stock was insufficient by itself to support a claim that ULLICO's underlying assets were Plan assets."); 29 C.F.R. § 2510.3-101(a)(2).

2

claims arising under ERISA § 404(a)(1)(A), (B) and (D) and for damages under ERISA § 502(a)(3) .  (Doc. 150)

Count VII [3] of the Restated Amended Complaint alleges, in pertinent part that the Millry defendants, as parties in interest, "knowingly participated in conduct which constituted ERISA violations as described in Count II [4]", and are therefore "subject to the equitable remedy of disgorgement of any unjust enrichment or profits pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) as knowing  participants in a breach."  (Doc. 397 at ¶¶ 294-295)  Count IV [incorrectly referred to as Count II in Count VII] of the Restated Second Amended Complaint is entitled "Sale of GCSI Stock for Less than Fair Market Value Violates ERISA §§ 404(a)(1)(A),(B), and (D), 406(a)(1)(A), (C) and (D), and 406(b)(1) and (2)" and alleges, in pertinent part:

> 260. Millry bought GCSI's interest in DiGiPH for $6.5 million, plus release from future funding obligations of $4.1 million on or about September 14, 1999, in connection with the merger with Madison River, which closed two weeks later on September 29, 1999. Millry entered into a letter of intent or contract to sell the assets of DiGiPH to an affiliate of PowerTel six (6) months later for $375 million. Upon information and belief, the net after tax profit realized by DiGiPH on the sale to the PowerTel affiliate was approximately $78 million. GCSI owned a 50% interest in DiGiPH, and the ESOP owned a 48.22% interest in GCSI. Thus, the

---

> Thus plaintiffs have failed to allege a claim against these defendants under ERISA § 406 (a)(1)(D). Accordingly, defendants' motion to dismiss is granted as to claims arising under this section.

(Doc. 150  at 11-12)

[3]  Plaintiffs indicate that Count VII of the Restated Second Amended Complaint was "formerly Count XI."  (Doc. 397 at 94)

[4]  As noted herein, plaintiffs maintain that the reference should be to Count IV and not Count II of the Restated Amended Complaint.

> ESOP's share of such net after tax profit would have been approximately $19 million had the sale of GCSI's interest to Millry not occurred, rather than $10.6 million, which was all that was actually realized as a result of the breaches herein described.
>
> ...
>
> 262. The Shareholder Agreement between GCSI and Millry that granted Millry a buy out right upon any change in control of GCSI under Section 2.D. had not been triggered by the execution of the Merger Agreement. However, it was this Shareholder Agreement that made it impossible to get a bidder for GCSI to increase its bid to include the value of GCSI's interest in DiGiPH because Millry's buy out right under Section 2.D. would be triggered by an actual conveyance of the GCSI stock at the closing, leaving the successful bidder in the untenable position of being forced to sell its newly acquired interest in DiGiPH to Millry at an unknown price set by an arbitrator pursuant to such agreement. As a result of this Shareholder Agreement, the Merger Agreement requires GCSI to dispose of its interest in DiGiPH and includes the sales price as an add on in the definition of the merger consideration.
>
> 263. Marjorie Snook and Robert Mackey, Jr., never investigated alternative actions, but rather dumped GCSI's interest in DiGiPH for an amount which was approximately equal to what had been invested into this venture. They did not seek to get their own appraisal of DiGiPH, nor did they negotiate the price. Robert Mackey, Jr. asked what Millry would pay for GCSI's interest. Millry indicated $6.5 million, and he accepted. He never asked for a higher price or investigated the value of this significant investment. Upon information and belief, Millry would have paid significantly more for GCSI's DiGiPH stock had Robert Mackey, Jr. negotiated the price, rather than merely accepting Millry's first offerer.

(Doc. 397 at ¶¶ 260, 262-263)

On April 2, 2007, defendants filed the instant motion for summary judgment. (Doc. 573) Plaintiffs filed a response in opposition on May 15, 2007 (Doc. 618) and, thereafter, on June 1, 2007 defendants filed a reply brief. (Doc. 636) The motion has been fully briefed and is now ripe for the Court's consideration.

II.   Factual Background [5]

In May 1999, a merger agreement was entered into between Gulf Coast Services, Inc. and Madison River Telephone Company, LLC, for the acquisition of all of the shares of Gulf Coast Services, Inc., pursuant to a transaction in which Gulf Coast Services, Inc. would be merged into Gulf Merger Corp.  (Doc. 397 at 31).

After the execution of the Merger Agreement, GCSI entered into an agreement to sell its 50% interest in DiGiPH to Millry, the other 50% owner.  (Id. at 33)  GCSI's interest in DiGiPH was sold to Millry on or about September 14, 1999, two (2) weeks prior to the merger closing, with the sales proceeds being added to the merger consideration paid for the GCSI stock pursuant to the Merger Agreement.  (Id. at ¶ 89)  The Merger Agreement required that the DiGiPH stock be disposed of prior to the consummation of the merger, either by sale or distribution to the GCSI shareholders.  (Id.)  GCSI's 50% interest in DiGiPH was sold to Millry for 6.5 million cash, plus relief from 4.1 million in future funding obligations.  (Id. at  ¶ 92)

Section 2.1 of the Stockholders' Agreement between GCSI and Millry, dated March 13, 1997 grants Millry a right to match any offer to purchase GCSI's stock in DiGiPH.  (Id. at ¶ 80)  Section 2.B. grants Millry the right to buy GCSI's stock in DiGiPH upon a change in control of GCSI for an agreed upon fair market value, or, if they fail to agree upon fair market value, as

---

[5] The facts of this case have been set out in detail in the Court's prior orders on the various defendants' motions to dismiss and motions for summary judgment.  Accordingly, the Court has set forth an abbreviated factual discussion.  However, as it is required to do when resolving a motion for summary judgment, the Court has construed the factual allegations in a light most favorable to the plaintiff.  Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir.2004) citing Burton v. City of Belle Glade, 178 F. 3d 1175, 1187 (11th Cir. 1999) (When ruling on a motion for summary judgment, the court "must view all evidence and all factual inferences therefrom in the light most favorable to the non-moving party.")

set by an arbitrator chosen by the parties.  (Id.)[6]

III.    Summary Judgment Standard

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[7]  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden then shifts to the nonmovant to show the existence of a genuine issue of material fact.  Id.  "If the nonmoving party fails to makes 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment."  Id. (quoting Celotex Corp., v. Catrett, 477 U.S. 317 (1986))(footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999

---

[6] Plaintiffs argue that the stockholder agreement "was not triggered by the execution of the Merger Agreement" and that the right of first refusal "would have been triggered if GCSI had entered into an agreement to sell its interest in DiGiPH to a third party...."  (Doc. 397 at ¶ 91)

[7] Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall  be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

(11th Cir. 1992) cert denied, 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed. 2d 657 (1993) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment.  Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004), cert denied, 543 U.S.1081, 125 S.Ct. 869, 160 L.Ed.2d 825 (2005).

IV.     Discussion

    *A. Propriety of Motion for Summary Judgment*

As a threshold matter, the Court addresses plaintiffs' argument that a portion of defendants' motion is, in fact, a belated motion for reconsideration of the Court's order on defendants' previous motion to dismiss.  (Doc. 618 at 4-5)   Specifically, plaintiffs argue that defendants' brief "advances purely legal arguments, many of which are identical to those asserted in its' motion to dismiss and reply."  (Id at 4) Defendants counter that a motion for summary judgment following discovery is not a motion for reconsideration of a prior rule 12(b)(6) motion, but, rather, is a properly filed motion on the merits.  (Doc. 636 at 2)

As correctly noted by defendants, the standard of proof is clearly much higher on a motion for summary judgment.  Summary judgment is warranted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). A genuine issue for trial exists if, based on the record as a whole, a reasonable trier of fact could return a verdict for the nonmoving party. Anderson v.. Liberty Lobby, Inc., 477 U.S. 242 (1986). The Court must view the record in the light most favorable to the non-movant by resolving all ambiguities and drawing all reasonable inferences in favor of that party. Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp ., 475 U.S. 574, 587-88 (1986); Anderson, 477 U.S. at 255; Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir.1995)

By contrast, a 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's claim and the court construes all allegations as set forth in plaintiff's complaint as true and resolves all inferences in favor of the plaintiff.  United States v. Gaubert, 499 U.S. 315, 327 (1991); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).  The Eleventh Circuit has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In re Johannessen, 76 F.3d 347, 349 (11th Cir. 1996)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Plaintiffs argue that ERISA fiduciary duties in connection with the sale of DiGiPH are not contingent on its plan asset status and maintain that "this Court has already determined that a claim could be stated by Plaintiffs against Millry for knowing participation in a fiduciary breach."  (Doc. 617 at 41) Plaintiffs reliance on the court's previous determination is misplaced.  In resolving Millry's motion to dismiss, the Court applying the standard applicable to a motion to dismiss, opined, in pertinent part, as follows:

> Taking all the facts as alleged [in] the amended complaint as true, and resolving all inferences in favor of plaintiffs, *the Court finds that plaintiffs have adequately alleged the elements required to state a claim* that defendants knowingly participated in the fiduciary failure to maintain a prudent man standard of care under ERISA § 404(a).

(Doc. 150 at 15) (emphasis added).  At this stage in the litigation, i.e summary judgment, plaintiffs must provide factual support for their allegations that Millry and Brown knowingly participated in fiduciary breaches during the purchase of the DiGiPH stock.

*B. Scrivenor's Error in Restated Amended Complaint*

A second procedural matter that the Court must address concerns defendants' argument that plaintiffs have abandoned their claim that Millry knowingly participated in a fiduciary breach. Defendants noted that in Count VII of Plaintiffs' Second Amended Complaint (Doc. 397), plaintiffs allege that "Millry and Brown knowingly participated in ERISA violations as described in Count II" and that Count II relates to the Escrow account, not DiGiPH. As it is undisputed that Millry had no involvement in the Escrow account, defendants maintain that summary judgment should be entered in their favor. (Doc. 574 at 3)

In response plaintiffs argue that "Count VII contains a typographical or scrivener's error" in that "Count VII should have referred to the ERISA violations set forth in Count IV, which relates to DiGiPH, not Count II." (Doc. 618 at 4) Plaintiffs note that both the original Complaint and First Amended Complaint correctly make reference to the ERISA violations relating to the sale of DiGiPH such that Millry was on notice of the claims asserted against it. (Id.) The Court will assume, for the purposes of this opinion, that the reference to Count II instead of Count IV is merely typographical in nature and that the claims are properly alleged against Millry and Brown. The Court now turns to the merits of defendants' motion.

*C. ERISA 404* [8]

---

[8] ERISA § 404(a) is entitled "Fiduciary duties" and provides, in pertinent part:

(a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--

(A) for the exclusive purpose of:
(I) providing benefits to participants and their beneficiaries; and

9

Plaintiffs' claims against Millry and Brown arise from their alleged participation in breaches committed by the ESOP's fiduciaries. Plaintiffs argue, in sum, that "if any semblance of a prudent process to find a buyer or attempt to sell or transfer DiGiPH had been followed (other than simply offering DiGiPH to Millry and immediately accepting Millry's offer), fair market value would have been received by the ESOP for this component of the merger consideration." (Doc. 618 at 3). Plaintiffs further elaborate that DiGiPH "was not sold through a competitive bid process, or even an arms length negotiation with a third party, but rather, was sold to GCSI's partner in DiGiPH, Millry, without negotiation, for what Millry could afford to pay...." (Doc. 617 at 45) Although plaintiffs do not dispute that under the share agreement Millry had the right to buy GCSI's DiGiPH stock, they contend that it had to be for fair market value.

In support of their motion for summary judgment defendants, Millry and Brown, argue that because the DiGiPH stock held by GCSI was not an asset of the ESOP, but rather was owned by GCSI, and the ESOP had no authority or control over the DiGiPH stock, the sale transaction could not have been a breach of fiduciary duty under ERISA. (Doc. 574 at 4-5)

---

    (ii) defraying reasonable expenses of administering the plan;

    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

    ...

    (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. 1104 (a)(1)(A), (B) and (D).

Moreover, Defendants maintain that the ESOP's sole remedy for any alleged sale of the DiGiPH stock at less than fair market value was a shareholder derivative action against the GCSI Directors, and therefore, "the breach of fiduciary duty, if any, was not the DiGiPH sale transaction, it was the ESOP Trustees' failure to exercise their rights as minority shareholders to challenge it."  (Id. at 5)  Defendants further contend that "[w]hile [they] do not believe the GCSI Directors breached any duty by selling the DiGiPH stock to them, it is undisputed that they [Millry and Brown] had absolutely nothing to do with the ESOP Trustees' failure to pursue any such claim against the GCSI Directors and thus, the allegation that the Millry Defendants "knowingly participated" in a breach of fiduciary duty is baseless and must be dismissed."  (Id.)

Plaintiffs respond by primarily relying on the fact that their claim that Millry and Brown knowingly participated in the presumed breach by ESOP fiduciaries withstood a motion to dismiss.  The plaintiffs also incorporate, by reference, their 69 page response to the other defendants' motion for summary judgment.   However, plaintiffs do not specify which incorporated facts are pertinent to their opposition to Millry's and Brown's motion for summary judgment.

The Court has attempted to piece together the plaintiffs' arguments in opposition.  First, the plaintiffs allege that "[d]efendants[9] acted as fiduciaries with respect to the disposition of DiGiPH [and] also breached their duties" based on the following: (1) GCSI shareholders made the decision to permit DiGiPH to be disposed of separately from the non-DiGiPH component of the merger transaction; (2) GCSI's counsel viewed the sale of DiGiPH as being subject to

---

[9]As there is no factual or legal support cited by plaintiffs that Millry or Brown were fiduciaries, the Court assumes that Plaintiffs are referring to the ESOP trustees and possibly other fiduciaries.

11

fiduciary duties; (3) ESOP's counsel, Mr. Wasden, was closely involved with respect to the structure of the merger, and (4) the ESOP Trusteess and Marjorie Snook, testified that they believed that they had a fiduciary duty to obtain the highest value for DiGiPH. (Doc. 617 at 43-44).

Plaintiffs also cite to the following evidence that the DiGiPH stock was grossly undervalued for the Millry acquisition: i) Madison River's own files, which contain a valuation of GCSI and DiGiPH (indicating a value of $40 million for GCSI's 50% equity interest in DiGiPH as of December 31, 1997); ii) Millry's files, which contain a valuation of DiGiPH in October 1999, indicating an enterprise value of between $340 and $360 million and a fully distributed equity value after payment of debt of between $145 and $165 million (50% of which would be $72.5 to $82.5 million), and (iii) the valuation report prepared by Plaintiffs expert, Mr. Clawson (indicating a value of $ 46.5 million for DiGiPH) (Doc. 617 at 45-46).

Plaintiffs then argue that Millry and Brown knowingly participated in these fiduciary breaches presumably because they knew that they were purchasing the DiGiPH stock from GCSI for less than fair market value. However, plaintiffs fail to point the Court to any facts to support the allegation that Millry and Brown acted in concert with the alleged fiduciary breaches associated with the sale of DiGiPH, i.e. the fiduciaries alleged lack of due diligence in obtaining the highest possible price for the DiGiPH stock. Rather, the only evidence before the Court regarding any act by Millry or Brown is the fact that Millry purchased the asset (DiGiPH), which was not a plan asset, and then sold the stock within a year, netting a significant profit. There is insufficient evidence that Millry and Brown knew that there existed a fiduciary obligation to the ESOP regarding the DiGiPH stock sale. Moreover, there is insufficient evidence that Millry and

Brown knew that the ESOP fiduciaries failed to fulfill their due diligence obligations before the DiGiPH stock was sold. Thus, summary judgment is due to be granted because plaintiffs have failed to carry their burden on this claim.

*D. Equitable Disgorgement under § 502(a)(3)*

Plaintiffs seek payment from Millry, under § 502(a)(3), for the claimed full value of the DiGiPH stock sold to Millry by GCSI. Defendants argue that this relief is not available from Millry even if it could be shown that Millry/Brown participated in a fiduciary breach, thus, summary judgment should be granted because no relief is available on this claim. Specifically, defendants argue that because Millry/Brown are non-fiduciaries, plaintiffs can only recover plan assets or proceeds from the sale of plan assets. Defendants also argue that plaintiffs are seeking compensatory damages, a legal remedy that is unavailable under §502(a)(3).

In response, plaintiffs argue that because the proceeds of the sale of GCSI's DiGiPH stock was part of the consideration to be ultimately received by the ESOP for their GCSI shares, Millry is subject to the equitable restitution provision. Specifically, plaintiffs argue that "the sale of DiGiPH was for less than fair market value, thus depriving [p]laintiffs of a portion of the consideration for their GCSI shares." (Doc. 618 at 5) As such, plaintiffs contend that they are entitled to recover under ERISA § 502(a)(3) the consideration that would have been received had DiGiPH been sold for fair market value. Plaintiffs argue that equitable restitution is due from Millry because Millry is in possession of the proceeds from their subsequent sale of DiGiPH.

As to the relief plaintiffs are seeking against Millry and Brown under ERISA §502(3), the Court concurs with defendants that the relief is unavailable.[10] Although ERISA provides that

---

[10] The Court previously determined, on plaintiffs' motion to dismiss, that at that point it could not be said that it appears beyond doubt that the plaintiffs could prove no set of facts in

13

a plaintiff may sue a non-fiduciary who knowingly participates in the fiduciaries' breach of duty, recovery is limited to "appropriate equitable relief." See 29 U.S.C. § 1132(a)(3). In Mertens v. Hewitt Associates, 508 U.S. 248, 113 S.Ct. 2063, 124 L. Ed 2d 161 (1993) the Court construed 502(a)(3)(B) to authorize only those categories of relief that were typically available in equity and thus held that ERISA did not authorize suits for money damages against non-fiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. In Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 248-51 (2000), the Court further discussed the parameters of the equitable relief available against non-fiduciaries. First, the Court noted that "it has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty." Harris Trust, 530 U.S. at 250. In those instances, [t]he trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom." Id. While a non-fiduciary could be required to restore trust property or disgorge profits received from the sale of trust property, "the common law of trusts sets limits on restitution actions" against a non-fiduciary: "[o]nly a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." Id. at 251.

---

support of their claim. (Doc. 150). The Court relied on the fact that plaintiff was able to specifically identify funds in Millry's possession which could be traced to the sale of the DiGiPH stock. In hindsight, and after gaining a better understanding of the plaintiffs' claim and evidence, the Court's reliance on this fact was clearly erroneous.

It is undisputed that the Millry defendants did not engage in any transaction with the ESOP. Moreover, this Court has previously held that DiGiPH was not a plan asset at the time it was sold to Millry. Accordingly, Millry cannot be deemed to possess any ESOP assets and any subsequent sale of DiGiPH by Millry to a third-party did not involve ESOP assets. Thus, Millry does not possess any funds or assets that are subject to equitable restitution or disgorgement. The plaintiffs contention that Millry is subject to ERISA §502(3) because the proceeds paid by Millry to GCSI for the DiGiPH stock was ultimately part of the merger consideration is contrary to the law an enunciated in <u>Harris Trust</u> and <u>Mertens</u>. Therefore, plaintiffs cannot assert an equitable restitution or disgorgement claim against these defendants.

V.   Conclusion

Plaintiffs have failed to establish a genuine issue of material fact as to their claim that Millry and Brown knowingly participated in the ESOP Trustees' alleged breach of fiduciary duty involving the sale of GCSI's DiGiPH stock to Millry. Further, there is no evidence that Millry possess any ESOP assets, proceeds from assets or ill gotten gains such that plaintiffs could sustain an equitable restitution or disgorgement claim. Accordingly, defendants' Millry and Brown's motion for summary judgment is **GRANTED.**

**DONE** and **ORDERED** this the 18th day of June 2007.

                                         s/ Kristi K. DuBose
                                         **KRISTI K. DuBOSE**
                                         **UNITED STATES DISTRICT JUDGE**